IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE KEITHLY, DONOVAN LEE, and EDITH ANNA CRAMER, Individually an on Behalf of all Other Similarly Situated,<br><br>               Plaintiffs,<br><br>vs.<br><br>INTELIUS, INC., A Delaware Corporation; and INTELIUS SALES, LLC, A Nevada Limited Liability Company,<br><br>               Defendants. | Case No. C09-1485-RSM<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**NOTED FOR:**<br>**Friday, February 26, 2010**<br>**(ORAL ARGUMENT REQUESTED)** |

## I. <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

According to the allegations of the Complaint, in June 2008 and April 2009,

respectively, plaintiffs contracted via the website of defendant Intelius Inc., to purchase certain

services. Plaintiffs, purportedly acting on behalf of a nationwide class of consumers, allege

that defendants (collectively, "Intelius") enroll Intelius customers in a subscription based

serviced with non-party Adaptive Marketing LLC ("Adaptive") without disclosing the details

and/or benefits of the Adaptive services. According to plaintiffs, this arrangement permits

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 1

1 non-party Adaptive "to foist unwanted services (and the related monthly charges) on

2 unsuspecting consumers without full or adequate disclosure." Complaint ("Cmplt."), ¶ 2.

3      Although the Complaint is unclear on the point, plaintiffs appear to be claiming that

4 Intelius also sold its own Identity Protect subscription product to Bruce Keithly in April, 2009.

5 Plaintiffs make claims relating to the presentation of the Identity Protect product that mirror the

6 claims made about the presentation of the Adaptive product. Cmplt. ¶¶ 7, 19-20, 23, 27.

7      Based on Intelius' alleged "practice of collecting money from consumers through the

8 deceptive practice involving the promotion and delivery of unordered subscriptions," plaintiffs

9 assert claims for violation of the Washington State Consumer Protection Act ("CPA") and for

10 declaratory relief. Cmplt. ¶ 3.

11      Intelius respectfully submits this brief in support of its motion pursuant to Federal

12 Rules of Civil Procedure 9(b), 12(b)(6) and 12(b)(7) to dismiss all claims against them.

13 Plaintiffs' Complaint fails as a matter of law for the following reasons.

14      First, the plaintiffs' complaint should be dismissed because the website pages

15 referenced in the Complaint and integral to plaintiffs' claims conclusively contradict their

16 allegations. Plaintiffs' claims against Intelius expressly, and inherently, rely upon

17 characterizations of the content of the web site. But that very content conclusively establishes

18 the falsity of the characterizations.

19      Before plaintiffs agreed to the online enrollment contracts, Intelius provided them with

20 clear disclosures about the subscription service in which they were enrolling, the terms and

21 conditions of enrollment, including the billing amount and period, and how to cancel the

22 subscription. The website was set up so that plaintiffs had to submit electronic signatures in

23 order to enroll. To do so, plaintiffs had to enter, and then reenter, their respective e mail

24 addresses. The significance of these actions was clearly spelled out in plain language

25 immediately adjacent to the location on the computer screen where a) the action of enrolling

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX, (206) 623-8717

1 occurred and b) the e mail addresses had to be twice entered. No reasonable consumer reading
2 this language could fail to understand the offer, the transaction that would result from
3 acceptance or the method for indicating acceptance or for declining the offer. Plaintiffs cannot
4 sustain a claim based on the allegation that they simply did not read the clear language.

5 Second, the plaintiffs have failed to include a necessary party under Federal Rule of
6 Civil Procedure 19(a). It is undisputed that, with reference to the Adaptive subscription
7 product, Intelius is not contracting with the consumer. Intelius is referring the consumer to
8 Adaptive, which sells the services and collects the payment from the consumer. Plaintiffs'
9 claims are, in effect, that, because of what they claim to be a misleading presentation, there is
10 no valid contract between them and Adaptive.

11 Specifically, plaintiffs complain that Intelius' transfer of credit card and customer
12 information to Adaptive allows Adaptive "to foist unwanted services (and the related monthly
13 charges) on unsuspecting consumers without full or adequate disclosure" and that "this alliance
14 between Intelius and Adaptive has caused consumers to unknowingly pay Adaptive (and thus,
15 indirectly, Intelius) millions of dollars in non-existent and/or unwanted services." Cmplt. ¶ 2.

16 To prevail, plaintiffs must show that they did not enter into a valid contract with
17 Adaptive for the services in question, yet Adaptive, one of the parties to this contract, is not a
18 party. Plaintiffs' suit seeks to invalidate their own and a nationwide class of members'
19 contracts with Adaptive from July 2007 - present (Cmplt. ¶¶23, 26), and to obtain
20 corresponding restitution damages. Plaintiffs cannot maintain such an action in the absence of
21 a party to the contract the validity and enforceability of which they attack or secure a remedy
22 that in effect requires that Adaptive refund their payments—none of which were received by
23 Intelius.

