1

2

3

4

5

6

7

8

9

THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE KEITHLY, DONOVAN LEE, and EDITH ANNA CRAMER, Individually and on Behalf of all Others Similarly Situated,<br><br>                                        Plaintiffs,<br><br>    v.<br><br>INTELIUS, INC., A Delaware Corporation; and INTELIUS SALES, LLC, A Nevada Limited Liability Company,<br><br>                                        Defendants. | No. C09-1485RSL<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br>**NOTE ON MOTION CALENDAR FOR:  March 5, 2010**<br><br>**ORAL ARGUMENT REQUESTED** |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................. 1

FACTS ................................................................................................................. 2

ARGUMENT ........................................................................................................ 5

I.  PLAINTIFFS' CLAIMS ARE PROPERLY PLED UNDER THE
    STANDARDS GOVERNING RULE 12(b)(6) AND THEREFORE
    SHOULD NOT BE DISMISSED. .............................................................. 5

    A.  The Washington Consumer Protection Act Prohibits
        Communications That May Be Facially Accurate But Contextually
        Misleading .......................................................................................... 7

    B.  Defendant's Collective Communications With Respect to Plaintiffs
        Lee and Cramer Constitute Unfair and Deceptive Acts Under the
        CPA ...................................................................................................... 9

    C.  Defendant's Collective Communications to Plaintiff Keithly Suffer
        From the Same Fundamental Flaws as the Unfair and Deceptive
        Communications to Plaintiffs Lee and Cramer .................................. 16

    D.  Defendant's Reliance on VistaPrint is Misplaced ............................... 19

II. BECAUSE ADAPTIVE MARKETING IS NOT A REQUIRED PARTY,
    DISMISSAL UNDER RULE 12(b)(7) AND RULE 19 WOULD BE
    INAPPROPRIATE ................................................................................... 21

CONCLUSION ................................................................................................... 24

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

CASES

5

*Am. Home Prods. Corp. v. Fed. Trade Comm'n*,
    695 F.2d 681 (3d Cir. 1982)....................................................................10

6

7

*Access 4 All, Inc. v. Atlantic Hotel Condo. Ass'n*,
    No. 04-61740, 2005 WL 5632057 (S.D. Fla. Aug. 17, 2005) .................22

8

9

*Bakia v. County of Los Angeles*,
    687 F.2d 299 (9th Cir. 1982) ..................................................................22

10

*Canal Indem. Co. v. Adair Homes, Inc.*,
    No. 09-5561, 2010 WL 55871 (W.D. Wash. Jan. 4, 2010) ....................21

11

12

*Clinton v. Babbitt*,
    180 F.3d 1081 (9th Cir. 1999) ................................................................22

13

14

*Contos v. Wells Fargo Escrow Co.*,
    No. C08-8382, 2009 U.S. Dist. LEXIS 43593 (W.D. Wash. May 20, 2009)..........................11

15

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
    375 F.3d 861 (9th Cir. 2004) ..................................................................23

16

17

*Doe v. United States*,
    419 F.3d 1058 (9th Cir. 2005) ..................................................................5

18

19

*Dwyer v. J.I. Kislak Mortgage Co.*,
    103 Wash. App. 542 (2000)......................................................................8

20

*Fed. Trade Comm'n v. Cyberspace.com LLC*,
    453 F.3d 1196 (9th Cir. 2006) ............................................................9, 10

21

22

*Fed. Trade Comm'n v. Cyberspace.com LLC*,
    *LLC*, No. 00-1806, 2002 WL 32060289 (W.D. Wash. 2002)............................11, 12

23

24

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wash. 2d 778 (1986).........................................................................7

25

*In re VistaPrint Corp Marketing and Sales Practices Litigation*,
    No. 08-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) .....................19, 20, 21

26

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - ii

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*In re Washington Mut. Inc. Securities Litig.*,
  No. 08-1919, 2009 WL 3517630 at *2 (W.D. Wash. Oct. 27, 2009) ......................................6

*Indoor Billboard/Washington v. Integra Telecom of Washington*,
  162 Wash. 59 (2007) ................................................................................................6, 8

*Jankanish v. First Am. Title Ins. Co.*,
  No. 08-1147, 2009 WL 779330 (W.D. Wash. Mar. 23, 2009) ..................................9

*Korematsu v. United States*,
  584 F. Supp. 1406 (N.D. Cal. 1984) ................................................................7, 12

*Liengang v. Pierce Co. Med. Bureau, Inc.*,
  131 Wash. 2d 133 (1997) ..........................................................................................7, 8

*Lowden v. T-Mobile USA, Inc.*,
  No. C05-1482, 2009 U.S. Dist. LEXIS 21759 (W.D. Wash. Feb. 18, 2009) ..........................11

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir.1990) ................................................................................21, 23

*Michael v. Mosquera-Lacy*,
  165 Wash. 2d 595 (2009) ................................................................................................7

*Natural Res. Defense Council v. Kempthorne*,
  539 F. Supp. 2d 1155 (E.D. Cal. 2008) ..............................................................................22

*Panag v. Farmers Ins. Co. of Wash.*,
  166 Wash. 2d 27 (2009) ................................................................................7, 8, 9, 19

*Robinson v. Avis Rent A Car Sys., Inc.*,
  106 Wash. App. 104 (2001) ................................................................................................8

*S. Union Co. v. Sw. Gas Corp.*,
  165 F. Supp. 2d 1010 (D. Ariz. 2001) ..............................................................................21

*Salois v. Mut. of Omaha Ins. Co.*,
  90 Wash. 2d 355 (1978) ................................................................................................7

*Smale v. Cellco Partnership*,
  547 F. Supp. 2d 1181 (W.D. Wash. 2008) ........................................................................11

*Sw. Sunsites, Inc. v. Fed. Trade Comm'n*,
  785 F.2d. 1431 (9th Cir. 1986) ................................................................................8

*Teragren, LLC v. Smith & Fong Co.*,
  No. 07-5612, 2008 WL 725186 (W.D. Wash. March 17, 2008) ..............................15

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - iii

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**STATUTES AND REGULATIONS**

RCW § 19.86.090 .................................................................................................................7

RCW § 19.86.920 ...............................................................................................................10

Telemarketing Sales Rule 68 Fed. Reg. 4580...................................................................15

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - iv

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3

**INTRODUCTION**

4

Plaintiffs Bruce Keithly, Donovan Lee, and Edith Anna Cramer used Intelius's website to

5

purchase electronic reports that were sold on a pay-per-use basis. In the process of buying these

6

reports, Plaintiffs were presented with promotional offers asking them to try other services on a

7

free, trial-basis. While Plaintiffs provided Intelius with their credit card and billing information

8

to buy the reports they wanted, they were never asked to provide payment information for these

9

additional promotional products, nor did they commit to purchase the subscription services

10

offered on a promotional basis. Plaintiffs subsequently found that Intelius and its business

11

partner, Adaptive Marketing, charged their credit cards significant monthly fees for unwanted

12

subscription services that Plaintiffs did not know about, did not want, and have not used. As a

13

result, Plaintiffs filed a complaint against Intelius, asserting claims under the Washington

14

Consumer Protection Act in October 2009.

