HONORABLE ROBERT S. LASNIK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE KEITHLY, DONOVAN LEE, and EDITH ANNA CRAMER, Individually an on Behalf of all Other Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INTELIUS, INC., A Delaware Corporation; and INTELIUS SALES, LLC, A Nevada Limited Liability Company,<br><br>Defendants. | Case No. C09-1485-RSL<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT<br><br>**NOTED FOR:**<br>**MONDAY, MARCH 8, 2010**<br>**(ORAL ARGUMENT REQUESTED)** |

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## I. SUMMARY OF ARGUMENT

Comparing the Complaint's allegations to the offers Plaintiffs accepted demonstrates that there is no basis for the action. In their opposition brief, Plaintiffs largely abandon the claim that they were misled, substituting testimony at a Senate Committee that does not pertain to the two offers at issue. Intelius provided authenticated full color copies of those offers. *See* Declaration of Ronald V. Thunen III.[1] Plaintiffs oppose the Court's considering them, but do not dispute that they are the offers Lee/Cramer and Mr. Keithly accepted. The offers' terms are clear. With respect to the Identity Protect offer accepted by Mr. Keithly, Plaintiffs acknowledge as much. Plaintiffs' Opposition ("Opp.") at 18.[2] Plaintiffs' claims cannot survive based on conclusory assertions that, "unbeknownst" to them, they were surreptitiously enrolled in subscription programs with no facts alleged to support that claim. Cmplt. ¶¶ 7-8.

## II. FACTUAL BACKGROUND

In June 2008, Ohio residents Lee/Cramer purchased an Intelius search report and then accepted a post-transaction Family Safety Report subscription of non-party Adaptive Marketing LLC ("Adaptive"). Cmplt. ¶ 8; Thunen Decl. Ex. A.

In March 2009, Seattle Weekly published an article titled *Intelius and the Dubious Art of Post-Transaction Marketing*. Cmplt. ¶ 16.

On April 7, 2009, Washington State resident Bruce Keithly purchased a $49.95 Intelius background report at a $10 discount available to those who chose to accept a trial subscription to Intelius' Identity Protect ("IDP") product. Cmplt. ¶ 7; Thunen Decl. Ex. B, Steps 2 – 7. The IDP offer was not "post-transaction"; it formed part of the purchase decision for the

---

[1] Hereafter referred to as the "Thunen Decl." With this Reply, Intelius concurrently submits the Supplemental Declaration of Ronald V. Thunen III in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint (the "Supp. Thunen Decl."). The Supp. Thunen Decl. provides additional information regarding the archival source of the webpage offers and re-attaches the offers at issue for ease of reference.

[2] Plaintiffs state that "[r]eading the fine print presented at Step 4, one can see the trial period was activated by clicking the "Continue" button that advanced the purchase of the product that Mr. Keithly wanted: the Background Report … The fine print also states 'After your 7 day free trial, if you do not cancel your Identity Protection membership your credit card will be billed $19.95 and each month thereafter that you continue your membership.'" Opp. at 18, lines 16 -22.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 1
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

background report like thousands of other "in-cart" internet offers (*i.e.*, where all selected items are itemized in a virtual shopping cart prior to purchase). Mr. Keithly selected the discounted price and persisted in this choice after being invited to change his mind on the next page and was reminded several times that he was accepting two offers with a resulting discount. When Mr. Keithly read his credit card statement, he noticed a $19.95 charge for "Intelius Subscription." Cmplt. ¶ 7. He then called Intelius to cancel the service and request a refund. *Id.* He alleges that Intelius refused to provide a refund and billed him for another month of the subscription product. *Id.* Intelius accepts these allegations as true for the limited purpose of this motion.

On August 26, 2009, non-party California resident Denise Baxter complained of the Intelius-Adaptive post-transaction marketing practices and an Intelius IDP offer in a separate suit filed in U.S. District Court for the Central District of California, Case No. 8:09-cv-01031-AG-MLG (the "Baxter Action").

On October 19, 2009, Plaintiffs filed the instant suit, which contains allegations nearly identical to those in the initial Baxter complaint.[3] Mr. Keithly and Lee/Cramer purport to represent a class of customers who

> pay for one of the Intelius services, Intelius then transfers the consumers' credit/debit card and other billing information to Adaptive. Plaintiffs and class members are then surreptitiously enrolled in one or more of the Adaptive programs, and are billed for these unwanted services on a monthly basis. (Cmplt. ¶ 15.)

