HONORABLE ROBERT S. LASNIK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE KEITHLY, DONOVAN LEE, and EDITH ANNA CRAMER, Individually an on Behalf of all Other Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INTELIUS, INC., A Delaware Corporation; and INTELIUS SALES, LLC, A Nevada Limited Liability Company,<br><br>Defendants. | Case No. C09-1485-RSL<br><br>JOINT STATUS REPORT |

1. <u>Statement of Nature and Complexity of the Case.</u>

   (a). <u>Plaintiffs' Statement of the Case.</u>

This class action is brought against Intelius, Inc. and Intelius Sales, LLC for engaging in deceptive and unfair business practices – in the form of post transaction marketing, including such practices known in the industry as "enticements," "negative option pricing" and "post-acceptance retention ploys" – in violation of the Washington Consumer Protection Act. Specifically, Plaintiffs allege that Defendants systematically employ common techniques to

JOINT STATUS REPORT - 1

market programs on the Intelius.com website in a manner that is likely to deceive, and indeed actually has deceived, thousands of consumers who unintentionally become enrolled in recurring monthly memberships operated by third parties. Intelius receives substantial revenue from these deceptive sales. Defendants are the subject of numerous governmental investigations including several Attorney General's offices and the Senate Committee on Commerce, Science and Transportation for these highly aggressive and deceptive sales practices.

Defendants' post transaction marketing of negative option programs occurs after a customer purchases an information report sold by Intelius. After the customer enters his credit card information, he clicks on a button that says "Complete the Purchase and Show My Report." Instead of getting a report, the customer is redirected to an interstitial page which presents a negative option program offer that requests the consumer to enter the email address and click on a large red button exclaiming, "YES And show me my report." When the consumer clicks on the red button, trying to obtain the electronic report that he just purchased, he unwittingly has signed up for a "7-day trial" of a negative option program; the failure to cancel membership within 7 days results in a recurring monthly charge to his credit card, even though the consumer never provided his credit card number to make this second purchase. Defendants do not mention this negative option program on their website, or provide any webpage or confirmation alerting the consumer that they have just purchased an additional program.

In the context of the complete transaction between Intelius and the consumer, the interstitial page includes features that minimize the likelihood of a consumer understanding and providing meaningful consent to the purchase. Indeed, this page was likely designed with the help of psychologists and behavioral specialists to hit human psychological cues and obfuscate any purported disclosure in an effort to cause people to inadvertently enroll in the

JOINT STATUS REPORT - 2

negative option programs. Plaintiffs Keithly, Lee and Cramer each claim that they purchased programs that they did not knowingly accept, and charges were made to their credit cards without their knowledge, authorization or consent.

          (b).    <u>Defendants' Statement of the Case</u>.

Intelius is a leading provider of information services, including online background reports and people searches. Intelius also has a substantial employment screening business. According to the allegations of the Complaint, in June 2008 and April 2009, respectively, plaintiffs contracted *via* the Intelius website to purchase certain services. Plaintiffs allege that Intelius enrolls its customers in a subscription based service with non-party Adaptive Marketing LLC ("Adaptive") without disclosing the details and/or benefits of the Adaptive services. According to plaintiffs, this arrangement permits non-party Adaptive "to foist unwanted services (and the related monthly charges) on unsuspecting consumers without full or adequate disclosure." Complaint ("Cmplt."), ¶ 2.

As discussed in Intelius' Motion to Dismiss (Docket No. 18), plaintiff Keithly purchased a subscription to Intelius' own Identity Protect product via an "in-cart" offer, not a post-transaction offer from Adaptive or anyone else. Plaintiff Lee/Cramer did enter into a subscription agreement with Adaptive via Intelius' website.

All of plaintiffs' claims will fail for a variety of reasons. First, the actual content of the website pages generally referenced in the Complaint and integral to plaintiffs' claims conclusively contradict their allegations. With respect to Lee/Cramer's accepting the Adaptive offer, Intelius provided them with clear disclosures about the subscription service in which they were enrolling, the terms and conditions of enrollment, including the billing amount and period, and how to cancel the subscription. The Adaptive offer required that plaintiffs submit electronic signatures in order to enroll. To do so, plaintiffs had to enter, and then reenter, their respective e mail addresses. The significance of these actions was clearly spelled out in plain

JOINT STATUS REPORT - 3

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  language immediately adjacent to the location on the computer screen where a) the action of
2  enrolling occurred and b) the e mail addresses had to be twice entered. No reasonable
3  consumer reading this language could fail to understand the offer, the transaction that would
4  result from acceptance, or the method for indicating acceptance or for declining the offer.
5  Plaintiffs cannot sustain a claim based on the allegation that they simply did not read the clear
6  language. This is equally true with respect to the in-cart IDP offer, which contains clear and
7  repeated disclosures of its terms.