24 Perhaps Adaptive was omitted because of an all fours federal precedent dismissing the
25 precise claims plaintiffs make here in litigation to which Adaptive *was* a party. The Southern

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1   District of Texas recently ruled that essentially identical Adaptive advertisements to that

2   involved here, offered through an Adaptive website partner (analogous to Intelius' position

3   here), were not deceptive as a matter of law. *See In re VistaPrint Corp. Marketing & Sales*

4   *Practices Litig.*, 2009 LEXIS 77509 (S.D. Tex. Aug. 31, 2009). While the Texas case did not

5   address the other prong of plaintiffs' claim, the April, 2009, purchase of Identity Protect, an

6   Intelius subscription product, even a superficial comparison of the two presentations

7   establishes that the Intelius presentation is even clearer than the Adaptive version.

8          Plaintiffs' complaint should be dismissed with prejudice because, as a matter of law,

9   the two presentations are clear to any reasonable consumer who reads them. If dismissal is not

10  ordered on the merits, the case should not be permitted to proceed without including Adaptive,

11  a necessary party.

12                    **II.  FACTUAL BACKGROUND**

13         The following facts are alleged in the Complaint and on this motion are assumed to be

14  true. They are supplemented with clarifying explanations that are intended to assist the Court

15  but are not the factual predicate for the Motion, which is based entirely upon the assumed

16  accuracy of the plaintiffs' own allegations and the undisputed content of the product

17  presentations that form the basis for their claims.

18         Intelius is a leading Information Commerce company that provides intelligence services

19  to consumers and businesses over the Internet. Cmplt. ¶ 11. Intelius and its subsidiary Intelius

20  Sales Company LLC are based in Bellevue, Washington. Through its website, Intelius

21  provides individuals and businesses with an array of products and services, including

22  background checks, identity protection, people search, and reverse phone directories. Cmplt. ¶

23  12.

24  Pursuant to a July 2007 marketing agreement with non-party Adaptive ("Marketing

25  Agreement"), beginning in July 2007 Intelius has advertised certain Adaptive programs

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 4

1    through its websites. Cmplt. ¶ 15. The companies' practices under the Marketing Agreement

2    are the alleged basis for plaintiffs' putative class action complaint. Cmplt. ¶¶ 1-3, 23.

3        Plaintiffs Donovan Lee and Edith Anna Cramer allegedly are residents of Ohio who

4    purchased a search report from Intelius in June 2008 and also enrolled in a $19.95 monthly

5    subscription for a Family Safety program. Cmplt. ¶ 8. Declaration of Ronald V. Thunen III

6    (hereinafter "Thunen Decl.") Ex. A. The subscription for which Lee and Cramer allegedly

7    signed up (allegedly inadvertently) is an Adaptive product, not an Intelius product. The Lee

8    and Cramer plaintiffs do not allege whose credit card was used to make the purchase, who

9    made the purchase, or whether that individual was authorized to use the credit card under the

10    issuer's terms and conditions.

11        Plaintiff Bruce Keithly is allegedly a Washington State resident who purchased a

12    background report from Intelius and also enrolled in the Identity Protect program on April 7,

13    2009. Cmplt. ¶ 7; Thunen Decl., Ex. B. Although not clearly alleged in the Complaint,

14    Identity Protect is *not* an Adaptive product. It is an Intelius product that Intelius sells directly

15    to consumers.[1]

16        **III. LEGAL STANDARD**

17        To avoid dismissal under Rule 12(b)(6), "a complaint must contain either direct or

18    inferential allegations respecting all the material elements necessary to sustain recovery under

19    some viable legal theory." The complaint must allege "sufficient factual matter, accepted as

20    true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

21    U.S. 544, 570 (2007)). "A plaintiff's obligation to provide the 'ground' of his 'entitle[ment] to

22    relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

23    a cause of action will not do. . . ." *Id.* at 555. Plaintiffs' factual allegations must be definite

24

25

---

[1] See Thunen Decl. ¶ 5. Defendants provide this information for the sake of clarity; irrespective of whether an Intelius or Adaptive subscription offer is at issue, plaintiffs' complaint fails to state a claim as a matter of law.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 5

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700  FAX. (206) 623-8717

1 enough to "raise a right to relief above the speculative level," the complaint must contain

2 "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

3     In evaluating a motion to dismiss plaintiffs' claims, legal conclusions need not be

4 accepted as true. *SEC v. Seaboard Corp.*, 677 F.2d 1315, 1316 (9th Cir. 1982) (fraudulent

5 inducement allegations cannot be accepted as true without underlying allegations regarding

6 manner of inducement). Equally, "a court is not required to accept facts in the complaint that

7 contradict facts in documents referred to in the complaint." *Swartz v. Deutsche Bank, et al.*,

8 2008 U.S. Dist. LEXIS 36139 (W.D. Wash. May 2, 2008) (*citing Steckman v. Hart Brewing

9 Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d

10 580, 588 (9th Cir. 2008) ("need not accept as true allegations contradicting documents that are

11 referenced in the complaint or that are properly subject to judicial notice.")