15
16

Defendants move the Court to dismiss the Complaint in its entirety on two grounds.

17

First, Defendants ask the Court to hold that, as a matter of law, the disclosures set forth on

18

Intelius's website preclude any finding of deceptive or unfair practices. Second, Defendants ask

19

the Court to find that Intelius's co-venturer, Adaptive Marketing, is an indispensible party

20

without which the litigation cannot proceed. Defendants' motion should be denied on both

21

bases.

22
23

Plaintiffs have properly pled their claims under the CPA and the procedural rules of this

24

Court. Defendants' conduct – when analyzed in context – is a perfect example of conduct that is

25

likely to mislead reasonable consumers. While proof of actual deception is not required under

26

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 1

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the Act, hundreds of Intelius customers have lodged complaints with the Washington Attorney

General and the Better Business Bureau about this conduct, providing ample support for

concluding the Defendants' practices are, indeed, deceptive.  Moreover, Plaintiffs' decision to

sue Intelius and not Adaptive Marketing is squarely within the discretion of the complainant.

Defendants fail to show any legitimate burden or substantial risk that warrants mandatory joinder

or dismissal.

## FACTS

Defendant Intelius, Inc. describes itself as an "information commerce company."  Intelius

sells a number of information products -- so-called intelligence reports, which include people

searches, background checks, and reverse cell phone directories -- on a pay-per-use basis.  Dkt

#1, Compl., ¶¶ 1, 11-12.  People searches cost as little as $1.95 each and deluxe background

reports cost $49.95.  Intelius sells these products via the Internet and claims that its network of

websites was one of the top 100 most visited web properties in the U.S. for April 2008.  *Id.*, ¶ 12.

According to Intelius, since its inception in January 2003, it has processed more than 16 million

orders and over four million customer accounts have purchased its services.  *Id.*, ¶ 12.

In addition to revenue derived from the direct sale of these information products to

customers, Intelius, Inc., with its wholly-owned subsidiary Intelius Sales LLC (collectively,

"Intelius" or "Defendant"), also receives substantial revenue from "post-transaction marketing."

*Id.*, ¶ 14.  Under the post-transaction marketing model, Intelius sells the prospect of a captive

audience – the Intelius customer making a volitional on-line purchase complete with payment

information  – to a third-party, which then presents a "special offer" product or service.  *Id.,* ¶¶

15-16.  The "special offer" is typically framed as a free trial or "cash back" for participating in a

survey, but discloses only in fine-print that a monthly fee will be charged if the customer does

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

not take affirmative steps to disclaim the special offer or cancel the specially offered service. *Id.*, ¶¶ 16-17. If the customer agrees to accept the "special offer," Intelius forwards the customer's pre-acquired payment information (typically credit card account and billing information provided while making his volitional purchase) to the third-party vendor. *Id.*, ¶ 2. Using graphics, ambiguous language and the psychology of consumer expectations, Intelius and the third-party vendor make it difficult for the customer to understand where the volitional purchase ends and the "special offer" begins, leading customers to unwittingly purchase both. *Id.*, ¶¶ 15-20. Intelius and the third-party vendor then divide the proceeds attributable to the post-transaction marketing sale. *Id.*, ¶ 2.

One of Intelius's post-transaction marketing partners is Adaptive Marketing, which offers a variety of membership programs (the "Adaptive Programs") including "24 Protect Plus," "Privacy Matters," "ValueMax" and "Family Safety." *Id.*, ¶¶ 2, 14. As explained in a March 2009 *Seattle Weekly* article, the post-transaction marketing scheme works like this:

> [M]any users apparently failed to realize they are giving such consent, and it's easy to see why. Say you do a "people search" through Intelius, a service that costs $1.95 and provides an individual's phone numbers, addresses, birthday, relatives, and other information. After you enter your credit-card number, a page comes up thanking you for your order in big, bold type. In somewhat smaller and less-bold type, it also says you can get $10 back as a member of ValueMax (an Adaptive program offering discounts at stores like Kmart and Bed Bath & Beyond). In really small, regular type, it tells you that membership will entail your credit card being charged $19.95 a month after a "7-day FREE trial period."
>
> Remember, you still haven't gotten access to the information you paid for. To get it, you have two choices: Click on the big orange rectangle, off to the side of all these instructions that says "YES, and show my report," or click on the small black one-line link that says "No, show my report." The YES button is what gets you monthly ValueMax fees.

*Id.*, ¶ 16. This scenario is similar to the experience of the named Plaintiffs alleged here.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

In June 2008, Donovan Lee and Edith Anna Cramer (collectively referred to as "Lee/Cramer") paid for a search report from Intelius using a credit card. *Id.*, ¶ 8. Unbeknownst to them, at the time they purchased the Intelius report, Plaintiffs Lee/Cramer began incurring monthly charges for unordered services. *Id.*, ¶ 8. The services, billed to the Plaintiffs' credit card at $19.95 per month, appeared on the credit card statements as "Family Protect," "AP9*Family Safety Repo-V" and "Intelius Subscription" and ultimately totaled hundreds of dollars. *Id.*, ¶ 8.

In April 2009, Bruce Keithly believed that he had purchased a background report from Intelius for $39.95 using a credit card. *Id.*, ¶ 7. Unbeknownst to him, at the time he purchased the Intelius report, Mr. Keithly enrolled in a subscription service called "Identity Protect" at a monthly cost of $19.95. *Id.*, ¶ 7. Mr. Keithly only learned about the Identity Protect charge when he reviewed his next credit card statement, where the purchase was described as "Intelius Subscription." *Id.*, ¶ 7. He called Intelius to cancel the service and request a refund. *Id.*, ¶ 7. Intelius refused to provide a refund and subsequently charged him $19.95 for a second month of this service. *Id.*, ¶ 7.