Intelius and Adaptive moved to dismiss the Baxter Action on December 21, 2009 on grounds similar to those presented on this motion. Rather than oppose the motion, on

---

[3] Because of the obvious overlap of facts and legal issues, Intelius filed a motion with the Judicial Panel for Multidistrict Litigation for an order consolidating these cases (and any copy cat suits) to the Western District of Washington (Docket No. 13). Baxter subsequently filed an amended complaint that, among other things, deleted reference to the Identity Protect product that is the subject of Mr. Keithly's claims. On January 21, 2010, Intelius moved to stay the Baxter action. On March 1, 2010, Judge Guilford of the Central District of California granted Intelius' motion in part, staying dispositive motion practice but permitting discovery. Intelius' motion to consolidate the *Baxter* and *Keithly* suits is set for argument before the Judicial Panel on March 25, 2010.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 2
Cause No.: C09-1485-RSL

January 8, 2010, Baxter amended her Complaint by, among other things, dropping any allegations relating to Intelius' IDP product.

### III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)) (italics added); *id.*, ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, at 555). Under the doctrine of incorporation by reference, "documents whose contents are alleged in a complaint and whose authenticity no party questions … may be considered by a court ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).[4] The Court may consider the terms of the webpage offers that are foundational to plaintiffs' claims.[5]

### IV. ARGUMENT

Plaintiffs agree that, where there is no dispute regarding defendants' conduct, "whether the conduct constitutes an unfair or deceptive act can be decided by the court as a question of law." Opp. at 6 (citing *Indoor Billboard/Washington v. Integra Telecom of Washington*, 162 Wn.2d 59, 73 (2007)). The test is objective and is not determined by plaintiffs' subjective experience. *See, e.g., Panag v. Farmers Ins. Co.*, 166 Wn.2d 27, 50 (2009) ("Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer.") (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)). A deceptive practice is proven by establishing the following three elements:

---

[4] Overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).
[5] The bases for the Court's consideration of the offer terms are more fully discussed in the concurrently filed Reply in Support of Intelius' Request for Judicial Notice.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 3
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

[1] probable, not possible deception ("*likely* to mislead," not *tendency and capacity* to mislead").
[2] potential deception of "consumers acting reasonably in the circumstances," not just any consumers.
[3] [a material deception] likely to cause injury to a reasonable relying consumer[.]

*Sw. Sunsites*, at 1436 (emphasis in original).

As a matter of law, Plaintiffs' Complaint fails to state a claim under Washington's Consumer Protection Act.

### A. The Test is the Allegations of the Complaint, not Senate Testimony.

Plaintiffs mischaracterize the Committee Staff Report and Senate testimony on which they rely as "legislative facts," appropriate for judicial notice. Opp. 7; Opp. 12-15; Swope Decl. Ex. A, B and C. Legislative facts are "established truths, facts or pronouncements that do not change from case to case." *Korematsu v. United States*, 584 F.Supp. 1406, 1414 (N.D. Cal 1984).[6] A legislative fact "explains a particular law's rationality and [] helps a court or agency determine the law's content and application." Black's Law Dictionary 629 (8th ed. 2004). The proffered materials are opinions about online sales tactics and do not illuminate the basis for or "content and application" of any legislation.

Even if the Staff Report and testimony otherwise qualified as legislative facts, they dealt with different offers from either of those before the Court. The IDP offer is an "in-cart" Intelius product—*i.e.*, it is not even a "post-transaction" offer. The testimony relates to post-transaction offers. The IDP offer accepted by Mr. Keithly is not the offer that the witness analyzed.

---

[6] In *Korematsu v. United States*, 584 F.Supp. 1406, 1414 (N.D. Cal 1984) (cited by Plaintiffs at Opp. 7), the district court held that taking judicial notice of Commission findings to prove governmental misconduct "would be inappropriate....". *See also Smith v. United States*, 34 Fed. Cl. 313, 40 Cont. Cas. Fed. (CCH) P 76854 (1995) (rejecting plaintiff's request for judicial notice of testimony and statements presented to House Committee on Armed Services).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 4
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

Because the issue is whether these specific ads are misleading to a reasonable consumer, and because the testimony offered by Plaintiffs is not a "legislative fact," this Court, like the *VistaPrint* Court, must evaluate the Plaintiffs' conclusory allegations of deceptiveness by reviewing the IDP in-cart offer and the Adaptive offer that these Plaintiffs accepted.