8  Second, with respect to the Adaptive offer, plaintiffs' essential claim is that Lee/Cramer
9  were duped into enrolling in the Adaptive program (i.e. that there is no valid contract between
10 Lee/Cramer and Adaptive). To prevail against Intelius, plaintiffs must show that they did not
11 enter into a valid contract with Adaptive for the services in question, yet plaintiffs have failed
12 to join Adaptive, one of the parties to this contract, to this action.

13 Other (non-Intelius customer) enrollees have sued Adaptive. In the leading case
14 regarding Adaptive offers, the Southern District of Texas recently ruled that essentially
15 identical Adaptive advertisements to that involved here, offered through an Adaptive website
16 partner (analogous to Intelius' position here), were not deceptive as a matter of law. *See In re*
17 *VistaPrint Corp. Marketing & Sales Practices Litig.*, 2009 LEXIS 77509 (S.D. Tex. Aug. 31,
18 2009).

19 The S.D. Texas case did not include allegations regarding any Intelius product and did
20 not address the in-cart Intelius IDP product on which plaintiff Keithly bases his claim. Even a
21 superficial comparison of the Adaptive and IDP offers shows that the Intelius IDP offer
22 accepted by Keithly is even clearer than the Adaptive offer accepted by Lee/Cramer.

23 2.  <u>Statement of ADR Method</u>. The parties believe that mediation pursuant to
24 Local Civil Rule 39.1(a) may be appropriate. Plaintiffs are amenable to mediation prior to a
25 decision on class certification.

JOINT STATUS REPORT - 4

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

3. <u>Proposed Deadline for Joining Additional Parties</u>. Plaintiffs propose joining additional parties by the close of discovery. Defendants believe that non-party Adaptive Marketing LLC is a necessary party and should be added immediately.

4. <u>Dispositive Motions</u>. Intelius' motion to dismiss is currently pending. Plaintiffs do not anticipate filing a dispositive motion in the next three months.

5. <u>Class Certification Motion Practice</u>. The parties propose the following deadlines for class certification briefing:

    October 1, 2010: Plaintiffs' motion for class certification

    November 10, 2010: Defendants' opposition

    December 22, 2010: Plaintiffs' Reply

These deadlines deviate from the period set in LR CR 23(f)(3). However, there is good cause for enlargement of time here. First, the parties have fully briefed a motion to dismiss that is currently pending before the Court. In the interest of both judicial economy and expense to the parties, the parties propose deferring class discovery and setting the class certification schedule after the motion to dismiss is adjudicated. Second, Defendants have moved before the Judicial Panel on Multidistrict Litigation ("Judicial Panel") for an order transferring a nearly identical action pending in Central District of California (*Baxter et al. v. Intelius Inc et al*, Case No. 8:09-cv-01031-AG-MLG). Intelius has requested that the Judicial Panel transfer the *Baxter* case (and any subsequently filed related cases) to this District Court for centralized pretrial proceedings. Intelius' transfer motion is set for hearing on March 25, 2010. Third, Defendants will oppose class certification and both parties agree that limited class certification discovery is necessary before briefing. However, plaintiffs do not believe class certification discovery should be bifurcated because such bifurcation inevitably leads to unnecessary, wasteful, and expensive discovery disputes over the scope of bifurcation. Finally, Defendants'