12     Under the doctrine of incorporation by reference, a court considering a motion to

13 dismiss may take judicial notice of the underlying webpages, which plaintiffs repeatedly

14 reference in their complaint. Cmplt. ¶¶ 1, 7-8, 15-20, 27A – B, 43. On this motion, the Court

15 may consider such integral materials without converting the Rule 12(b)(6) motion into a

16 motion for summary judgment. *Smale v. Cellco P'ship*, 547 F.Supp.2d 1181, 1184 (W.D.

17 Wash. 2008).[2]

18                          **IV. ARGUMENT**

19 **A.    Plaintiffs' Claims Fail as a Matter of Law Because The Website Content
        Referenced in the Complaint Demonstrates that Plaintiffs Received the Very
20      Information Plaintiffs Claim Was Not Disclosed.**

21         1.    The Lee and Cramer Claims—Adaptive's Subscription Product.

22     Non-party Adaptive offers a variety of membership programs on the Internet. Cmplt. ¶

23 14. Pursuant to their July 2007 Marketing Agreement, Intelius displays certain Adaptive offers

24

25 [2] The basis for the Court's consideration of the Intelius webpages is also set forth in the concurrently filed Request
for Judicial Notice.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 6

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

on the Intelius website. Cmplt. ¶¶ 2, 15. These offers are displayed to (some, but not all) Intelius customers after their purchase of an Intelius product. (i.e. "post-transaction marketing") Cmplt. ¶ 14. If the Intelius customer accepts the post-transaction offer, then the customer's name, address, and credit card information are securely transferred to Adaptive. Cmplt. ¶ 15; cf. Thunen Decl. Ex. A. Under the Marketing Agreement, Adaptive pays Intelius a fee for each customer who signs up for an Adaptive subscription. Cmplt. ¶¶ 2, 14. Pursuant to the offer terms, the consumers who enroll in the Adaptive programs are charged a monthly fee by Adaptive. Cmplt. ¶ 15; cf. Thunen Decl. Ex. A.

The Lee and Cramer plaintiffs purport to represent a class of consumers who signed up for an Adaptive subscription when purchasing Intelius products. Plaintiffs' essential claim is that Intelius surreptitiously enrolls its website customers into Adaptive programs. Cmplt. ¶¶ 1 -2; 15. Specifically, plaintiffs allege that Intelius' website content misleads its customers and thereby enrolls them into Adaptive programs without adequately disclosing 1) that consumers are being enrolled in the Adaptive programs so that enrollment occurs without their consent 2) the amount of the recurring charges by Adaptive; 3) the terms and conditions involved in the Adaptive programs and 4) the manner by which the consumer may cancel those services. Cmplt. ¶¶ 16, 19.

Conspicuously absent from plaintiffs' complaint are any specific allegations about the actual website content, including the specific disclosures made to plaintiffs during the transactions about which they complain. Plaintiffs' claim cannot survive an examination of those disclosures.

This pleading tactic already has been rejected by another district court addressing equally conclusory allegations regarding essentially the identical advertisement. In *VistaPrint*, a multidistrict litigation consolidating putative class action suits against Adaptive and another of its post-transaction offer partners, VistaPrint Corp., the Southern District of Texas, Houston

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700    FAX. (206) 623-8717

1    Division, took judicial notice of exemplars of the transaction pages subject of plaintiffs' claims

2    and

3        A review of the webpages, which are described and quoted in the Complaint,
         shows that the disclosures and other pertinent information are provided in a
4        clear, prominent, and conspicuous manner. There are no contradictory
         messages, and some important disclosures are provided more than once.... The
5        Court's review of the webpages on which Plaintiffs base their claims convinces
         the Court without reservation that, as a matter of law, the webpages are not
6        deceptive.

7    *VistaPrint* at * 24.[3]

8        The webpages relating to the Adaptive subscription product involved in this case are

9    substantially identical to the webpages on which the *VistaPrint* court relied. Copies of both are

10   attached as Exhibits A (Adaptive / Intelius ) and B (Adaptive /VistaPrint) to the Declaration of

11   Tyler L. Farmer. The relationship between VistaPrint and Adaptive was substantially the same

12   as that between Intelius and Adaptive: i.e., after the disclosures are presented, if the consumer

13   elects to enroll, the result is authorization to forward credit card information to Adaptive,

14   which then takes over the relationship with the consumer, provides the services, and initiates

15   the monthly credit card charges called for under the subscription contract. Cmplt. ¶ 15; *see*

16   *VistaPrint* at * 28-29 (describing that "Plaintiffs transmitted their credit/debit card information

17   to Defendants and, by 'clicking Yes' in the designated spaces on the webpages, authorized

18   VistaPrint to transfer that information."[4]   As discussed below, the identical characteristics of

19   the webpages at issue on this motion and those at issue in the *VistaPrint* case are fatal to

20   plaintiffs' claim under the Consumer Protection Act.