Plaintiffs allege that Intelius's post-transaction marketing practices, by structure and design, have the capacity to deceive. *Id.*, ¶¶ 16-17. The company has used post-transaction marketing to enroll or facilitate the enrollment of Plaintiffs and the Class members into these unwanted membership programs without adequately disclosing, among other things: (1) that the customer is being enrolled in the subscription service offered by a third-party vendor without the customer's explicit authorization or consent; (2) the recurring cost of the service and the identity of the billing party; (3) the terms and conditions of the subscription service; and (4) the manner by which the customer may cancel the service. *Id.*, ¶ 19. The shortcomings in these point-of-

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 4

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   sale disclosures are further compounded by billing practices, which make the subscription

2   charges hard to detect and track.  For instance, the monthly fees charged for these services are

3   modest ($19.95) and unlikely to attract scrutiny.  *Id.*, ¶¶ 7, 8, 20.  The subscription services are

4   identified by changing, non-descriptive names and – even when ostensibly provided by Adaptive

5   Marketing – may appear on the customer's credit card statement as an "Intelius Subscription" or

6   "Intelius.com" charge, further obfuscating the nature of the charge.  *Id.*, ¶ 8.  Finally, Intelius

7   fails to respond appropriately and timely to customer cancellation requests.  *Id.*, ¶¶ 7, 18.

8

9       Intelius's practices not only have the capacity to deceive, but have actually deceived

10  consumers.  The Washington State Attorney General and the Better Business Bureau have

11  received hundreds, if not thousands, of complaints about Intelius's marketing and post-

12  transaction marketing practices.  *Id.*, ¶ 20.  Profound concerns about the impact of these practices

13  on individual consumers and e-commerce more broadly prompted the United States Senate

14  Committee on Commerce, Science and Transportation to convene a hearing dedicated to

15  "aggressive sales tactics on the Internet" on November 16, 2009.  A copy of the Senate

16  Committee Staff Report, explaining industry practices, marketplace norms and consumer

17  deception, is attached to the Declaration of Karin B. Swope, filed herewith, as Exhibit 1.

18

19                              **ARGUMENT**

20  **I.   PLAINTIFFS' CLAIMS ARE PROPERLY PLED UNDER THE STANDARDS**
    **     GOVERNING RULE 12(b)(6) AND THEREFORE SHOULD NOT BE**
21  **     DISMISSED.**

22      A court reviewing a motion to dismiss under Rule 12(b)(6) must construe the complaint

23  in the light most favorable to the plaintiff and accept all well-pled allegations as true.  *Doe v.*

24  *United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *In re Washington Mut. Inc. Securities Litig.*,

25

26

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 5

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    No. 08-1919, 2009 WL 3517630 at *2 (W.D. Wash. Oct. 27, 2009) (*quoting Iqbal* and

2    *Twombly*).

3            Where there "is no dispute about what the parties did, 'whether the conduct constitutes an

4    unfair or deceptive act can be decided by th[e] court as a question of law.'" *Indoor*

5    *Billboard/Washington v. Integra Telecom of Washington,* 162 Wash. 59, 73 (2007) (citation

6    omitted). But it is premature to conclude that there is no dispute here about the conduct of the

7    parties. The parties have not agreed on the representations made by Intelius to Plaintiffs and the

8    Class. Intelius has unilaterally submitted black-and-white screens reflecting parts of Plaintiffs'

9    transactions, but not all of the screens, in color, that comprise the entire transactions. Discovery

10   is needed to establish the complete form and context of these transactions, and will show that

11   Intelius surreptitiously led Plaintiffs and Class members to purchase unwanted products.

12   Plaintiffs also intend to seek discovery that will show that Intelius's deceptive marketing

13   approach is, in fact, calculated. And Plaintiffs will seek additional discovery that will confirm

14   that they and members of the Class unwittingly agreed to accept these special offers, including:

15   • payment or redemption rates for the $10 CASH BACK offered by Intelius and Adaptive

16       Marketing;

17   • Intelius's knowledge of customer complaints regarding this aggressive post-transaction

18       marketing; and

19   • Intelius's usage and cancellation rates for the unwanted services tethered to Intelius

20       products or sold post-transaction by Intelius and Adaptive Marketing.

21           For the reasons set forth in Plaintiffs' Opposition to Defendants' Request for Judicial

22   Notice, filed herewith, Plaintiffs believe it would be incorrect as a matter of law for the Court to

23   take judicial notice of the evidence submitted by Defendant. The Court, however, may consider

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 6

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

legislative facts, expressed in Congressional reports and testimony, as well as commercial practices and social norms. *See Korematsu v. United States*, 584 F. Supp. 1406, 1414 (N.D. Cal. 1984).

> ### A.     The Washington Consumer Protection Act Prohibits Communications That May Be Facially Accurate But Contextually Misleading.

Under the Washington Consumer Protection Act ("CPA"), RCW § 19.86.090 *et seq.*, a plaintiff must establish the following elements to prevail: (1) an unfair or deceptive act or practice; (2) the act or practice complained of occurred in the conduct of trade or commerce; (3) the act or practice has an impact on public interest; (4) the plaintiff was injured in her business or property; and (5) the unfair or deceptive act caused the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). Here, Defendant only argues that Plaintiffs cannot establish the first element: the existence of an unfair or deceptive act. Dkt # 18, Def. Mot. to Dismiss at 9. Defendant specifically contends that the terms of all transactions were clearly disclosed to Plaintiffs and that these disclosures preclude any finding of deception. *Id.* at 9-10. But as explained below, Defendant's disclosures were inadequate – in content, form and presentation – and therefore incapable of curing the deceptive nature of Defendant's sales practices.

As an initial matter, the Washington Supreme Court has repeatedly recognized that the CPA is a remedial statute and should be liberally construed. *See Michael v. Mosquera-Lacy*, 165 Wash. 2d 595, 602 (2009); *Salois v. Mut. of Omaha Ins. Co.*, 90 Wash. 2d 355, 358 (1978). Against that backdrop, Washington courts have held that an act or practice is deceptive under the CPA where it has "the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 47 (2009) (citing *Liengang v. Pierce Co. Med. Bureau, Inc.*,

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 7

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

131 Wash. 2d 133, 150 (1997)).  Thus, a plaintiff need not plead that he was actually deceived or that the defendant intended to deceive, though such evidence may be used to show a capacity to deceive.  *Indoor Billboard/Washington*, 162 Wash. 2d at 74.  As the Washington Supreme Court has explained, "[t]he purpose of the capacity-to-deceive test is to deter deceptive conduct *before* injury occurs."  *Id.* at 75 (citation omitted) (emphasis in original).  Moreover, the question of whether a representation is deceptive is answered objectively – from the perspective of a reasonable consumer – and not subjectively.  *See Panag*, 166 Wash. 2d at 47.  Indeed, the Washington Supreme Court follows the Federal Trade Commission's ("FTC") guidance: "in evaluating the tendency of language to deceive, the [FTC] should look not to the most sophisticated readers but rather to the least."  *Id.* at 50 (citations omitted).

"Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer."  *Id.* (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)); *see also Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wash. App. 104, 116 (2001) (recognizing that "knowing failure to reveal something of material importance is 'deceptive' within the CPA").  Washington courts have also held that practices may be found deceptive where disclosures are incomplete, contradicted or obfuscated by additional information, or simply not provided in a timely manner.[1]  Thus, Washington courts have held that "[a] communication *may contain accurate information yet be deceptive*."  *Panag*, 166 Wash. 2d at 50 (emphasis added).

---

[1] *See, e.g., Dwyer v. J.I. Kislak Mortgage Co.*, 103 Wash. App. 542, 547-48 (2000) (holding that a fax charge included in mortgage payoff statement without further explanation was deceptive because it created impression that mortgage would not be released unless charge was paid); *Indoor Billboard*, 162 Wash. 2d at 76-77 (finding all of the parties' communications relevant to the question of whether service invoices were deceptive); *Robinson*, 106 Wash. App. at 116 (holding that failure to disclose fees when providing a car rental quote is deceptive "even if the consumer later becomes fully informed before entering the contract").

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

In *Panag*, for example, the court held that a collection agency's letter demanding payment related to an insurance claim was deceptive not because it contained untrue statements, but because "[a]n ordinary consumer would not understand the meaning of a 'subrogation claim' and likely would interpret the collection notices as representing a liquidated debt that the recipient is bound to pay rather than a potential tort claim that is subject to dispute." *Id.* Similarly, this District Court has held that fully disclosed settlement fees may be actionable as deceptive under the CPA where the fees are inconsistent with consumer expectations. *Jankanish v. First Am. Title Ins. Co.*, No. 08-1147, 2009 WL 779330, at *8 (W.D. Wash. Mar. 23, 2009) (permitting claims for disclosed reconveyance fees to proceed where plaintiffs alleged services were performed by a third party and not the party collecting the fee).

In short, context, presentation, and timing are factors that may transform an innocuous communication into a deceptive one under the CPA and should be considered here.

### B. Defendant's Collective Communications With Respect to Plaintiffs Lee and Cramer Constitute Unfair and Deceptive Acts Under the CPA.

Defendant's entire motion to dismiss the claims of Plaintiffs Lee and Cramer rests upon a black-and-white reproduction of a single screen shot reflecting the final step Plaintiffs needed to take to obtain the Intelius "people search" report that they intended to purchase.  However, Defendant's attempt to reduce the disputed transaction to a static screen shot ignores well-established case law described *infra* holding that the context of a communication is of paramount importance when determining whether a CPA claim exists.

For example, in *Cyberspace*, the Ninth Circuit affirmed this Court's order granting summary judgment in favor of the FTC on its claims that the defendant used deceptive marketing practices for internet services. *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir.

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 9

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2006) (affirming *FTC v. Cyberspace.com, LLC*, No. 00-1806, 2002 WL 32060289, at *2 (W.D. Wash. 2002) (J. Lasnik)).[2]  In that case, the defendants sent solicitation checks to thousands of individuals and small businesses bearing small-print disclosures which explained that cashing or depositing the check would constitute an agreement to pay a monthly fee for internet access.  *Id.* at 1198.  The Ninth Circuit found that the conduct was deceptive, because such a solicitation "may be likely to mislead by virtue of the net impression it creates even though the solicitation contains truthful disclosures."  *Id.* at 1200.  The court expressly recognized that "the tendency of the advertising to deceive must be judged by viewing it as a whole . . . . The impression created by the advertising, not its literal truth or falsity, is the desideratum."  *Id.* (citing *Am. Home Prods. Corp. v. FTC*, 695 F.2d 681, 687 (3d Cir. 1982) (internal quotations omitted)).

Here, Defendant's communications similarly evidence deception when viewed as a whole.  First, the customer is informed that his order has been "successfully completed."  Dkt # 19, Thunen Decl. Ex. A at 2.  Common sense tells the customer that he is then entitled to view his electronic report, without making further commitments or payments to Intelius, or anyone else, at that time.  Second, the syntax of Intelius's offer, "Take our 2008 Community Safety Survey and Claim $10 CASH BACK when you try Family Safety Report" makes no sense:  it states a condition precedent ("Take our 2008 Community Safety Survey") and a reward ("Claim $10 CASH BACK"), followed by a second condition precedent ("when you try Family Safety Report").  *Id.*  If Intelius were presenting the terms of this offer clearly, it would read "Try Family Safety Report and Claim $10 CASH BACK" or "Take our survey, Sign-up for Family Safety Report and Claim $10 CASH BACK."  Third, Intelius fails to explain, anywhere on the

---

[2]  The CPA expressly provides that courts may be guided by decisions of the federal courts and final orders of the FTC when construing the CPA.  *See* RCW § 19.86.920.

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 10

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

page, what the $10 CASH BACK relates to.  It is not clear whether the $10 CASH BACK will

be applied to the order successfully completed, or future membership fees for Family Safety

Report.  Fourth, the "Community Safety Survey" is comprised of two questions:

> [1] Does your neighborhood have a sex offender alert program?
>
> ___ Yes ____ No ____ I don't know;
>
> [2] What card type did you use for your Intelius purchase today?
>
> ___ Credit Card  ____ Debit Card.

*Id.*  The question of whether these queries constitute a survey, let alone a survey of "Community

Safety," is a reasonable one that would give rise to confusion in the mind of the ordinary

consumer.  Nor is it clear that answering these two questions constitutes a survey response that

entitles the customer to $10 CASH BACK; no accounting on the page indicates that the customer

is actually the recipient of this benefit.

These defects evidence deceptive language and tactics that alone warrant denial of

Defendant's motion to dismiss.  Defendant cannot escape this conclusion by arguing that its

communications were less precise or artful than they might have been.[3]  As this Court

specifically recognized, "deception may result from the use of statements not technically false or

which may be literally true."  *Cyberspace.com, LLC,* 2002 WL 32060289, at *2 (quotations and

---

[3] Defendant relies upon a small sampling of Washington CPA cases in which courts concluded that adequate and timely disclosures precluded a finding of deceptive practices or acts to stand for the proposition that any disclosure, however confusing or misleading, is sufficient to bar a claim under the Act.  Dkt # 18, Def. Mot. to Dismiss at 12 (citing *Smale v.Cellco Partnership,* 547 F. Supp. 2d 1181, 1183, 1185-89 (W.D. Wash. 2008); *Contos v. Wells Fargo Escrow Co.,* No. C08-838Z, 2009 U.S. Dist. LEXIS 43593, *2-8, *26-30 (W.D. Wash. May 20, 2009); *Lowden v. T-Mobile USA, Inc.,* No. C05-1482, 2009 U.S. Dist. LEXIS 21759, *4-6, *8 (W.D. Wash. Feb. 18, 2009)).  However, all of the cases cited by Defendant involved straightforward, itemized bills.  In each case, the court found that the existence and nature of, as well as the customer's responsibility for, the challenged charges were plainly and fully disclosed either on the statement of charges or in the contract governing the customer account.