If the Senate testimony were considered, it would support dismissing the Keithly claim. Professor Marotta-Wurgler testified regarding a McAfee online contract (Swope Decl. Ex. 3, pp. 11-12)[7] where a customer enters a billing address, credit card information, including Auto Renewal, and agrees to an End User License Agreement (not a post-transaction offer):

> We also found that consumers are unlikely to read the fine print even when sellers put the terms right in front of them and require explicit assent by checking a box immediately below the terms. We found that consumers spent a median of 72 seconds in single checkout pages that presented the contract to consumers (and required them to explicitly agree to it) but also required consumers to enter their name, address, and credit card information. A contract of this type is attached as Exhibit A of this testimony. Given all the tasks that consumers had to complete in these pages, I believe that it is highly unlikely that consumers spent more than a fraction of their time reading it. *(To be clear, I do not view Exhibit A as an example of a deceptive presentation of fine print, rather it is fairly typical contract, and, of course, another aspect to note is that the transaction is fully with the selected vendor as opposed to a transaction connected to a third party.)*

Swope Decl. Ex. 3, p. 6 (emphasis added). The McAfee online contract has less robust disclosures than the Intelius IDP offer that Mr. Keithly accepted in April 2009. *Cf.* Swope Decl. Ex. 3, pp. 11-12 with Thunen Decl., Ex. B.

**B.    Lee/Cramer: The Terms of the Adaptive Offer Are Plainly Disclosed and Easily Understood.**

Plaintiffs Lee/Cramer allege that

> [t]hrough misleading 'sign-up' messages on Intelius websites ... when the consumer purchases an Intelius product, the consumer also unknowingly enrolls in a subscription-based service with Adaptive Marketing, LLC. The details and/or benefits of those Adaptive subscription services generally are never made

---

[7] With respect to this Exhibit only, the cited page numbers refer to the PACER numbers generated on the top right of the Exhibits (e.g. "Page 11 of 18"). The McAfee contract is attached as Ex. A to Professor Marotta-Wurgler's November 17, 2009 testimony.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 5
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX (206) 623-8717

known to the consumer, yet the consumer is then billed a significant monthly fee – often $19.95 – in perpetuity.

The Adaptive offer (Thunen Decl., Ex. A) plainly states that: (a) the Family Safety Report will locate registered sex offenders in the user's area and allow them to get e-mail alerts; (b) by clicking YES, the user is activating a trial membership and getting $10 cash back; (c) the Family Safety Report membership cost is $19.95 per month, which will be charged or debited to the card used with Intelius that day; and (d) if the user calls to cancel the free trial membership within the first seven days, the user's card will not be charged. *Id.* The box containing the "Yes" and "No" buttons prominently states that typing the email address *twice* "will constitute your electronic signature and is your written authorization to charge / debit your account according to the Offer Details to the right." *Id.* The Offer Details are a fraction of an inch to the right. Immediately below the area for entering the email addresses, the offer repeats that a transfer of credit card information will take place:

> By clicking 'Yes' I have read and agree to the Offer Details displayed to the right and authorize Intelius to securely transfer my name, address, and credit/debit card information to Family Safety Report, a service provider of Intelius. *Id.*

The immediately adjacent Offer Details state:

> Simply click "Yes" to activate your trial membership and take advantage of the great benefits that Family Safety Report has to offer plus claim your $10.00 Cash Back! <u>The membership fee of $19.95 per month will be charged/debited by Family Safety Report on the credit/debit card you used today with Intelius after your 7-day FREE trial period and then automatically charged/debit each month at the then-current monthly membership fee so long as you remain a member.</u> Of course you can call us toll-free at 1-877-442-5710 within the first 7 days to cancel, and you will not be charged/debited. Please note that by agreeing to these offer details you are authorizing Intelius to securely transfer your name, address, and credit/debit card information to Family Safety Report. No matter what the FREE $10.00 Cash Back is yours to claim! Remember, if for any reason you are dissatisfied, call our toll-free number to cancel, and you'll no longer be charged/debited. If you used a debit card today, then beginning on or about 7 days from now, your monthly membership fee for Family Safety Report will be automatically debited each month on or about the same date from the checking account associated with that card. (*Id.*, emphasis added.)

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 6
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  The conclusory claim that,

2  the language contained on the Intelius websites has the capacity to deceive a substantial portion of the public to initially purchase Adaptive products,
3  (Cmplt. ¶ 18)

4  is not supported by factual allegations and cannot survive consideration of the undisputed facts

5  of the offer. "The language is clear and easily understandable by anyone capable of making an

6  online purchase...." *In re VistaPrint Corp. Marketing & Sales Practices Litig.*, 2009 U.S.