JOINT STATUS REPORT - 5

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1 trial counsel currently is scheduled for a multi-week trial in another complex matter starting on
2 September 13, 2010.
3    6.  Proposed Discovery Plan.
4       A.  Initial Disclosures. The parties held a Fed. R. Civ. P. 26(f) conference
5 on March 2, 2010, and initial disclosures were exchanged on March 9, 2010.
6       B.  Discovery will be needed on each element to prove Plaintiffs' Consumer
7 Protection Act Claim. Plaintiffs propose that discovery on class certification should be
8 conducted coextensively with discovery on liability and damages. Defendants propose that
9 discovery be bifurcated as outlined below.
10      C.  The parties do not request a change in the limitations on discovery
11 imposed under the Federal and Local Civil Rules. However, both parties reserve the right to
12 request a change to the scheduling order with regard to the number of depositions permitted
13      D.  Electronically Stored Information.
14         D-1. Plaintiffs' Position Statement.
15 Plaintiffs recommend the following in order to minimize expense: All documents or
16 Electronically Stored Information (ESI) that can be imaged, including documents that currently
17 exist in hard copy form, should be produced as images on optical disks (*i.e.*, CDs or DVDs)
18 accompanied by image load files, and database load files capturing metadata. Each image will
19 bear a unique production number and any applicable confidentiality language pursuant to the
20 parties' protective order. The image and database load files will provide all available
21 information regarding the following characteristics of the imaged documents and ESI:
22 Unitization (including the production number of the first and last page of each document);
23 Attachments (including information sufficient to identify the parent and child relationships of
24 all documents and ESI that are or have attachments); and Searchable Text (including
25 electronically extracted text or, if electronically extracted text is unavailable, OCR text);

JOINT STATUS REPORT - 6

1. Metadata (including custodian information, file properties, and email author, recipient, date, and subject fields). Documents may be provided in black-and-white format, but any party may later request that particular documents or ESI be produced as native files or as color images. Producing parties are generally required to use the version of any document that they produced in all subsequent proceedings (*e.g.*, a party may not produce a document only as black-and-white image and later rely on a native file or color image of that document), except that a party may use an original hard copy of a document if the image of the original document that the party produced is a fair and accurate copy of the original. The parties will meet and confer regarding any responsive documents that do not fall within any of the categories described in this paragraph, including documents maintained in a database. Plaintiffs further anticipate conducting discovery through search terms, and suggest the parties enter into a separate electronic discovery protocol, which the parties agree to file in conjunction with a protective order. The electronic discovery protocol will include de-duplication processes to run against the discovery population and detailed specifications of the above mentioned production formats to meet each party's data hosting platform requirements. These protocols do not impose obligations in excess of those under the Federal Rules.

D-2. <u>Defendants' Position Statement</u>.

Intelius agrees with plaintiffs' suggestion that the parties cooperate in order to conserve resources and eliminate duplicative efforts. Intelius has preserved electronic data relating to plaintiffs' claims and is in the process of determining the most effective means by which to review and produce these materials. To the extent that the data fields identified in plaintiffs' position statement are readily available, Intelius does not object to providing those, subject to any objections it may have to particular requests, including any applicable privilege. However, Intelius objects to any ESI protocol that impose upon it obligations in excess of those under the

JOINT STATUS REPORT - 7

1  Federal Rules, including any that purport to place the burden and expense of populating or
2  recreating metadata fields on Intelius.
3      Intelius intends to seek discovery of the computers that plaintiffs (and potentially
4  putative class members) used to effect the transactions at issue in plaintiffs' complaint.
5          D-3.  Joint Position Statement.
6      The parties agree to negotiate a framework for electronic and hard copy discovery in
7  order to achieve a cost effective and expedient discovery plan.
8          E.    Protective Order.  The parties anticipate entering into a protective order.
9      7.    Discovery Cut-Off.
10         Plaintiffs' Position.
11     Plaintiffs propose that the parties undertake liability and damages discovery
12 concurrently with class certification discovery.  Plaintiffs do not believe that showings of
13 commonality and predominance, as required for class certification, can be separated from
14 merits discovery.  As discussed above, Plaintiffs oppose bifurcation of class and merits
15 discovery because it causes unnecessary, wasteful, and added expense to the litigation.
16 Plaintiffs propose that fact discovery will be completed by December 17, 2010, and expert
17 discovery be completed by April 15, 2011.  Under Defendants' Position (below), merits fact
18 discovery could not begin until 2011, after the class certification motion is adjudicated.
19         Defendants' Position.
20     Defendants propose that discovery be bifurcated.  Defendants propose that class
21 certification discovery be completed by September 1, 2010.  Defendants propose that fact
22 discovery should commence after the Court rules on plaintiffs' motion for class certification
23 and that the Court should set fact and expert discovery deadlines after it has determined
24 whether the case proceeds as a class action or individual claims.  Defendants disagree with
25 plaintiffs' characterization of bifurcated discovery, particularly where the proposed

JOINT STATUS REPORT - 8

1 certification briefing schedule affords the parties and the Court sufficient time for determining
2 the appropriate scope of discovery necessary to decide certification through additional meet
3 and confer under Rule 26 and, if necessary, a Rule 16 hearing before the Court. Moreover, in
4 this case, the scope of merits discovery necessarily will depend on the characteristics of the
5 class (if any) certified by the Court. (e.g. relevant time period, offers, etc.).