21

22   ───────────────
     [3] While this Court is not bound by the *VistaPrint* ruling, the CPA expressly provides that courts may be guided by
23   decisions of the federal courts and final orders of the Federal Trade Commission (FTC) construing the federal
     statutes similar to the Consumer Protection Act. RCW 19.86.920. The *VistaPrint* court addressed the allegations
24   of deceptiveness in the context of claims under the Electronic Funds Transfer Act, Electronic Communications
     Privacy Act and the Massachusetts Unfair Trade Practices Act.

25   [4] Like plaintiffs here, the VistaPrint putative class representatives alleged that they were "tricked" into enrolling
     in membership programs while completing their purchases (business cards) at the merchant defendant's website.
     *VistaPrint* at * 4.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 8

**B.    The Consumer Protection Act Claim Should Be Dismissed Because Intelius Committed No Deceptive Act and Plaintiffs Have Suffered No Injury.**

To establish liability under the Washington Consumer Protection Act, a private plaintiff must establish five elements: (1) an unfair or deceptive act or practice; (2) the act or practice complained of occurred in the conduct of trade or commerce; (3) the act or practice has an impact on public interest; (4) the plaintiff was injured in her business or property; and (5) the unfair or deceptive act caused the injury. *See Hangman Ridge v. Safeco Title*, 105 Wn.2d 778, 784-85, 719 P.2d 531, 535 (1986). As discussed below, the plaintiffs cannot establish an unfair or deceptive act or practice and accordingly cannot state a claim for relief under the CPA.

To constitute an unfair or deceptive trade practice, the alleged conduct must have a tendency or capacity to deceive a substantial portion of the purchasing public. *Indoor Billboard/Wash., Inc., v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 71, 170 P.3d 10, 13 (2007). The determination of whether particular conduct constitutes an unfair or deceptive trade practice under the Consumer Protection Act is an issue of law. *Id.*

1.    As a Matter Of Law, the Adaptive Offers on Intelius' Website Are Not Deceptive.

Here, the plaintiffs' claims fail as a matter of law because the underlying webpages conclusively disprove the plaintiffs' conclusory allegations that the presentation of the Adaptive offers on the Intelius' websites has the capacity to deceive. *See, e.g.* ¶¶ 18, 27 A, 43.

First, the webpage disclosures clearly inform the consumers that, should they choose to do so, they are enrolling in the offered program and, in fact, require consent via affirmative acts by the consumer in order to complete enrollment. Second, the Adaptive offers plainly state the amount and intervals of the program's subscription charges. Third, the webpage disclosures provide the terms and conditions of the offer. They state that, by accepting the offer, the consumer is "authorizing Intelius to securely transfer [their] name, address, and / or

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1   credit / debit card" information to the subscription provider. Thunen Decl. Ex. A. The

2   Adaptive webpage offer discloses the manner by which the consumer can cancel the

3   subscription service. In sum, each of the disclosures the plaintiffs allege is missing is in fact

4   present and clearly communicated on the Adaptive offers displayed on Intelius' webpages.

5        Plaintiffs do not allege that they read any of these disclosures and were confused by

6   them. Rather, plaintiffs allege only that, "unbeknownst" to them, they were enrolled in

7   subscription services and charged $19.95 monthly fees. Cmplt. ¶ 8. As discussed below, any

8   reasonable consumer who read the clear terms of the webpages undoubtedly would have

9   understood the offer details. "The language is clear and easily understandable by anyone

10   capable of making an online purchase...." *VistaPrint*, at * 19.

11       2.    <u>The Actual Terms of the Adaptive Offer Contradict Plaintiffs' Conclusory</u>

12           <u>Allegations.</u>

13        Plaintiffs allege that at the time they purchased an Intelius product, Lee and Cramer

14   were surreptitiously enrolled in monthly subscriptions in June 2008, causing them to incur

15   $19.95 monthly charges for unordered services. Cmplt. ¶8. The Family Safety offer webpage

16   clearly is not an automatic enrollment that simply occurs "at the time" of the customer's

17   Intelius purchase without deliberate action by the consumer to accept the enrollment.

18       The subscription offer is clearly communicated to the consumer after the consumer

19   purchases an Intelius product as a separate offer—i.e., a "post-transaction" offer. The first text

20   on the webpage states: "Thank You your order *has been successfully completed*" --

21   immediately next to the Intelius logo. Thunen Decl. Ex. A (italics added). Beneath that

22   message, the offer then presents the customer with the opportunity to take a 2008 Community

23   Safety Survey and receive $10 for trying a service called Family Safety Report. In order to

24   accept the Adaptive trial, the customer must affirmatively enter his or her e-mail address

25   (twice) and click through on a "Yes" button. The consumer is also given the opportunity to

   click on a "No" button which indicates that the consumer will still receive the Intelius product

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 10

he or she has purchased.  The webpage's clear terms disclose the purpose and effect of the user's affirmative act of entering the e mail address twice and clicking the button labeled "Yes And show my report."  The webpage states

> By typing your email address below, it will constitute your electronic signature and is *your written authorization* to charge/debit your account according to the Offer Details to the right.