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 11

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

citation omitted).  The proper inquiry is to examine the collective impression created by the solicitation, and "not just its individual parts."  *Id.* (citations omitted).

Defendant's arguments also contradict common sense, which demands consideration of Intelius's limited disclosures in the broader context of Plaintiffs' stated intentions and actions. Here, Plaintiffs allege that they visited Intelius's website for the purpose of purchasing a "people search" report and that it was their belief they purchased such a report and nothing more.  Dkt # 1, Compl., ¶ 8.  Defendant admits that before Plaintiffs' report was delivered, Plaintiffs were diverted to a webpage – styled to look like part of Intelius's website, but copyrighted by a third party – where they were offered another product, Family Safety Report.  Dkt # 18, Def. Mot. to Dismiss at 10-11; Dkt # 19, Thunen Decl. Ex. A  at 2.  As explained by Dr. Robert J. Meyer in response to a request for testimony from a U.S. Senate Committee, post-transaction marketing schemes like the one challenged here follow a specific design; each element of the architecture contributes toward consumer deception.  *See* Prepared Statement of Robert J. Meyer Presented to the United States Senate Committee on Commerce, Science and Transportation (Nov. 17, 2009), attached to Swope Decl. as Ex. 2, at 4-5.[4]  These elements, all present here, are:

(1) **an initial legitimate sales setting** – here, www.intelius.com, where Plaintiffs made a volitional purchase using a credit card number that Plaintiffs had to enter into a data-field on Intelius's website (Dkt # 1, Compl., ¶ 8);

---

[4]  Plaintiffs submit this testimony and other pieces of the record assembled by the Senate Commerce, Science and Transportation Committee not to establish adjudicative facts, but rather to provide legislative facts which the Court has the discretion to consider in deciding questions of law.  *Korematsu*, 584 F. Supp. at 1414.

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(2) **a disguised link and enticement** – here, an undisclosed transfer to a interstitial webpage maintained by Adaptive Marketing but designed to look like part of Intelius's website, where Plaintiffs were offered a "cash back" reward (Dkt # 19, Thunen Decl. Ex. A at 2);

(3) **distraction and confusion ploys** – here, a patently absurd survey presented more prominently than the fine-print details of the new sales pitch (*Id.*);

(4) **concealment of the payment mechanism** – here, asking the customer to provide an email address rather than credit card and billing information, an omission that deceptively leads the customer to believe no additional purchase has been made (Dkt # 1, Compl., ¶ 8; Dkt # 19, Thunen Decl. Ex. A at 2);

(5) **post-acceptance retention ploys** – here, billing the customer a low amount ($19.95) that is likely to be overlooked on a credit a card statement and using a variety of non-descript vendor names ("Family Protect," "AP9*Family Safety Repo-V," and "Intelius Subscription")[5] to prevent the customer from seeing recurring charges from one source (Dkt # 1, Compl., ¶ 8; Dkt # 19, Thunen Decl. Ex. A at 2);  and

(6) **negative-option pricing** – here, making the subscription purchase and ongoing payment of subscription  fees the default outcome of the transaction unless the customer takes specific action to stop payment, even where the customer has never used the service (Dkt # 1, Compl., ¶ 8; Dkt # 19, Thunen Decl. Ex. A at 2).

---

[5] The use of "Intelius Subscription" is particularly deceptive in view of Intelius's representations here:  that Family Safety Report is a product of Adaptive Marketing.  *See, e.g.*, Dkt # 18, Def. Mot. to Dismiss at 3.  ("Intelius is referring the consumer to Adaptive, which sells the service and collects the payment from the consumer.").

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    Indeed, Dr. Meyer cited Intelius's website and post-transaction marketing practices as a

2   prime example of this deceptive business model.  Swope Decl. Ex. 2, Meyer Statement at 10-11,

3   Figures 3a-3c.  Dr. Meyer explained:

4

5            When a customer visits the Intelius site, for a small fee they can
             get a report of available public information on a person of interest.
6            **After paying the fee with a credit card, they click a red button
             that says, "confirm the purchase and show my report"** (Figure
7            3a).  But when clicking this button, they are not shown the report,
             but rather are unexpectedly taken to a new site maintained by
8            Vertrue designed to solicit membership in a benefit programs
             called "24 Protect Plus."  A central feature of the page is a request
9            for an email address, under which is **a prominent red button
             labeled "yes and show my report" – presented in the same font
10           as the earlier button**.  Having no expectations of having to
             negotiate a promotion, and simply wanting to see the report that
11           has been paid for, many consumers will reflexively click the red
             button again – an action that will trigger automatic membership.

12   Swope Decl. Ex. 2, Meyer Statement at 10-11[6]

13           If one were to transfer these tactics from an on-line environment to a bricks-and-mortar

14   setting, the impropriety would be even more obvious: a clerk cannot withhold merchandise that

15   has been paid for and require the customer to skillfully answer a series of compound questions to

16   get the purchased merchandise without paying for additional, unsolicited and unwanted products;

17   a clerk cannot convert a failure to refuse new merchandise into a pledge to buy it; and a clerk

18   cannot add merchandise to a customer's bag as he exits the store and then use previously

19   supplied payment information to charge the customer for it.  As another Congressional witness

20   summarized:

21

22           Consumers who access the Internet can quickly access the sites of
23           thousands of different vendors.  The reason why consumers can
             comfortably browse and window shop without having to delve into
24           the fine print governing each vendor's site is that, based on
             experience, they know that until they follow some well-established

25   _____

26   [6] Dr. Meyer's statement discusses and reproduces the screen shot that precedes the Family Safety
     Report enrollment page provided to the Court by Intelius.  When placed in graphic context, the
     deceptive nature of the "yes and show my report" button is more obvious.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

> steps, they are not financially bound to the vendor.  In almost all consumer transactions online, consumers select a product or service and complete a multi-step checkout process that requires entering a preferred payment method as well as shipping and billing addresses.  When the transaction is completed, consumers are presented with a confirmation page with details of the completed transaction.  This norm of online commerce is what allows consumers to safely explore the web, become informed about advertisement offers and complete transactions online.  The fact that this norm has been widely accepted and in a way standardized has helped drive the explosive and economically beneficial growth of online transactions.