7  Dist. LEXIS 77509, * 19 (S.D. Tex. Aug. 31, 2009).[8]

8  Lee/Cramer argue that Adaptive's billing practice is deceptive. *See* Opp. at 13. The

9  Lee/Cramer claim against Intelius is that the offer is misleading, negating authorization to

10  transfer credit card information. There is no claim that Intelius billed Lee/Cramer.

**C.  Keithly: Intelius' In-Cart IDP Offer Is Clear, and Is Not an (a) Adaptive (b) Post-Transaction Offer.**

When Plaintiffs filed their Complaint, Mr. Keithly apparently believed that Intelius'

IDP product[9] was (a) an Adaptive (b) post-transaction offer. It is neither. It is an "in-cart"

offer of an Intelius subscription product presented with clarity, full disclosure, and significant

repetition. Mr. Keithly's Complaint allegations are aimed at the wrong target and are

completely unsupported when the actual offer is examined. Even his conclusory allegations do

not describe the IDP offer that he accepted; no claim implicates the IDP in-cart offer.

---

[8] Plaintiffs attempt to distinguish *VistaPrint* by speculating about the relative expectations of ink cartridge purchasers and buyers of online information reports (Opp. at 20). There is no basis for this argument in the *VistaPrint* decision, which is directly on point: "Plaintiffs allege that they were deceived into believing that they could not complete their purchase unless they completed the survey. That allegation is refuted by the VistaPrint Rewards webpage, which thanks the consumer for their "purchase from VistaPrint today..." *Id.* at * 15. Like the page in *VistaPrint*, the Adaptive offer accepted by Lee/Cramer clearly makes the same statement. It states at the very top of the page that "your order has been successfully completed." Thunen Decl. Ex. A.

[9] Basic information about Intelius' IDP product can be found at https://www.intelius.com/idprotect.html.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 7
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Mr. Keithly complains of Intelius' "post-transaction marketing" of *Adaptive* offers, including "Identity Protect" (Cmplt. ¶ 14) and that "the language on the Intelius website has the tendency to mislead customers into unknowingly signing up for these Adaptive Programs." Cmplt. ¶ 16. The actual product Mr. Keithly bought was neither a third-party product nor presented in a post-transaction offer.

Mr. Keithly makes other generic allegations:

- He was shown "misleading 'sign-up' messages" (Cmplt. ¶ 1).
- He "did not knowingly order" IDP (Cmplt. ¶ 7).

The Complaint contains no allegations of underlying facts supporting these conclusory assertions. None of the elements of content or form of the IDP offer are alleged. Mr. Keithly's complaint allegations do not "contain sufficient factual matter" regarding the (1) non-Adaptive, (2) non-post-transaction IDP offer he accepted to survive this motion to dismiss. *Iqbal*, 129 S.Ct. at 1949. The actual facts, which may be judicially noticed, are undisputed and demonstrate that the conclusory claims are false. Under the objective standard that must be applied, Intelius' in-cart offer for its own IDP product is not "likely to mislead a reasonable consumer" who reads even a fraction of the offer language, as further detailed below. *Panag*, 166 Wn.2d at 50; *VistaPrint*, 2009 U.S. Dist. LEXIS 77509 at * 19.

Mr. Keithly also quotes from a March 2009 Seattle Weekly article dealing with an Adaptive offer and a materially different IDP offer,[10] and from a May 2008 "TechCrunch" article that describes post-transaction marketing associated with Adaptive offers. Cmplt. ¶¶ 16, 17, 20. These statements are inadmissible and are inapplicable to the in-cart IDP offer in question.

---

[10] Among the anecdotes reported in the Seattle Weekly is a single reference to a Renton man's inadvertent acceptance of "an Intelius identity-theft subscription" in summer 2008. Cmplt. ¶ 20. Plaintiffs do not claim that this is a reference to IDP. Even if they did, an ambiguous, anecdotal reference to an absent summer 2008 offer has no bearing on the Court's evaluation of the April 2009 offer accepted by Mr. Keithly.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 8
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1. The In-Cart IDP Offer Is Not Post-Transaction Marketing.

After falsely alleging that he accepted an Adaptive post-transaction offer, Mr. Keithly seeks to bring the Intelius *in-cart* IDP offer he accepted into the ambit of post-transaction offers, arguing that a "majority" of six common features of post-transaction marketing (Opp. at 12-13) are shared by Intelius' in-cart IDP offer (Opp. at 17). They are not. Plaintiffs' comparison actually highlights the differences between the two marketing approaches:

(1) <u>Initial Legitimate Sales Setting</u>.  Undisputed that the IDP offer was presented in a legitimate sales setting. Opp. at 17.