6   8.   Use of Magistrate. The parties do not agree to the referral of this case to a
7 Magistrate Judge.

8   9.   Suggestions for Shortening or Simplifying the Case. The parties have no other
9 suggestions for shortening this case, but agree to not engage in unnecessary discovery.

10  10.  Anticipated Trial Date. If a class is certified, plaintiffs propose a trial date in
11 November, 2011. In the event that class certification is denied, the plaintiffs request the court
12 set a status conference to discuss the case schedule. Defendants propose that the trial date be
13 set for a date no later than twelve months after ruling on the plaintiffs' motion for class
14 certification.

15  11.  Plaintiffs have filed a jury demand. This will be a jury trial.
16  12.  The parties presently estimate that the length of a trial will be 10 judicial days.
17  13.  The names, addresses and telephone numbers of trial counsel are listed below as
18 undersigned counsel.
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25

JOINT STATUS REPORT - 9

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

DATED this 16th day of March, 2010.

By   s/Tyler L. Farmer
      DANIELSON HARRIGAN LEYH &
      TOLLEFSON, LLP

      Arthur W. Harrigan, Jr., WSBA #1751
      Tyler L. Farmer, WSBA #39912
      999 Third Avenue, Suite 4400
      Seattle, Washington 98104
      Telephone: (206) 623-1700
      Facsimile: (206) 623-8717
      arthurh@dhlt.com
      tylerf@dhlt.com

      *Attorneys for Defendants Intelius, Inc and Intelius Sales, LLC*

By   s/Karin B. Swope
      KELLER ROHRBACK L.L.P.

      Mark A. Griffin, WSBA #16296
      Karin B. Swope, WSBA #24015
      1201 Third Avenue, Suite 3200
      Seattle, WA  98101
      Tel:(206) 623-1900; Fax: (206) 623-3384
      mgriffin@kellerrohrback.com
      kswope@kellerrohrback.com

      COEHN MILSTEIN SELLERS & TOLL P.L.L.C.

      Andrew N. Friedman
      Victoria S. Nugent
      Whitney R. Case
      1100 New York Avenue, N.W., Suite 500 West
      Washington, DC  20005-3964
      Tel: (202) 408-4600; Fax: (202 408-4699
      afriedman@cohenmilstein.com
      vnugent@cohenmilstein.com
      wcase@cohenmilstein.com

      *Counsel for Plaintiffs Bruce Keithly, Donovan Lee and Edith Anna Cramer*

JOINT STATUS REPORT - 10

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March, 2010, I served a true and correct copy of the foregoing JOINT STATUS REPORT on the following individuals:

**Attorney for Plaintiffs**

| | |
|---|---|
| Mark A. Griffin, WSBA #16296<br>Karin B. Swope, WSBA #24015<br>Keller Rohrback L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Telephone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: mgriffin@kellerrohrback.com<br>         kswope@kellerrohrback.com | _____ Messenger<br>_____ Email<br>__XX__ ECF<br>_____ Facsimile<br>_____ US Mail |
| Andrew N. Friedman<br>Victoria S. Nugent<br>Whitney R. Case<br>Coehn Milstein Sellers & Toll P.L.L.C.<br>1100 New York Avenue, NW, Suite 500 West<br>Washington, DC 20005-3964<br>Telephone: (202) 408-4600<br>Fax: (202) 408-4699<br>Email: afriedman@cohenmilstein.com<br>         vnugent@cohenmilstein.com<br>         wcase@cohenmilstein.com | _____ Messenger<br>_____ Email<br>__XX__ ECF<br>_____ Facsimile<br>_____ US Mail |

*Susie Clifford*
Susie Clifford

JOINT STATUS REPORT - 11

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717