> By clicking "Yes" *I have read and agree to the Offer Details displayed to the right* and authorize Intelius to securely *transfer* my name, address, and credit / debit card information to Family Safety Report, a service provider of Intelius.

Thunen Decl., Ex. A (italics added).

In the *VistaPrint* case, the district court analyzed the essentially identical Adaptive offer displayed on the VistaPrint website.  The court concluded:

> This clear language advises the consumer before the place for entering and confirming the email address that typing in the *email address and clicking "Yes" authorizes* VistaPrint to charge/debit the consumer's account according to the Offer Details, signifies that the consumer *has read and agrees to Offer Details*, and authorizes VistaPrint to *transfer* the consumer's credit/debit card information to VistaPrint Rewards.

*VistaPrint*, at * 17 (italics added).

As displayed on the Intelius webpage, the Adaptive offer provides the Offer Details immediately beside the authorization box and identifies them in boldface capitalized letters:

> OFFER DETAILS:

> Simply click "Yes" to activate your trial membership and take advantage of the great benefits that Family Safety Report has to offer plus claim your $10.00 Cash Back!  The membership fee of $19.95 per month will be charged / debited by Family Safety Report on the credit / debit card you used today with Intelius after your 7-day FREE trial period and then automatically charged/debited each month at the then-current monthly membership fee so long as you remain a member.  Of course you can call us toll-free at 1-877-442-5710 within the first 7 days to cancel, and you will not be charged/debited.  Please note that by agreeing to these offer details you are authorizing Intelius to securely transfer your name, address, and credit/debit card information to Family Safety Report. No matter what the FREE $10.00 Cash Back is yours to claim!  Remember, if for any reason you are dissatisfied, call our toll-free number to cancel, and

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 11

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

you'll no longer be charged/debited. If you used a debit card today, then beginning on or about 7 days from now, your monthly membership fee for Family Safety Report will be automatically debited each month on or about the same date from the checking account associated with that card.

Evaluating the essentially identical offer details in the *VistaPrint* case, the court held that "[t]he language is clear and easily understandable by anyone capable of making an online purchase of business cards." *Vistaprint* at * 19.

The "clear and easily understandable" disclosures of the Adaptive offers displayed on Intelius webpages refute plaintiffs' conclusory allegations and are fatal to their CPA claim. The CPA claim is predicated on the alleged inadequacy of Intelius' disclosures. Cmplt. ¶ 19. Courts consistently dismiss putative class action under the CPA where plaintiffs' bald allegations of deception are belied by the actual content of the adequate disclosures. *See Smale*, 547 F.Supp.2d at 1188 (dismissing putative class action where defendant adequately disclosed that it reserved the right to assess additional fees related to its governmental costs); *Lowden v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 21759 at * 4 -5 (W.D. Wash. Feb. 18, 2009) (dismissing putative class action complaint under the CPA for failure to allege an unfair or deceptive act where contract sufficiently disclosed fee cell phone billing practices); *Contos v. Wells Fargo Escrow Co. LLC*, 2009 U.S. Dist. LEXIS 43593 at * 26 (W.D. Wash. May 20, 2009) (no deceptive act or practice under CPA where wire transfer fees were adequately disclosed in the context of escrow closing); *see also Robinson v. Avis Rent A Car System, Inc.*, 106 Wn.App. 104, 116, 22 P.3d 818, 825 (2001) (affirming summary judgment dismissal of CPA claim, there was no deceptive or unfair act where car rental companies disclosed the concession fee). The content of the disclosures demonstrates that Intelius disclosed the very information plaintiffs allege was missing (Cmplt. ¶¶ 16, 19) and that they did so before the plaintiffs enrolled in the programs.

Plaintiffs do not allege that Lee and Cramer read, but were confused by, the foregoing disclosures. However, even if there were such an allegation, the CPA does not insure

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1  unreasonable conduct by careless consumers.  Disclosures (or material omissions) can only be

2  deceptive if they have the capacity to mislead a consumer acting reasonably under the

3  circumstances.  *Smale*, 547 F.Supp. 2d at 1189 (analyzing adequacy of disclosure based on

4  reasonable consumer's understanding of terms).  Plaintiffs do not (and cannot) allege that a

5  reasonable consumer who reads the language quoted above could be  misled into unwittingly

6  entering into the subscription contract at issue here.

> 7  A consumer cannot decline to read clear and easily understandable terms that
>    are provided on the same webpage in close proximity to the location where the
> 8  consumer indicates his agreement to those terms and then claim that the
> 9  webpage, which the consumer has failed to read, is deceptive.