Testimony of Florencia Marotta-Wurgler before the United States Committee on Commerce, Science, and Transportation, Hearing on Aggressive Sales Tactics on the Internet and Their Impact on American Consumers (Nov. 17, 2009), attached to Swope Decl. as Ex. 3, at 2.[7]  Thus, here Plaintiffs have clearly alleged a plausible inference in the Complaint that Defendant's conduct has the capacity to deceive a substantial portion of the public – all that is required at the motion to dismiss stage.  *See Teragren, LLC v. Smith & Fong Co.*, No. 07-5612, 2008 WL 725186, at *4 (W.D. Wash. March 17, 2008) ("[T]here is no heightened pleading requirement for the CPA[.]") (applying Washington law).

---

[7] The FTC has found that this type of data pass (also called "preacquired account information") is at odds with consumer expectations and thus deceptive and unfair.  In issuing a rule that regulates this practice in the context of telemarketing, the FTC concluded:  "The record makes clear, in fact, that it is the very act of pulling out a wallet and providing an account number that consumers generally equate with consenting to make a purchase, and that this is the most reliable means of ensuring that a consumer has indeed consented to the transaction…[T]he Commission still believes that whenever preacquired account information enables a seller or telemarketer to cause charges to be billed to a consumer's account without the necessity of persuading the consumer to demonstrate his or her consent by divulging his or her account number, the customary dynamic of offer and acceptance is inverted."  Telemarketing Sales Rule, 68 Fed. Reg. 4580, 4619 (Jan. 29, 2003) (final amended rule).

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 15

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

**C.    Defendant's Collective Communications to Plaintiff Keithly Suffer From the Same Fundamental Flaws as the Unfair and Deceptive Communications to Plaintiffs Lee and Cramer.**

3

4

Defendant argues that Plaintiff Keithly's claims should be dismissed because, Defendant

5

contends, Mr. Keithly was advised, "over and over" that "he [was] **buying** two products for

6

$39.95: a Background Report and Identity Protect Trial."  Dkt # 18, Def. Mot. to Dismiss at 15-

7

17 (emphasis added).  But a cursory review of the screens viewed by an Intelius customer buying

8

a Background Report reveals discrepancies between what Intelius is offering, what the customer

9

is buying, and what Intelius is charging.  Again, Defendant's communications when viewed in

10

their entirety in the context of the full transaction, are unfair or deceptive under the Washington

11

CPA.

12

By Intelius's count, the process of buying Mr. Keithly's background report takes eight

13

steps.[8]  The first time Identity Protect is mentioned is at Step 3, where the customer is asked to

14

select between two options: "$10 off/$39.95/Special Price with Identity Protect" or

15

16

"$49.95/Limited Time Offer."  Dkt # 19, Thunen Decl. Ex. B at 6 (Step No. 3).  The presentation

17

of these two pricing options is -- put most kindly -- nonsensical; a discount and discounted price

18

are presented before the standard price and the standard price is characterized as a "Limited

19

Time Offer."  Moreover, no details about Identity Protect are offered;  it is not described as a

20

product or a service, as free or fee-based, as a single or recurring delivery.  The cost of Identity

21

22

23

24

25

26

---

[8] As explained in Plaintiffs' Opposition to Defendants' Request for Judicial Notice, Plaintiffs dispute the accuracy of the screen shots produced by Intelius on a number of grounds:  (1) Intelius failed to include the screen shots that would have occurred before the series produced, as well as an email confirmation sent to the customer at the conclusion of the transaction; (2) the screen shots are reproduced in black and white rather than color and therefore do not show how certain material was prominent and the fine print was minimized; and (3) the screen shots are static images and fail to capture the dynamic flow of two-way Internet commerce.  Further, Plaintiffs have had no opportunity to confirm – through discovery – that the screen shots proferred by Intelius were viewed by Plaintiffs on the days of their Intelius transactions.

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 16

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   Protect is only revealed at Step 4, in the fine print of the offer details at the bottom of the page.

2   Dkt # 19, Thunen Decl. Ex. B at 7 (Step No. 4).  On the same page, in a more prominent

3   position, the Order Summary itemizes and totals the customer's purchases; the cost of Identity

4   Protect is listed as "$0.00."  Step 4 fails, however, to explain what exactly Identity Protect is – a

5   service (search or query based) or a product (like a report or newsletter) – and how it is

6   delivered.  *Id.*

7

8        Steps 5, 6, 7 and 8 carry-over the Order Summary from Step 4, presenting the customer's

9   purchases as the Background Report at a cost of $39.95 and the Identity Protect Trial at a cost of

10  $0.00.  Dkt # 19, Thunen Decl. Ex. B at 8-11.  None of these pages, including the final order

11  confirmation (Step 8) – which is the consumer's record of the transaction – lists any cost

12  associated with Identity Protect, any information about the initiation and duration of the trial

13  period, or any explanation of the monthly subscription and monthly charge.  *Id.*

14

15       Mr. Keithly never activated or used the Identity Protect service and never received any

16  report from Identity Protect.  After noticing the charge of $19.95 for an unspecified "Intelius

17  Subscription" on his credit card statement, he called Intelius to request a refund and cancellation

18  of the service.  Intelius refused to refund his money and subsequently charged him for a second

19  month of service.  Dkt # 1, Compl., ¶ 7.

20       Even assuming, as Defendant contends, that Identity Protect is an Intelius product and is

21  not marketed post-transaction (Dkt # 18, Def. Mot. to Dismiss at 5, 14), Intelius's

22  communications with Mr. Keithly are nevertheless marked by the majority of features that are

23  found in the post-transaction marketing scheme described above.  These features are:

24

25

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(1) **an initial legitimate sales setting**: www.intelius.com, where Plaintiff selected a product – the Background Report -- that he wanted to buy and made a volitional purchase of that product using a credit card (Dkt # 1, Compl., ¶ 7);

(2) **an enticement:** the promise of a $10 discount off the price of the Background Report if Plaintiff accepted a free trial period for Identity Protect (Dkt # 19, Thunen Decl. Ex. B at 7-8) (Step Nos. 3-4);

(3) **post-acceptance retention ploys**: billing the customer a low amount ($19.95) that was likely to be overlooked on a credit a card statement (Dkt # 1, Compl.,  ¶ 7; Dkt # 19, Thunen Decl. Ex. B at 7) (Step No. 4); and

(4) **negative-option pricing:** making the subscription purchase and ongoing payment of subscription fees the default outcome of the transaction unless the customer takes specific action to stop payment, even where the customer never uses the service (Dkt # 1, Compl., ¶ 7; Dkt # 19, Thunen Decl. Ex. B at 7) (Step No. 4).