(2) <u>Disguised Link and Enticement</u>.  Undisputed that there was *no disguised link* involved. *Id*. Undisputed that Intelius offered customers a $10 discount on another product still being considered by the consumer if the consumer accepted the IDP offer. *Id*.

(3) <u>Distraction and Confusion Ploys</u>.  None. *Id*.

(4) <u>Concealment of the Payment Mechanism</u>.  None. *Id*.

The last two features in the analysis – (5) <u>Post-acceptance Retention Ploys</u> and (6) <u>Negative-Option Pricing</u> – relate to billing practices that become relevant only *after* the customer has already accepted the allegedly misleading offer.[11]

Mr. Keithly is left with the argument that the IDP offer was "likely to mislead" because (1) it was presented in connection with a legitimate sale of a background report (2) for which he received a $10 discount by accepting the IDP offer. A CPA claim does not arise from a garden variety multiple purchase discount, which is all that the feature-comparison reveals.

Mr. Keithly then argues that the offer *must be* deceptive based on the many "complaints about the very practices described in the Complaint" received by the Washington State Attorney General and the Better Business Bureau. Opp. at 19 (citing Cmplt. ¶ 20). But the

---

[11] Mr. Keithly asserts that the low IDP charge of $19.95 "was likely to be overlooked on a credit card statement" (although Mr. Keithly noticed the charge immediately, Cmplt. ¶ 7) and that, like all typical subscription services, ongoing payment was the "default outcome of the transaction unless the customer takes specific action to stop payment[.]" Opp. at 18.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 9
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

cited Complaint paragraph refers only to "website marketing of *Adaptive Programs*" and says nothing about any third-party complaints regarding Intelius *in-cart offers of its own products*.

### 2. The IDP Offer Pages Are Clear.

The IDP offer (a) is not post-transaction; (b) is materially different from post-transaction offers; (c) is not the subject of any Senate investigation; and (d) does not involve a third party or any transfer of credit card information to Adaptive or to any third party. It is a straightforward discount for multiple purchases from a single vendor. It is exceptionally clear. A consumer who indicates an interest in buying an Intelius product (in Mr. Keithly's case, a background report) is given the opportunity, *before purchasing the Intelius product or entering any payment information*, to get a significant discount by signing up for a second Intelius product, IDP. IDP provides substantial and ongoing benefits, including identity theft monitoring, $25,000 in identity theft insurance, and periodic credit reports for no extra charge. The elements of the IDP offer are clearly stated.

On the first offer page (Thunen Decl., Ex. B, Step 3) the consumer has a choice between paying full price for a background report ($49.95) or a much lower price ($39.95) by signing up for an IDP trial. The difference in the two prices is shown, and the consumer must choose one. This choice is made *before* the consumer buys the background report or enters any payment information.

The very next page (*id.*, Step 4) starts with a large header confirming what the customer is purchasing (the "in-cart" items currently in the customer's virtual shopping cart) – "Background Report with Identity Protect Trial." In the middle of the page, in large, bold, and underlined text, is a sub-heading – "Identity Protect Benefits" – and a list of benefits. Below that, in the same size text as most of the other text on the page is another bold heading – "Offer Details" – below which are disclosures the truth and accuracy of which are not contested:

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 10
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Click "Continue" button to accept this special offer price and activate your trial membership to take advantage of the great benefits that Identity Protect has to offer. The membership fee of $19.95 per month will be charged/debited by Intelius.com to the credit/debit card you use today with Intelius.com after the 7-day trial. Special Offer only available to Non Identity Protect Customer.

This page (Step 4) also provides the customer an option to re-consider, reject the IDP offer, and revert to the full price option by clicking on "Remove Identity Protect – Pay Regular Price of 49.95." An "Order Summary" lists all items currently "in-cart," ready to be purchased:

> Order Summary
> 1. Background Report                     $39.95
>    *Identity Protect Discount. You Saved $10.00.*
> 2. Identity Protect Trial                $0.00
>    Total Charge                          $39.95
>       Your Savings: $10.00

Below the Order Summary are additional disclosures that repeat the material terms of the IDP offer outlined in the "Offer Details" section:

> After your 7 day free trial, if you do not cancel you Identity Protect membership your credit card will be billed $19.95 and each month thereafter that you continue your membership. You may cancel anytime.