10  *Vistaprint* at * 14.

11     The Federal Trade Commission Policy Statement on Deception states that "to be deceptive

12  the representation, omission or practice must be likely to mislead reasonable consumers under

13  the circumstances." *See* Oct. 14, 1983 Policy Statement, appended to *Cliffdale Associates,*

14  *Inc.*, 103 F.T.C. 110, 174 (1984); available at the FTC website at

15  http://www.ftc.gov/bcp/policystmt/ad-decept.htm (further stating that "[a]n advertiser cannot

16  be charged with liability with respect to every conceivable misconception, however outlandish,

17  to which his representations might be subject among the foolish or feeble-minded.") (internal

18  citation omitted).

19  **C.     The Keithly Claims—Intelius' Identity Protect Subscription Product.**

20     Mr. Keithly alleges that he unknowingly subscribed to "Identity Protect" on April 7,

21  2009.  Although the Complaint appears to suggest that Identity Protect is an Adaptive product,

22  it is not.  It is an Intelius subscription product that provides identity theft protection in return

23  for a monthly fee.  The Intelius presentation of its own product is even clearer than the

24  presentation the *VistaPrint* court held was not misleading as a matter of law.

25

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 13

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    Plaintiffs allege that

2        [i]n April 2009, Mr. Keithly believed he purchased a background report search
3        from Intelius for $39.95 using a credit card. Unbeknownst to him, at the time
         he purchased the Intelius report, Mr. Keithly incurred a $19.95 charge for an
4        "Identity Protect" service that he did not knowingly order.

5    Cmplt. ¶ 7.

6        The Intelius webpages confirm that Mr. Keithly purchased a background search report

7    from Intelius for $39.95 using a credit card. But they directly contradict the plaintiffs' general

8    allegations that Mr. Keithly and the class he purports to represent were surreptitiously enrolled

9    in any program without their knowledge. Unlike the post-transaction Adaptive offer, discussed

10   above, the Identity Protect subscription offer was accepted by Mr. Keithly during the check-out

11   for his purchase of an Intelius background check product--i.e., before he had committed to buy

12   the background check. The characteristics of that multistep process demonstrate that as matter

13   of law there is no basis for Mr. Keithly's complaint.

14       Thunen Decl. Exhibit B consists of webpages showing the steps Mr. Keithly had to take

15   in order to sign up for Identity Protect, beginning with the "Search in Progress" landing page

16   (Ex. B, Step No. 1) that he viewed upon arriving at Intelius via another website where Mr.

17   Keithly inputted his search request.

18       The first substantive Intelius page displayed to Mr. Keithly provided a "Background

19   Summary" for his requested search. (Ex. B, Step No. 2). After Mr. Keithly selected to

20   continue, the next Intelius webpage presented him with two clear options: to pay full price for

21   the background check product or to get an immediate $10 discount by signing up for Identity

22   Protect. (Ex. B, Step No. 3). There is nothing subtle, let alone surreptitious, about the Intelius

23   offer. The Intelius webpages demonstrate that Mr. Keithly was informed no fewer than 4 times

24   on 4 separate webpages that he was purchasing a $49.95 background check at the discounted

25   price of $39.95 because he selected to enroll in trial subscription with Identity Protect. (Ex. B

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 14

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    Steps No. 3-6). The Intelius offer not only repeatedly disclosed the discount based on the trial

2    subscription, but, even after Mr. Keithly had clicked on the button accepting Identity Protect

3    (and the discount), he was provided with a second opportunity on a separate page to "Remove

4    Identity Protect" and pay the regular price of $49.95. (Ex. B, Step No. 4).

5         The step-by-step process is clear and readily grasped by any reasonable consumer. On

6    the first Intelius page, Mr. Keithly was informed that his search was in progress. (Ex. B., Step

7    No. 1). On the second Intelius page, Mr. Keithly was shown a summary of the information

8    available in a complete background report. (Ex. B, Step No. 2). At this point, Mr. Keithly has

9    not agreed to buy anything.

10        On the third page, Mr. Keithly is presented with two alternatives. (Ex. B, Step No. 3).

11   He can simply order Background Information, or he can add Identity Protect and get

12   Background Information for $10 less. The choice is made by selecting one of two buttons that

13   say: $10 Off. $39.95 "Special Price with Identity Protect" or $49.95 "Limited Time Offer".

14        Ex. B, Steps No. 4 – 7 are archived Intelius webpages that show what happened next

15   assuming (as alleged) that Mr. Keithly selected the first button. Thunen Decl. Ex. C, Steps No.

16   4 -6 are archived Intelius webpages that depict what would have happened if Mr. Keithly had

17   selected the second button.

18        According to the Complaint, Mr. Keithly subscribed to Identity Protect, so he

19   necessarily clicked the first button on the webpage Exhibit B, Step No. 3. This step did not

20   constitute a purchase commitment. Mr. Keithly was simply selecting to proceed down the path

21   toward the Identity Protect discount as part of his Background Information purchase.