Reading the fine print presented at Step 4, one can see that the trial period was activated by clicking the "Continue" button that advanced the purchase of the product that Mr. Keithly wanted:  the Background Report.  Dkt # 19, Thunen Decl., Ex. B at 7 (Step No. 4).  The fine print also states, "After your 7 day free trial, if you do not cancel your Identity Protection membership your credit card will be billed $19.95 and each month thereafter that you continue your membership."  *Id.*  As discussed above, these practices do not conform to standard business norms but rather invert consumer expectations.  But even if these practices were widely followed and accepted, Intelius's disclosures – presented in garbled syntax, minimized in fine print and inserted into the middle of an ephemeral communication – are inadequate under the Washington

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 18

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   law described *supra*, which requires consideration of the disclosures in context rather than in

2   isolation.

3         Any doubt about whether Defendant's conduct is unfair or deceptive is undermined by

4   the simple fact that a substantial portion of the public has indeed been deceived. As set forth

5   previously, an act is unfair or deceptive under the CPA if it has "the capacity to deceive a

6   substantial portion of the public." *Panag*, 166 Wash. 2d at 47 (citation omitted). Furthermore,

7   the Ninth Circuit has recognized that it is entirely appropriate for a court to consider whether

8   individuals have actually been deceived when determining whether conduct is "unfair or

9   deceptive." *See Cyberspace.com LLC*, 453 F.3d at 1201. There, the court's conclusion that the

10   defendant engaged in an "unfair or deceptive" act was "bolstered by undisputed evidence

11   indicating that [defendants'] solicitation actually deceived nearly 225,000 individuals and small

12   businesses." *Id.* The court recognized that "such proof is highly probative to show that a

13   practice is likely to mislead consumers acting reasonably under the circumstances." *Id.*

14         Any argument raised by Defendant suggesting that its disclosures are not deceptive is

15   flatly contradicted by the hundreds – if not thousands – of complaints about the very practices

16   described in the Complaint that have been received by the Washington State Attorney General

17   office and the Better Business Bureau. Dkt # 1, Compl., ¶ 20. Thus, Plaintiffs have alleged facts

18   that constitute a violation of the Washington CPA.

19       **D.**    **Defendant's Reliance on *VistaPrint* is Misplaced.**

20         Defendant urges this Court to accept the conclusions reached by the federal court in *In re*

21   *VistaPrint Corp Marketing and Sales Practices Litigation*, No. 08-1994, 2009 WL 2884727

22   (S.D. Tex. Aug. 31, 2009), and hold that Intelius's practices cannot possibly be construed as

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 19

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

deceptive or misleading by an ordinary consumer.  However, VistaPrint is neither applicable nor persuasive.

While Plaintiffs concede that many of the facts set forth in VistaPrint are similar to the facts presented here, one key difference is apparent: the timing of the transfer of the product purchased from the seller to the customer.  In *VistaPrint*, the customer ordered business cards; obviously, the customer held no expectation that the cards would materialize at the time his order was placed.  *Id.* at *4.  The online transaction was complete when the customer was notified that the order had been successfully placed, which, according to the *VistaPrint* court, happened before the customer was presented with the offer to try the VistaPrint Rewards program.  *Id.*[9]  In contrast, the product Plaintiffs purchased here was an electronic report that Plaintiffs had every expectation of seeing at the time of purchase. Dkt # 1, Compl., ¶ 8. Here, Intelius withheld the "people search" report that Plaintiffs were trying to purchase until Plaintiffs had navigated all of the questions and data fields associated with the Family Safety Report offer.  Dkt # 1, Compl., ¶¶ 8, 16; Dkt # 19, Thunen Decl. Ex. A at 2 (reflecting that report had not been shown to customer at time Community Safety Survey and Family Safety Report offer were presented).  The completion of the first transaction before the presentation of the special offer is dispositive, according to the *VistaPrint* court; the fact that Plaintiffs' people search report was not made

---

[9] The court held that the language "thank[ing] the consumer for their 'purchase from VistaPrint today' and instruct[ing] the consumer to complete the survey and registration to claim the $10.00 cash back "on the VistaPrint.com purchase you made today' made clear that "purchase ha[d] already been 'made' by the time [of] the survey request and the cash back offer to the consumer." *VistaPrint*, 2009 WL 2884727, at *5.  The VistaPrint Rewards offer, moreover, made clear that the $10 cash back would apply to the purchase already made.  Here, as discussed above, the $10 cash back offer was not clearly tethered to any purchase – completed (the "people search" report) or prospective (the Family Safety Report).

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 20

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

available before the Family Safety Report offer appeared renders the *VistaPrint* court's ultimate

legal conclusion inapplicable here.

Setting aside these factual differences, the *VistaPrint* ruling lacks persuasive value

because it fails to set the disputed transaction in its proper context. The *VistaPrint* court

scrutinizes every line of text presented to the customer by the seller, but fails to consider the

larger question: why is the consumer – who is supposed to be the master of this transaction –

forced to fend off misleading solicitations, reject unwanted merchandise and read fine-print

disclosures related to a product *he doesn't want* while trying to buy something he actually does

want? In doing so, the court inverts commonly accepted marketplace standards and approves an

online marketplace in which vendors will be encouraged – emboldened – to present customers

with a barrage of promotional offers requiring the scrutiny typically reserved for actual

purchases. This approach ignores the remedial nature of consumer protection statutes like the

Washington CPA, and fails to anticipate and address the broader negative effects on e-commerce

that will result if consumers lose confidence in Internet vendors.[10] Plaintiffs respectfully submit

that VistaPrint was incorrectly decided as a matter of law and, as a district court opinion from

outside this circuit, should not be followed.

## II.    BECAUSE ADAPTIVE MARKETING IS NOT A REQUIRED PARTY, DISMISSAL UNDER RULE 12(b)(7) AND RULE 19 WOULD BE INAPPROPRIATE

Defendant also argues that this case should be dismissed under Rule 12(b)(7) for failure

to join a necessary party. This argument should be flatly rejected as Defendant falls far short of

---

[10]The *VistaPrint* decision is discussed in the Senate Committee Staff Report, moreover, as anomalous. The Report discusses a number of successful investigations and cases brought by the attorneys general of Minnesota, California, New York, Iowa, and Florida against companies that engage in post-transaction marketing practices similar to the ones challenged here. *See* Swope Decl., Ex. 1, Senate Committee Staff Report at 10-11.