On subsequent pages (*Id.*, Steps 5-7) the consumer is reminded three additional times of the discount and its connection to the IDP product.

Intelius' in-cart IDP offer is clear to anyone who reads even a small part of it.

**D.   No Additional Discovery Can Save the Deficient Allegations in the Complaint.**

Plaintiffs' argument that discovery is needed misconceives the basis for this motion and the law. Opp. at 6. The issue is one of law: whether either of the two offers is misleading to a reasonable consumer. *Panag*, 166 Wn.2d at 50. There is no factual dispute regarding the content of the ads. The "form and context" of the transactions, Intelius' intent (whether ads

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 11
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

were "calculated" to deceive) and Plaintiffs' subjective state of mind (whether they "unwittingly agreed") are irrelevant or—in the case of "form and context"—are fully revealed in what Plaintiffs had before them when electing to enter into the transactions.

### E. Adaptive Is a Necessary Party to the Lee/Cramer Action.

Plaintiffs Lee/Cramer seek to set aside their contract with Adaptive, arguing that they did not knowingly authorize Intelius to transfer their credit card information, to enjoin the continued performance of the Adaptive/Intelius marketing agreement and to secure restitution of payments to Adaptive via credit card charges. Cmplt. ¶¶ 2, 15; Prayer ¶¶ 8, 9. Plaintiffs avoid facing the obvious by arguing that their claim against *Intelius* is "not contractual in nature." Opp. at 24. But the relief plaintiffs seek inherently bears on Adaptive's contract rights *vis a vis* the putative class members and Intelius.[12] *See, e.g., Young, et al. v. Regence Blue Shield, et al.*, 2009 U.S. Dist. LEXIS 48614 (W.D. Wash. June 4, 2009) (dismissing suit challenging insurer's practices where ruling would affect the rights of non-party preferred providers with contracts with the insurer). The Lee/Cramer Action should be dismissed for failure to join Adaptive, a necessary party to the litigation and the party that billed Lee/Cramer.

### V. CONCLUSION

Plaintiffs' Complaint fails to allege any facts regarding the offer terms that allegedly deceived them. Intelius has filled that void by providing the offers for the Court's consideration. Even if the Court declines to consider the offers, Plaintiffs have failed to allege facts sufficient to state a claim for relief. Intelius respectfully requests that the Court dismiss Plaintiffs' Complaint, with prejudice.

---

[12] *See* Cmplt. ¶ 23 (defining class to include all persons nationwide who provided credit or debit card to Intelius and thereafter had charges debited to such card by or for the benefit of Intelius and/or Adaptive Marketing LLC); Cmplt. ¶¶ 2, 15, 18-20 (attributing the allegedly deceptive conduct to Intelius' performance of the Marketing Agreement between Intelius and Adaptive); *see* Opp. at 6, lines 17-23 stating Plaintiffs' intention to take discovery centered on Intelius and Adaptive's payment / redemption rates and usage and cancellation rates for services sold post-transaction by Intelius and Adaptive Marketing.
DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 12
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

1  DATED this 8th day of March, 2010.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By _____
Arthur W. Harrigan, Jr., WSBA #1751
Tyler L. Farmer, WSBA #39912
Attorneys for Defendants Intelius Inc.
and Intelius Sales Company LLC

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 13
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March, 2010, I served a true and correct copy of the foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT on the following individuals:

**Attorney for Plaintiffs**

| | |
|---|---|
| Mark A. Griffin, WSBA #16296<br>Karin B. Swope, WSBA #24015<br>Keller Rohrback L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Telephone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: mgriffin@kellerrohrback.com<br>       kswope@kellerrohrback.com | _____ Messenger<br>_____ Email<br>__X__ ECF<br>_____ Facsimile<br>_____ US Mail |
| Andrew N. Friedman<br>Victoria S. Nugent<br>Whitney R. Case<br>Coehn Milstein Sellers & Toll P.L.L.C.<br>1100 New York Avenue, NW, Suite 500 West<br>Washington, DC 20005-3964<br>Telephone: (202) 408-4600<br>Fax: (202) 408-4699<br>Email: afriedman@cohenmilstein.com<br>       vnugent@cohenmilstein.com<br>       wcase@cohenmilstein.com | _____ Messenger<br>_____ Email<br>__X__ ECF<br>_____ Facsimile<br>_____ US Mail |

_/s/ Yvette Chambers_
Yvette Chambers

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT - 14
Cause No.: C09-1485-RSL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717