22        The fourth page of Ex. B shows the next screen he would have seen after clicking the

23   first button on page 3--i.e., choosing the $10 discount with Identity Protect. In bold at the top,

24   it confirms that he is moving down the path of "Background Report with Identity Protect

25   Trial." On the right, top, he is provided an "Order Summary" that reminds him again that he is

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 15

buying two products for $39.95: Background Report and Identity Protect Trial and is saving

$10 on the regular price of the Background Report. Under the Order Summary, Mr. Keithly is

advised

> After your 7 day free trial, if you do not cancel your Identity Protect
> membership your credit card will be billed $19.95 and each month thereafter
> that you continue your membership. You may cancel anytime.

If, after reading the above disclosures, Mr. Keithly decided he did not want to enroll in

Identity Protect after all, the same page four offers a second opportunity to make the same

choice presented on page 3. Mr. Keithly can reverse course, pay full price and not sign up for

Identity Protect:

> $10 off. $39.95. Continue
> or
> Remove Identity Protect
> Pay Regular Price of 49.95.

Exhibit B, Step No. 4 also advises Mr. Keithly of the nature of the Background

Information that exists on the name Jeffrey Keithly in Washington; describes the "Identity

Protect Benefits"; and, under a bolded heading "Offer Details" essentially repeats the

information that is also contained beneath the Order Summary:

> Click "Continue" button to accept this special offer price and activate your trial
> membership to take advantage of the great benefits that Identity Protect has to
> offer. The membership fee of $19.95 per month will be charged/debited by
> Intelius.com to the credit/debit card you use today with Intelius.com after the 7-
> day trial. Special Offer only available to Non Identity Protect Customer. [I.e.,
> the $10 discount is not available unless one is a new Identity Protect customer.]

If, after reading the "Offer Details," Mr. Keithly wishes to change his mind, all he has

to do is click the "Remove Identity Protect Pay Regular Price of 49.95" button that appears

directly below the "Continue" button with the 39.95 price.

At this point, if as alleged he subscribed to Identity Protect, Mr. Keithly chose the

"Continue" button and the discount. But Mr. Keithly still has not committed to buy anything.

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1    The next page, Ex. B, Step No. 5, provides additional "Add On" products and, again,

2    provides another Order Summary stating that Mr. Keithly has selected the Background Report

3    with Identity Protect Discount and Identity Protect Trial.

4    The next page, Ex. B, Step No. 6, is the start of the actual purchase process. Mr.

5    Keithly must enter his e mail address and, if he is not already an Intelius customer, he must

6    proceed to the next page to create an account. The page once again reminds Mr. Keithly in the

7    "Order Summary" that he will be signing up for the "Identity Protect Trial" and that doing so

8    results in "Your Savings $10.00" on the price of the Background Report.

9    The next page (Ex. B, Step No. 7) requires Mr. Keithly to fill out the "Create Your

10    Account" form in order to make the purchase. If Mr. Keithly did nothing at this point, there

11    would be no purchase of any kind and no Identity Protect subscription. Mr. Keithly had to

12    click "Confirm the Purchase and Show my Report" button to make the purchase after entering

13    his credit card information. And once again there is an "Order Summary" reminding him that

14    he is agreeing to the "Identity Protect Trial."

15    The last page of Exhibit B (Step No. 8) is the e mail that Intelius automatically sent to

16    Mr. Keithly confirming a purchase. It again contains the "Order Details" showing that Mr.

17    Keithly has a) purchased a Background Report and b) agreed to an "Identity Protect Trial."

18    No reasonable consumer who read the material contained on the above pages

19    could unwittingly sign up for Identity Protect. The individual Intelius presentations are at least

20    as clear as the Adaptive presentation on which the *VistaPrint* court ruled, and they are

21    repeated. The webpages assure knowing purchases by repetition, making the Intelius

22    presentation even clearer than the Adaptive presentation. Mr. Keithly was a) given three

23    opportunities to buy only the Background Report (or nothing) (Steps No. 3, 4 and the purchase

24    page (Step No. 7)); b) reminded over and over that Identity Protect was (or could be) included

25    in the order, involved a "7 day trial" and that signing up for it resulted in a $10 discount on the

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT - 17

1  Background Report (Ex. B Steps No. 3, 4, 5, 6, 7); c) advised twice on Step No. 4 (the same

2  page that offers the opportunity to reverse course and remove Identity Protect) that after the

3  seven day trial his credit card would be charged $19.95 per month for the Identity Protect

4  service.

5  The Intelius presentation is "clear and easily understandable by anyone capable of

6  making an online purchase." Yet, plaintiffs allege that Mr. Keithly believed that he ordered a

7  $39.95 background search, but "did not knowingly order" a $19.95 Identity Protect

8  subscription. Cmplt. ¶7. Assuming the truth of plaintiffs' allegations, it appears that Mr.