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 21

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  justifying dismissal under the Federal Rules.  This District Court has recognized—whether a

2  party is necessary under Rule 19 is a multi-faceted inquiry in which the *moving party bears the*

3  *burden of proof.  See Canal Indem. Co. v. Adair Homes, Inc.*, No. 09-5561, 2010 WL 55871, at

4  *2 (W.D. Wash. Jan. 4, 2010) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th

5  Cir.1990)); *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1036 (D. Ariz. 2001) ("The

6  burden is on the party seeking to establish the indispensability of another party.").  Importantly,

7  "[t]he inquiry is a practical one and fact specific, and is designed to avoid the harsh results of

8  rigid application."  *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) (quotations and

9  citation omitted).

10        Additionally, an important policy under Rule 19 is the preservation of "plaintiff's right to

11 decide whom he shall sue."  *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982).

12 "Plaintiffs are the masters of their complaint and may choose to join such parties and claims as

13 are permitted by the Federal Rules of Civil Procedure and applicable substantive law."  *Natural*

14 *Res. Defense Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1184 (E.D. Cal. 2008) *see also*

15 *Access 4 All, Inc. v. Atlantic Hotel Condo. Ass'n*, No. 04-61740, 2005 WL 5632057, at *7 (S.D.

16 Fla. Aug. 17, 2005) ("Rule 19 does not eliminate the Plaintiff's right to choose whether to sue …

17 parties separately.").

18        Here, Defendant argues in a perfunctory and conclusory manner in only two paragraphs

19 at the end of its motion that dismissal is warranted if Adaptive Marketing is not joined.  Dkt #

20 18, Def. Mot. to Dismiss at 19.  These bare-boned allegations provide no substantive value to the

21 Court, and therefore Defendant fails to meet its burden to justify dismissal.  Defendant's motion

22 under Rule 12(b)(7) should be denied on this basis alone.

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 22

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    In any event, even if the Court were inclined to examine the merits of Defendant's

2  argument, Adaptive is not a required party under Rule 19(a)(2), as suggested by Defendant.  This

3  rule provides that a party must be joined if:

4           [T]hat person claims an interest relating to the subject of the action
5           and is so situated that disposing of the action in the person's
            absence may (i) as a practical matter impair or impede the person's
6           ability to protect the interest; or (ii) leave an existing party subject
            to a substantial risk of incurring double, multiple, or otherwise
7           inconsistent obligations because of the interest.

8  Fed. R. Civ. P. 19(a)(1)(B).

9    These requirements are not met unless the party has a "legally protected interest in the

10  suit."  *Makah Indian Tribe*, 910 F.2d at 558.  "This interest must be more than a financial stake

11  … and more than speculation about a future event."  *Id.* (citations omitted).  In addition, even if a

12  legally protected interest exists, "the court must further determine whether that interest will be

13  *impaired or impeded* by the suit" and "whether *risk of inconsistent rulings* will affect the parties

14

15  present in the suit."  *Id.* at 558-59 (emphasis in original).

16    Defendant argues that Adaptive's interests are inextricably bound to the resolution of

17  Plaintiffs' claims because Adaptive's rights are implicated under its contracts with Plaintiffs and

18  the putative Class.  Dkt # 18, Def. Mot. to Dismiss at 19.  Defendant therefore claims Adaptive's

19  contractual interests would be impaired without Adaptive's involvement in the case.  However,

20  the existence of a non-party's contractual interest in a case certainly does not compel joinder of

21  the non-party.  The Ninth Circuit has specifically found that in cases where contractual interests

22  are implicated, joinder is required only where an action seeks to set aside a contract, attack the

23

24  terms of a negotiated agreement, or where the litigation seeks to otherwise decimate the contract.

25  *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 881 (9th Cir. 2004)

26  (citations omitted).

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 23

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    None of those circumstances applies here.  In the instant case, Plaintiffs' claims are not

2    contractual in nature.  Plaintiffs seek relief under the Washington CPA based on Intelius's

3    misleading acts and omissions.  Indeed, as the Complaint makes clear, "[w]hile Adaptive may be

4    a separate entity purportedly providing … services to consumers, the  consumers end up with

5    these unwanted services through the direct actions of Intelius *via* the Intelius websites, and the

6    language on the Intelius website has the tendency to mislead customers into unknowingly

7    signing up for these Adaptive Programs."  Dkt # 1, Compl., ¶ 16.

8    The focus of the lawsuit is Intelius's actions only, and this Court can accord complete

9    relief among the existing parties.  Adaptive's contractual interests with Plaintiffs have no bearing

10   upon whether Intelius violated the consumer protection laws of Washington.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the motion to

dismiss be denied.

DATED this 26th day of February, 2010.

By   s/Karin B. Swope
    Mark A. Griffin, WSBA #16296
    Karin B. Swope, WSBA #24015
    1201 Third Avenue, Suite 3200
    KELLER ROHRBACK L.L.P.
    Seattle, WA  98101
    Tel:(206) 623-1900
    Fax: (206) 623-3384
    mgriffin@kellerrohrback.com
    kswope@kellerrohrback.com

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2         Andrew N. Friedman
          Victoria S. Nugent
3         Whitney R. Case
          COHEN MILSTEIN SELLERS & TOLL
4         P.L.L.C.
          1100 New York Avenue, N.W., Suite 500 West
5         Washington, DC  20005-3964
          Tel: (202) 408-4600
6         Fax: (202 408-4699

7
          *Counsel for Plaintiffs Bruce Keithly, Donovan
8         Lee and Edith Anna Cramer*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
(09-CV-1485 RSL) Page - 25

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on February 26, 2010, I caused to be served a true and correct copy

3

of the **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the

4

following recipients via the method indicated:

5

6
7
8
9
10

Arthur W. Harrigan, Jr., WSBA #1751     ⊠ Via ECF
Tyler Farmer, WSBA #39912                      ☐ Via Hand Delivery
DANIELSON HARRIGAN LEYH &          ☐ Via U.S. First Class Mail
TOLLEFSON, LLP                                      ☐ Via facsimile to (206) 623-8717
999 Third Avenue, Suite 4400                   ☐ Via email to:
Seattle, Washington 98104                                    arthurw@dhlt.com; and
Telephone:  (206) 623-1700                                 tylerf@dhlt.com

*Attorneys for Intelius, Inc and*
*    Intelius Sales, LLC*

11

12

DATED this 26th day of February, 2010.

13

14

15

s/Karin B. Swope
Karin B. Swope

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384