9  Keithly did not read the Intelius webpages. The plaintiffs do not allege that he did.

**D.     Plaintiffs' Declaratory Judgment Claim Should Be Dismissed Because There Is No Substantial Controversy Between the Parties.**

Plaintiffs' declaratory judgment claim is derivative and/or expressly contingent on their

CPA claim. Cmplt. ¶¶ 42 - 44. Plaintiffs seek a declaration that "Defendants' sign-up

statements on the Intelius websites have a tendency to mislead and deceive members of the

Class." Cmplt. ¶ 43. Because the CPA claim fails as a matter of law, the plaintiffs have no

basis for seeking declaratory relief. "A plaintiff must establish standing by showing that there

is a substantial controversy, between parties of adverse interest, of sufficient immediacy and

reality to warrant issuance of a declaratory judgment." *Scott v. Pasadena Unified School

District*, 306 F.3d 646, 658 (9th Cir. 2002). Intelius adequately disclosed the terms of the offers

that plaintiffs accepted and, as a matter of law, Intelius committed no deceptive act or conduct.

Accordingly, plaintiffs' declaratory judgment claim should be dismissed.

**E.     Should Plaintiffs' Claims Proceed, Adaptive Marketing LLC Must Be Added As a Necessary Party.**

The plaintiffs' class action claims based on the Adaptive offer require this Court to rule

on the validity and enforceability of Adaptive's contracts with the putative class members.

Cmplt. ¶¶ 1-3, 15, 18-19, 44. Under the criteria of Rule 19(a), Adaptive, as a party to the

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700  FAX. (206) 623-8717

1    underlying subscription service contracts, is a necessary party to this action. A party is

2    necessary to an action and must be joined if it "claims an interest relating to the subject matter

3    of the action and is so situated that the disposition of the action in [its] absence may ... leave

4    any of the persons already parties subject to a substantial risk of incurring double, multiple, or

5    otherwise inconsistent obligations by reason of the claimed interest." Fed. R. Civ. P. 19(a)(2).

6        Resolution of the plaintiffs' claims necessarily requires determination of the rights of

7    the putative class members *vis a vis* Adaptive: i.e., plaintiffs essentially claim that their

8    subscription agreement with Adaptive is void or unenforceable and that they are entitled to

9    restitution. A ruling in plaintiffs' favor would invalidate a contract to which Adaptive, not

10    Intelius, is a party. An award of restitution would require repayment of money that Adaptive,

11    not Intelius, received from the plaintiffs. Such a ruling inevitably bears on Adaptive's and

12    Intelius' respective rights under their 2007 Marketing Agreement. It also bears on Adaptive's

13    rights under its contracts with plaintiffs and the class members.

14        Adaptive's interests are inextricably bound to resolution of plaintiffs' claims.

15    Therefore, should the suit proceed, Adaptive must be joined. *See, e.g., Expeditors Int'l of*

16    *Washington, Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661, 665 (W.D. Wash. 2004)

17    (signatory to, and the recipient of assets under, disputed asset purchase agreement had

18    sufficient interest relating to subject matter of action and must be joined pursuant to Rule

19    19(a)).

20                             **V. <u>CONCLUSION</u>**

21        For the reasons stated herein, Defendants respectfully request that the Court dismiss the

22    plaintiffs' complaint with prejudice.

23

24

25

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700  FAX. (206) 623-8717

DATED this 11th day of January, 2010.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By_____

Arthur W. Harrigan, Jr., WSBA #1751
Tyler L. Farmer, WSBA #39912
Attorneys for Defendants Intelius Inc.
and Intelius Sales Company LLC

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of January, 2010, I served a true and correct copy of the foregoing DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT on the following individuals:

**Attorney for Plaintiffs**

| | |
|---|---|
| Mark A. Griffin, WSBA #16296 | _____ Messenger |
| Karin B. Swope, WSBA #24015 | _____ Email |
| Keller Rohrback L.L.P. | ✓ ECF |
| 1201 Third Avenue, Suite 3200 | _____ Facsimile |
| Seattle, WA 98101 | _____ US Mail |
| Telephone: (206) 623-1900 | |
| Fax: (206) 623-3384 | |
| Email: mgriffin@kellerrohrback.com | |
| kswope@kellerrohrback.com | |

| | |
|---|---|
| Andrew N. Friedman | _____ Messenger |
| Victoria S. Nugent | _____ Email |
| Whitney R. Case | ✓ ECF |
| Coehn Milstein Sellers & Toll P.L.L.C. | _____ Facsimile |
| 1100 New York Avenue, NW, Suite 500 West | _____ US Mail |
| Washington, DC 20005-3964 | |
| Telephone: (202) 408-4600 | |
| Fax: (202) 408-4699 | |
| Email: afriedman@cohenmilstein.com | |
| vnugent@cohenmilstein.com | |
| wcase@cohenmilstein.com | |

_____
Susie Clifford

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700 FAX. (206) 623-8717