1                             THE HONORABLE ROBERT S. LASNIK

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| BRUCE KEITHLY, and DONOVAN LEE, Individually and on Behalf of all Others Similarly Situated, | ) ) ) | No. C09-1485RSL |
| Interim Lead Plaintiffs, | ) ) ) | PLAINTIFFS' MOTION AND MEMORANDUM FOR CLASS CERTIFICATION |
| v. | ) ) | ORAL ARGUMENT REQUESTED |
| INTELIUS, INC., A Delaware Corporation; and INTELIUS SALES, LLC, A Nevada Limited Liability Company, | ) ) ) | FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER |
| Defendants | ) ) ) | NOTE ON MOTION CALENDAR: JULY 1, 2011 |
| v. | ) ) | |
| ADAPTIVE MARKETING, LLC, a Delaware Limited Liability Company, | ) ) ) | |
| Third Party Defendant. | ) ) ) ) | |

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## Table of Contents

I.     INTRODUCTION ................................................................................ 1

II.    FACTS .............................................................................................. 2

III.   PROCEDURAL BACKGROUND ....................................................... 4

IV.    CERTIFICATION IS APPROPRIATE WHERE PLAINTIFFS MAKE A
       PRELIMINARY SHOWING OF COMPLIANCE WITH THE
       REQUIREMENTS OF RULE 23 ......................................................... 5

       A.   The Proposed Class ................................................................ 5

       B.   Purpose of Rule 23 Class Actions ........................................... 6

       C.   The Standard on a Rule 23 Motion .......................................... 7

       D.   The Proposed Class Meets the Requirements of Rule 23(a):
            Numerosity, Commonality, Typicality and Adequate
            Representation ....................................................................... 9

            1.   The Class Is Sufficiently Numerous to Render Joinder
                 Impracticable .................................................................. 9

            2.   Common Questions of Law and Fact Exist. .................... 9

            3.   Plaintiffs' Claims Are Typical Of The Claims Of All Class
                 Members. ...................................................................... 13

            4.   Plaintiffs And Their Counsel Will Protect The Interests Of
                 The Class ....................................................................... 15

       E.   The Class Is Maintainable Under Rule 23(b). .......................... 17

            1.   Intelius Has Acted and Refused to Act on Grounds
                 Generally Applicable to the Class, Making Certification for
                 Declaratory and Injunctive Relief Appropriate under Rule
                 23(b)(2). ......................................................................... 17

            2.   Plaintiffs' Claims for Money Damages Meet the
                 Requirements of Rule 23(b)(3). ..................................... 20

                 a.   Common Questions of Fact and Law Predominate
                      Over the Individual Questions Presented in This
                      Action. ................................................................... 20

                      (i)   Claims Under the Consumer Protection Act
                            Are Well-Suited for Class Treatment. ............ 20

PLAINTIFFS' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - ii

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

|   |   | (a) | Intelius's Deceptive Practices Were Uniform To the Class.........................................21 |
|---|---|-----|----------------------------------------------------------------------|
|   |   | (b) | Plaintiffs' Injuries Are Identical in Nature and Will Be Objectively Determined............................30 |
|   |   | (c) | Causation Can Be Established with Objective and Unambiguous Data...........................................30 |
|   | (ii) | | Unjust Enrichment Can Be Shown with Objective and Unambiguous Data. ................................. 34 |
|   | (iii) | | Breach of contract .......................................... 35 |
| b. | | | Class Treatment Is Superior to Other Methods of Adjudicating This Controversy.................................. 37 |
|   | (i) | | Members Of The Proposed Class Would Have No Interest In Individually Controlling The Prosecution Of Separate Actions. ............................ 37 |
|   | (ii) | | No Individual Cases Concerning the Controversy Presented Here are Underway................... 38 |
|   | (iii) | | Concentrating The Claims In This Forum is Desirable. .......................................................... 39 |
|   | (iv) | | Unusual Difficulties Encountered In The Management Of The Case Are Not Foreseeable. ..................................................... 39 |

V.      CONCLUSION....................................................................... 40

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

## **Table of Authorities**

2

### **Cases**

3

4

*Ali v. Ashcroft,*
213 F.R.D. 390 (W.D. Wash. 2003), *remanded on other grounds*, 421 F.3d
795 (9th Cir. 2005)..................................................................................................... 13

5

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)............................................................................................. 6, 7, 8

6

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) .................................................................................... 14

7

8

*Baron v. Merch. Serv. of Seattle Inc.,*
No. 05-2-04738-1SEA (Wash. Super. Ct. King Apr. 4, 2006)................................. 20

9

*Beck v. Boeing Co.,*
203 F.R.D. 459 (W.D. Wash. 2001) ........................................................................ 18

10

11

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir.1975) .........................................................................14, 15, 30

12

*Carnegie v. Household Int'l, Inc.,*
376 F.3d 656 (7th Cir. 2004) .................................................................................... 40

13

14

*Church v. Consolidated Freightways, Inc.,*
No. 90-2290, 1991 WL 284083 (N.D. Cal. June 14, 1991)........................................ 8

15

*Cummings v. Connell,*
316 F.3d 868, 896 (9th Cir. 2003) .............................................................................. 6

16

17

*Dukes v. Wal-Mart Stores, Inc.,*
603 F.3d 571 (9th Cir. 2010) ...................................................................................... 8

18

*Dukes v. Wal-Mart, Inc.,*
474 F.3d 1214 (9th Cir. 2007) .................................................................................. 10

19

20

*Dwyer v. J.I. Kislak Mortgage Corp.,*
103 Wn. App. 542, 547, 13 P.3d 240 (2000) ........................................................... 31

21

*Edmonds v. John L. Scott Real Estate, Inc.,*
87 Wn. App. 834, 942 P.2d 1072 (1997) ................................................................. 31

22

23

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974)..................................................................................................... 8

24

*Furstenau v. AT&T Corp.,*
No. 02-5409 (GEB), 2004 WL 5582592 (D.N.J. Sept. 3, 2004) ............................. 11

25

26

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

*General Telephone Co. of the Southwest v. Falcon,*
    457 U.S. 147 (1982) .................................................................................................. 14

*Gonzales v. Arrow Fin. Servs., LLC,*
    489 F. Supp. 2d 1140 (S.D. Cal. 2007) ..................................................................... 6

*Gulf Oil Co. v. Barnard,*
    452 U.S. 89 (1981) ..................................................................................................... 6

*Haley v. Medtronic, Inc.,*
    169 F.R.D. 643 (C.D. Cal. 1996) ............................................................................ 37

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
    105 Wn.2d 778, 719 P.2d 531 (1986) .......................................................... 21, 28, 29

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ........................................................................... passim

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ................................................................................... 13

*Hansen v. Ticket Track, Inc.,*
    213 F.R.D. 412 (W.D. Wash. 2003) ............................................................... 6, 13, 18

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964) ..................................................................................... 9

*Hearst Commc'ns v. Seattle Times Co.,*
    154 Wn.2d 493, 503, 115 P.3d 262 (2005) ............................................................ 35

*Hickey v. City of Seattle,*
    236 F.R.D. 659 (W.D. Wash. 2006) ....................................................................... 6, 7

*In re Activision Sec. Litig.,*
    621 F. Supp. 415 (N.D. Cal. 1985) ......................................................................... 20

*In re Am. Med. Sys.,*
    75 F.3d 1069 (6th Cir. 1996) ................................................................................... 13

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.,*
    78 F.R.D. 622 (W.D. Wash. 1979) ................................................................... 16, 39

*In re Live Concert Antitrust Litigation,*
    247 F.R.D. 98 (C.D. Cal. 2007) ................................................................................ 8

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
    571 F.3d 953 (9th Cir. 2009) ................................................................................... 20

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash. Inc.,*
    162 Wn.2d 59, 170 P.3d 10 (2007) ................................................................... 30, 31

PLAINTIFFS' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - v

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Jerry Cooper, Inc v. Sunset Chevrolet, Inc.,*
   No. 04-2-12577-4 SEA (Wash. Super. Ct. King County Sept. 24 2004) ............................ 19

*Jordan v. County of Los Angeles,*
   669 F.2d 1311, 1320 (9th Cir. 1982), *vacated on other grounds,* 459 U.S. 810
   (1982) ...................................................................................................................... 10, 13

*Kavu, Inc. v. Omnipak Corp.,*
   246 F.R.D. 642 (W.D. Wash., 2007) .............................................................. 12, 13, 18, 19

*Kelley v. Microsoft,*
   251 F.R.D. 544, 558 (W.D. Wash. 2008) ............................................................................ 31

*Kelley v. Microsoft,*
   No. 07-475, 2009 WL 413509 (W.D. Wash. Feb. 18, 2008), *rev'd* 395 Fed.
   Appx. 431 (9th Cir. 2010) ................................................................................................... 32

*Kelley v. Microsoft,*
   No. 09-35699, 2010 WL 355196 (9th Cir. Sept. 14, 2010) .......................................... 32, 34

*Mace v. Van Ru Credit Corp.,*
   109 F.3d 338 (7th Cir. 1997) ................................................................................................ 7

*Maguire v. GMAC Mortgage Corp.,*
   No. 03-2-32393-4 SEA (Wash. Super. Ct. King County Mar. 25, 2004) ........................... 20

*McCarthy v. Kleindienst,*
   741 F.2d 1406 (D.C. Cir. 1984) ......................................................................................... 14

*Menagerie Prods. v. Citysearch,*
   *No. CV-08-4263 CAS, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) .......................... 35, 37

*Moeller v. Taco Bell Corp.,*
   220 F.R.D. 604 (N.D. Cal. 2004) ....................................................................................... 16

*Mortimore v. F.D.I.C.,*
   197 F.R.D. 432 (W.D. Wash. 2000) ................................................................ 9, 10, 14, 35

*Mortimore v. F.D.I.C.,*
   197 F.R.D. 432, 438 (W.D. Wash. 2000) .......................................................................... 19

*Myers v. Dep't of Social & Health Servs.,*
   *152 Wn. App.,* 823, 827-28, 218 P.3d 241, (Wash. 2009) ................................................ 35

*Nelson v. Appleway Chevrolet, Inc.,*
   121 P.3d 95 (Wash. Ct. App. 2005) ................................................................................... 19

*Nelson v. Appleway Chevrolet, Inc.,*
   160 Wn.2d 173 (2007) ........................................................................................................ 34

*Nelson v. IPALCO Enter., Inc.,*
   No. IP02-477, 2003 WL 23101792 (S.D. Ind. Sept. 30, 2003) .......................................... 12

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Olson v. Tesoro Ref. and Mktg. Co.*,
  No. 06-1311, 2007 WL 2703053 (W.D. Wash. Sept.12, 2007)...............................6

*Panag v. Farmers Ins. Co. of Wash.*,
  166 Wn.2d 27 n.15, 204 P.3d 885 n.15 (2009)............................................30, 34

*Probe v. State Teachers' Ret. Sys.*,
  780 F.2d 776 (9th Cir. 1986)...........................................................18

*Rodriguez v. Hayes*,
   591 F.3d 1105, 1125-26 (9th Cir. 2010)..............................................19

*Rogers v. Baxter Int'l., Inc.*,
  No. 04-C-6476, 2006 WL 794734 (N.D. Ill. March 22, 2006)...........................11

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992)............................................................30

*Salois v. Mutual of Omaha Ins. Co.*,
  90 Wn.2d 355, 359, 581 P.2d 1349 (1978)............................................31

*Siemer v. Associates First Capital Corp.*,
  No. 97-281, 2001 WL 35948712 (D. Ariz. Mar. 30, 2001).............................10

*Sitton v. State Farm Mut. Auto Ins. Co.*,
  116 Wn. App. 245, 63 P.3d 198 (2003)..........................................21, 34

*Smith v. Behr Process Corp.*,
  113 Wn. App. 306, 54 P.3d 665 (2002)...............................................21

*Smith v. Univ. of Wash. Law Sch.*,
  2 F. Supp. 2d 1324 (W.D. Wash. 1998)..........................................13, 15

*Soc. Servs. Union, Local 535 v. County of Santa Clara*,
  609 F.2d 974 (9th Cir. 1979).............................................................6

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)........................................................13, 15

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996)...........................................................38

*Vathana v. Everbank,*,
  No. C  09-02338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010)...................35

*Walters v. Reno*,
  145 F.3d 1032, 1047 (9th Cir. 1998)..................................................19

*Westways World Travel, Inc. v. AMR Corp.*,
  218 F.R.D. 223 (C.D. Cal. 2003).....................................................38

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010)............33, 34

PLAINTIFFS' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - vii

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ...................................................................... 10, 21

*Young v. Young*,
    164 Wn.2d 477, 191 P.3d 1258 (2008) ............................................................. 34

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180, 1190-92 (9th Cir. 2001) ........................................................... 37

## **Statutes**

15 U.S.C. § 1693 ..................................................................................................... 38

18 U.S.C. § 2510 ..................................................................................................... 38

28 U.S.C. § 1407 ....................................................................................................... 2

28 U.S.C. § 2201 ....................................................................................................... 1

RCW 19.86 et seq. ..................................................................................................... 1

## **Rules**

Fed. R. Civ. P. 23 ............................................................................................. passim

## **Other Authorities**

3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §7:22 (4th ed.
    2002) ....................................................................................................................... 8

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.02 (3d ed. 2011) ........................... 6

7A Charles A. Wright, et al., Federal Practice and Procedure, § 1763 (3d ed.
    2005) ..................................................................................................................... 10

PLAINTIFFS' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - viii

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# I.   INTRODUCTION

Plaintiffs Bruce Keithly and Donovan Lee ("Plaintiffs") seek certification of Plaintiffs' claims against Intelius, Inc. and Intelius Sales, LLC (collectively "Intelius" or "Defendant") for its unfair and deceptive in-cart and post-transaction marketing techniques under the Washington Consumer Protection Act, RCW 19.86 *et seq.*, unjust enrichment and breach of contract under Washington law.  Plaintiffs also seek certification of their injunctive and declaratory claims under 28 U.S.C. § 2201.  This case provides important relief to online consumers.  As detailed below, hundreds of thousands of Intelius customers were charged for services inadvertently purchased through unfair and deceptive marketing techniques that violate established online consumer norms.  All the victims of Intelius's deceptive marketing techniques were injured in exactly the same way: they gave their billing information to purchase a product and unwittingly were signed up for and were charged for another service that they never authorized, as demonstrated by their failure to use or enable any benefit associated with the service.

Plaintiffs ask the Court to certify a nationwide class consisting of all Intelius consumers who gave their credit card information on an Intelius website, and were subsequently charged for services through in-cart or post-transaction marketing, and never used or activated any benefit that was member-enabled for the service.

This scheme represents a common course of conduct that adversely affected each member of the proposed class.  Furthermore, in carrying out the scheme, Intelius's actions were rife with deceptive conduct – from the manner in which in-cart and post-transaction marketing techniques were offered on its website to the manner in which complaints were handled.  Thus, class-wide resolution of the numerous common issues arising out of Defendant's common course of conduct is appropriate.  While Intelius will undoubtedly oppose certification of the class, claiming that individual issues of fact will predominate over common issues, it has already acknowledged that predominance is not an obstacle to certification.  Intelius argued before the Multi-District Litigation Panel that:

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 1

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

> [C]ommon questions of complex fact *predominate* and justify transfer of these cases.  The questions include (as to each of different forms of ads used in the period):
>
> -- Whether Intelius unknowingly enrolls its customers in Adaptive programs through misleading sign up messages on the Intelius websites …
>
> -- Whether display of Adaptive offers and methods of obtaining users' consent to transfer their information to Adaptive are misleading …
>
> These issues exist as to each of several forms of ad used since July 2007.  They are identical and are at the core of both cases.[1]

Plaintiffs therefore respectfully request that their Motion for Class Certification be granted.

## II.    FACTS

Intelius's marketing and sales tactics have lead hundreds of thousands of Intelius customers to inadvertently enroll in subscription-based services for which they were surreptitiously charged approximately $20 a month in perpetuity.  Plaintiffs estimate that Intelius and Adaptive Marketing, LLC ("Adaptive"), through its marketing agreement with Intelius, earned over $162,000,000 in revenue through the deceptive marketing techniques presented on Intelius's website.  *See* Karin Swope Declaration ("Swope Decl."), ¶ 20.  The essence of Intelius's schemes is this: Intelius sells inexpensive, information products created from public records and publicly available data – people searches, background checks and reverse phone number look-ups.  The products cost very little, but must be paid for with a credit or debit card.  Once Intelius has that payment information, Intelius runs its customers through a confusing check-out process that is peppered with ads and offers that are difficult to distinguish or separate from the product the customer has actually selected.  As a result, customers unwittingly "authorize" Intelius to bill them for additional products and share their payment information with third-parties, whose ads are also surreptitiously worked into the checkout process.  By the end of

---

[1] Reply in support of Intelius, Inc.'s Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 at 1, *In re Intelius, Inc., Post-transaction Mktg. and Sales Practices Litig.,* No. 2140, (J.P.M.L. Jan. 20, 2010), (emphasis added) Swope Decl., Ex. 17.  Intelius moved to transfer to the Western District of Washington for Consolidation of Pretrial Proceedings the following actions:  *Keithly et al. v. Intelius et al.,* 09-1485 (W.D. Wash), and *Baxter v. Intelius, Adaptive Marketing, LLC,* No. 09-1031 (C.D. Cal.).  The J.P.M.L. denied Intelius' request to centralize litigation under 28 U.S.C. § 1407.  Swope Decl., Ex. 17, (attaching J.P.M.L. Order Denying Transfer).

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 2

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    the first quarter 2008, almost 40% of Intelius' revenue came from Adaptive.  Swope Decl., Ex.

2    16, Complaint, *State of Wash. v. Intelius*, No. 10-28955, (Wash. Super. Ct. King County, July 23,

3    2010)(hereinafter, "Wash. AG Compl.") at 28: ¶3.155.

4         Intelius embarked on this path in 2007 with Adaptive Marketing, a veteran trailblazer in

5    unscrupulous telemarketing practices.  Intelius and Adaptive entered into an agreement, by

6    which Intelius transmitted to Adaptive credit card and customer information it receives.

7    Adaptive paid Intelius a bounty, between $40.00 and $59.00 per head, for each customer it

8    received through the Intelius website.  Adaptive was able to foist unwanted services (and related

9    monthly charges) on customers without Intelius ever disclosing to their customers that they were

10   dealing with a third party, and not Intelius.  Adaptive sells "memberships" for a number of credit

11   and identity monitoring, and buyer club discount programs (discounts with certain retailers).  In

12   order for the credit monitoring to be effective, a customer must provide Adaptive with a social

13   security number.  The buyer club discount offers also require active use on the part of the

14   subscriber.

15        Intelius augmented its revenues with a second scheme – the in-cart marketing of a service

16   called Identity Protect. ("IDP").  IDP purports to provide on-going monitoring that will detect

17   signs of misappropriation of a customer's identity.  IDP automatically monitors the name,

18   address, phone number and credit card used in the customer's Intelius purchase for misuse or

19   misappropriation -- to see if it matches those that have been illegally bought or sold over the

20   Internet.  Intelius also represents that IDP is protecting customers with up to $25,000 in identity

21   theft recovery insurance.  The real benefits of IDP, however, can only be obtained by logging

22   into the Intelius website and enabling features by providing one's Social Security number and

23   full credit portfolio; with that information, Intelius then purportedly monitors the customer's

24   credit, which is where security breaches become apparent.  The Washington Attorney General

25   ("AG"), understanding that the use of member-enabled benefits showed volitional purchase of

26   IDP, required Intelius to provide full refunds for IDP to anyone who failed to take the step of

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 3

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  enabling his IDP benefits.  IDP was bundled with products that Intelius customers had actually

2  selected, and presented as a free trial.  The free trial, however, quickly converted to a paid

3  subscription; Intelius used the credit/debit information provided for the purchase to cover the

4  charges for IDP.

5      Despite clear and unequivocal knowledge that its marketing and sales practices were

6  misleading – coming in the form of thousands of customer complaints, investigations by the

7  United States Senate and the Washington AG, and the warnings of its own marketing consultant

8  – Intelius engaged in these practices for years.  In fact, the Washington AG was able to ascertain

9  that a staggering 93% of consumers of IDP never activated their member-enabled services--

10  approximately 468,329 members during Plaintiffs proposed class period.  Swope Decl., Ex. 16,

11  Wash. AG Compl. at 26:3.141.  Additionally, based on the discovery received from Intelius thus

12  far, and assuming that the same percentage of customers did not use or activate the Adaptive

13  services offered through Intelius's deceptive post-transaction marketing techniques,

14  approximately 1,631,904 million consumers bought and did not use or activate Adaptive

15  services.   This brings the class size to approximately 2 million members.  These customer

16  accounts had few costs associated with them because the consumers were not using the service,

17  but were still being charged.  Rather, Intelius (and Adaptive, through Intelius) pocketed pure

18  profit from these deceptive practices.

19      Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated

20  against Intelius in violation of the Washington Consumer Protection Act and related Washington

21  law for engaging in deceptive marketing practices that caused Intelius to pocket hundreds of

22  millions of dollars from the class.

23          **III.   PROCEDURAL BACKGROUND**

24      Plaintiffs filed an Amended Consolidated Complaint on July 22, 2010. Intelius moved for

25  judgment on the pleadings on August 16, 2010.  Intelius argued in its motion that the terms of

26  every service offered on or through its website is fully disclosed.  The Court soundly rejected

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 4

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1   this argument in its February 8, 2011 Order Granting in Part Intelius' Motion for Judgment On

2   The Pleadings ("Order"), holding that the overall context and presentation of Intelius's

3   disclosures on its website had to be considered under the Washington Consumer Protect Act, and

4   that "a reasonable jury could conclude that two of the three marketing techniques challenged by

5   plaintiffs are deceptive …" Order at 13, 19, n. 12.  Plaintiffs filed the operative complaint, the

6   Second Amended Complaint, on February 23, 2011. ("Compl.").  In a strategic attempt to

7   resuscitate the legality of their deceptive ads, and to preclude the granting of class certification,

8   Defendant filed a motion for summary judgment (more appropriately regarded as a motion for

9   partial summary judgment) against a single plaintiff, Mr. Keithly, on a single claim, in which

10  Intelius argues, erroneously, that its post-transaction confirmatory emails cured its deceptive

11  marketing techniques, and the fact that Mr. Keithly printed these emails out is somehow an

12  intervening event that breaks the causal chain between Intelius's deceptive practice and Mr.

13  Keithly's injury.  The motion for partial summary judgment does nothing more than raise

14  additional issues of fact and law common to the proposed class.

### IV.   CERTIFICATION IS APPROPRIATE WHERE PLAINTIFFS MAKE A PRELIMINARY SHOWING OF COMPLIANCE WITH THE REQUIREMENTS OF RULE 23

A.   **The Proposed Class**

17          Plaintiffs Bruce Keithly and Donavan Lee seek certification of the following class

18  ("Class") for the First, Second, Third, Fourth, Fifth and Sixth Causes of Action in the Second

19  Amended Consolidated Complaint:

> All persons located within the United States who, at any time from July 2007 to
> the present (1) provided credit or debit card information to an Intelius-owned,
> Intelius-operated, or Intelius-controlled website, and were subsequently charged
> for services offered through post-transaction and/or in-cart marketing by or for the
> benefit of Intelius and/or Adaptive Marketing LLC, and (2) have not enabled or
> used any benefit associated with the service.[2]

---
[2]  In terms of the proposed time frame, this definition is written to include only the two marketing techniques that the Court upheld in its February 8, 2011 Order, which discovery may show extended beyond August, 2009.  Plaintiffs do not move to certify the in-cart marketing technique for IDP shown to Mr. Bebbington in October 2009, which the court dismissed in its Order.

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 5

LAW OFFICES OF

KELLER ROHRBACK L.L.P.

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON  98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1   Plaintiffs also request that the court designate Plaintiffs Keithly and Lee as class representatives,

2   and appoint Plaintiffs' counsel as class counsel.

3   **B.     Purpose of Rule 23 Class Actions**

4          As the United States Supreme Court has stated: "Class actions serve an important

5   function in our system of civil justice." *Gulf Oil Co. v. Barnard,* 452 U.S. 89, 99 (1981).

6   Numerous federal courts have subsequently noted that strong policy considerations counsel in

7   favor of a liberal construction of the class action rule. *See, e.g., Gonzales v. Arrow Fin. Servs.,*

8   *LLC,* 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007). Liberality at the outset is reasonable,

9   furthermore, because an initial determination of class certification is not final. *Cummings v.*

10  *Connell,* 316 F.3d 868, 896 (9th Cir. 2003), (quoting *Soc. Servs. Union, Local 535 v. County of*

11  *Santa Clara* 609 F.2d 974, 948-49 (9th Cir. 1979)); *Olson v. Tesoro Ref. and Mktg. Co.*, No. 06-

12  1311, 2007 WL 2703053 (W.D. Wash. Sept.12, 2007)(J. Lasnik)(granting class certification, but

13  noting that initial certification can change).

14         Rule 23 allows for the certification of class actions to remedy widespread policies or

15  practices that violate federal or state laws. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S.

16  591, 614 (1997). Rule 23 strikes a balance between the need for and efficiency of a class action,

17  and the interests of class members in pursuing their claims individually. The class action rule

18  further aims "to promote judicial economy and efficiency by avoiding multiple adjudications of

19  the same issues." *See* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.02 (3d ed.

20  2011); *Hickey v. City of Seattle*, 236 F.R.D. 659, 666-67 (W.D. Wash. 2006) (certifying class of

21  WTO conference arrestees, where common questions required uniform determination); *Hansen*

22  *v. Ticket Track, Inc.*, 213 F.R.D. 412, 416-17 (W.D. Wash. 2003) (granting motion to certify

23  class of parking lot customers because a "class action is fair and would effectively adjudicate this

24  matter").

25

26

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 6

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Class actions "afford aggrieved persons a remedy" even when "it is not economically feasible to obtain relief through. . . multiple individual damage actions."  Moore et al., *supra*, § 23.02.  The *Amchem* Court agreed:

> [T]he very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry individual recoveries into something worth someone's (usually an attorney's) labor.

521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

## C.   The Standard on a Rule 23 Motion

Under Fed. R. Civ. P. 23(a), Plaintiffs must show that the proposed class meets these prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Upon meeting these prerequisites, the moving party must demonstrate, further, that the class should be maintained for one of the following reasons:

> 1.    prosecution of separate actions would substantially impair or impede the ability of either the class members or the parties opposing the class to protect their interests;
>
> 2.    final injunctive or declaratory relief with respect to the proposed class is appropriate; or,
>
> 3.    common questions of law or fact predominate over questions affecting individual members and class resolution is superior to other methods of adjudicating the dispute.

Fed. R. Civ. P. 23(b); *Hickey*, 236 F.R.D. at 666 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).  Here, Plaintiffs seek certification under Rules 23(b)(2) and (b)(3).

Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs also seek certification under Rule 23(b)(3).  Rule 23(b)(3)  entails an inquiry into "predominance," requiring a finding that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members;" and

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 7

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

"superiority," requiring a finding that the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In actions seeking certification under Rule 23(b)(2), the district court need not find "predominance" and "superiority" before certifying the class. *Amchem*, 521 U.S. at 613-15.

Even though Plaintiffs believe they will prevail at trial, Plaintiffs now seek class certification rather than a ruling on the merits. The limited procedural nature of this motion circumscribes the scope of the Court's present inquiry. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (explaining that "[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule"); *see also Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 582 (9th Cir. 2010) (A trial court deciding a class certification motion may only consider the merits to the extent necessary to ascertain compliance with Rule 23 and not to decide challenges "directed to stand-alone merits issues.") Moreover, "plaintiffs need only provide sufficient information for the court to form a reasonable judgment about whether plaintiff's claims are typical." *In re Live Concert Antitrust Litigation*, 247 F.R.D. 98, 116 (C.D. Cal. 2007) (internal citations omitted). As such, district courts should not weigh conflicting evidence when determining whether the Rule 23 requirements are satisfied. *Id.* at 115 (internal citation omitted). Rather, "a district court should rule only on those issues which need to be resolved to reach a determination regarding class certification." *Church v. Consolidated Freightways, Inc.*, No. 90-2290, 1991 WL 284083, at *3 (N.D. Cal. June 14, 1991). Once a plaintiff has made a preliminary legal showing that the requirements of Rule 23 have been met under this pleading standard, the burden of proof shifts to the defendant to demonstrate the Rule cannot be satisfied. 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §7:22 (4th ed. 2002) ("Newberg"). Absent such a showing by the defendant, certification is appropriate and should issue.

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 8

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

**D.    The Proposed Class Meets the Requirements of Rule 23(a): Numerosity, Commonality, Typicality and Adequate Representation**

This case easily satisfies the Rule 23(a) requirements of numerosity, commonality, typicality and adequate representation.

**1.    The Class Is Sufficiently Numerous to Render Joinder Impracticable.**

To obtain certification, a plaintiff must show that the Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Precise enumeration of the members of a class is not necessary for the Court to certify the class. *Mortimore v. F.D.I.C.,* 197 F.R.D. 432, 435-6 (W.D. Wash. 2000) (citing 7A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1762 (2d ed. 1986)).

While Plaintiffs cannot state the precise number of class members included in the proposed class because discovery has not been completed, Intelius documents indicate that more than 1.6 million customers were enrolled in Adaptive programs between July 2007 and December 2009, and over 468,329 of Intelius's customers were enrolled in Identity Protect (a product offered in-cart) between April 17, 2008 and August 12, 2009. A class of this size, including Intelius customers who fell into post-transaction and in-cart marketing traps, easily satisfies the numerosity requirement.

**2.    Common Questions of Law and Fact Exist.**

Under Rule 23(a), Plaintiffs must demonstrate the existence of questions common to all members of the proposed class. The showing necessary to satisfy commonality is "minimal." *Hanlon v. Chrsyler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Mortimore,* 197 F.R.D. at 436 (observing "[i]t is common for courts to write, '[t]he threshold for commonality is not high'") (citation omitted).

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 9

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    Commonality is satisfied where the plaintiff's allegations arise from a "common nucleus

2    of operative fact" and the defendant engages in a "common course of conduct." *Mortimore*, 197

3    F.R.D. at 436.  The Ninth Circuit construes commonality permissively, recognizing that all

4    questions of law and fact need not be common to class members.  *Hanlon*, 150 F.3d at 1019; *see*

5    *also* 7A Charles A. Wright, et al., Federal Practice and Procedure, § 1763 (3d ed. 2005) ("this

6    provision does not require that all questions of law and fact raised by the dispute be common.")

7    Rather "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is

8    a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*,

9    150 F.3d at 1019.  The "commonality requirement is satisfied 'where the question of law linking

10   the class members is substantially related to the resolution of the litigation even though the

11   individuals are not identically situated.'"  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320

12   (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (internal citation omitted).  "The

13   commonality test is qualitative rather than quantitative -- one significant issue common to the

14   class may be sufficient to warrant certification." *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214,1225

15   (9th Cir. 2007) (citations omitted).

16       In consumer class actions involving deceptive sales practices, courts have readily

17   recognized a common nucleus of operative facts where, as in the present action, the defendant

18   implemented a scheme using standardized procedures and form documents or mass

19   communications to deal with members of the proposed class.  *See, e.g., Yokoyama v. Midland*

20   *Nat. Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010) (reversing district court's denial of class

21   certification given misleading standardized forms given to class members) ("Plaintiffs' case will

22   not require the fact-finder to parse what oral representations each broker made to each plaintiff.

23   Instead, the fact-finder will focus on the standardized written materials given to all plaintiffs and

24   determine whether those materials are likely to mislead consumers acting reasonably under the

25   circumstances."); *Siemer v. Associates First Capital Corp.*, No. 97-281, 2001 WL 35948712 (D.

26   Ariz. Mar. 30, 2001)(class certified where standardized loan form alleged to be deceptive).

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 10

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1    Here, Plaintiffs have focused their lawsuit on the standardized written material posted on

2    Intelius's website that was shown uniformly to Plaintiffs and class members, and request a

3    determination that those materials are likely to mislead consumers acting reasonably under the

4    circumstances.  This Court has already taken judicial notice of these form webpages.  Order at 4.

5    The marketing practices that were presented to the class members were uniform, and uniformly

6    deceptive.  There are several questions of fact common to the class, including (1) whether

7    Defendant's in-cart marketing techniques were likely to deceive a reasonable consumer; (2)

8    whether Defendant's post transaction marketing techniques were likely to deceive a reasonable

9    consumer; and (3) whether Defendant's standard in-cart and post-transactional marketing

10   techniques are consistent with the norms of on-line commerce.

11   Moreover, questions of law also satisfy the commonality requirement.  These common

12   legal questions include (1) whether Defendant's marketing techniques of its in-cart and post-

13   transaction marketing were likely to deceive a substantial portion of the purchasing public in

14   violation of the Washington Consumer Protection Act; (2) whether Defendant has been unjustly

15   enriched at the expense of Plaintiffs and Class members under Washington law, particularly

16   where Defendant did not incur any costs (or *de minimus* costs) of services on the non-member-

17   enabled benefits accounts; (3) whether Defendant's unauthorized use and/or transmission of

18   Plaintiffs' and members of the Class's billing information constitutes a breach of contract under

19   Washington law; (4) whether Plaintiffs and members of the Class are entitled to injunctive and

20   declaratory relief.

21   Significantly, this case does not involve allegations of individual communications that

22   may have differed from individual to individual.  *See, e.g., Rogers v. Baxter Int'l., Inc*., No. 04-

23   C-6476, 2006 WL 794734 at *4 (N.D. Ill. March 22, 2006)(finding class certification appropriate

24   where "alleged misrepresentations were made to class members in general and on a class-wide

25   basis"); *Furstenau v. AT&T Corp*., No. 02-5409 (GEB), 2004 WL 5582592 (D.N.J. Sept. 3,

26   2004)(granting class certification where same communications are alleged as to each class

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 11

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

member); *Nelson v. IPALCO Enter., Inc.*, No. IP02-477, 2003 WL 23101792, at *5 (S.D. Ind. Sept. 30, 2003)(certifying misrepresentation claims based on information "distributed or made available on a class wide basis").  Rather, the form and content of website ads were standardized and uniform.  The online ads and purchasing process to class members during the class period failed to properly disclose to every class member in exactly the same way.  Compl. ¶¶ 12-32.

In *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) (J. Lasnik), the court granted class certification of a Washington Consumer Protection Act ("CPA") and a federal Telephone Consumer Protection Act Claim.  It found the commonality requirement had been met because "[Defendant] engaged in a common course of conduct by obtaining the facsimile numbers in the same way and sending the same broadcast facsimile to all recipients within a short period of time as part of the same effort to generate new business."  *Id.* at 647.  The Defendant argued that the commonality requirement could not be satisfied because an individual issue existed as to whether each class member gave permission to receive facsimiles from the Defendant, and thus whether the facsimile was "unsolicited" as defined by the statute.  The Court rejected this argument, finding that "[Plaintiff] Kavu has not defined the class in such a way as to require an inquiry into the merits to determine if an entity is a member of the class. Rather, class membership can be determined based on objective criteria."  *Id.*

Here, similarly, Plaintiffs' class definition is based on objective criteria – whether customers used their member-enabled benefits for the service.  Whether a customer is a member of the Class is based on whether they used or enabled the service that they purchased.  Accordingly, class membership is based on objective criteria.  Here, Intelius engaged in a common course of conduct by providing the same deceptive ads on its webpages, and obtaining its consumers' credit card numbers and billing them for unauthorized services in the same way as part of its same effort to maximize revenue.  This is the same objective criteria that Intelius used to settle a complaint brought by the Washington AG for the same deceptive practices at issue in this lawsuit.  *See* Swope Decl., Ex. 2, Consent Decree at 9, *State of Wash. v. Intelius,* No. 10-

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 12

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

28955, (Wash. Super. Ct. King County, Aug. 10, 2010)(hereinafter, "Wash. AG Consent Decree") (providing relief to those consumers who did not use the member-enabled benefit for the service.)  Plaintiffs meet the commonality requirement.

### 3. Plaintiffs' Claims Are Typical Of The Claims Of All Class Members.

Fed. R. Civ. P. 23(a) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  This requirement, like the commonality requirement, is evaluated with liberality.  *Hanlon,* 150 F.3d at 1020.  Typicality is satisfied if the representative plaintiff's claim stems "from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory."  *Jordan,* 669 F.2d at 1321, *vacated on other grounds*, 459 U.S. 810 (1982); *In re Am. Med. Sys.,* 75 F.3d 1069, 1082 (6th Cir. 1996).

"Typicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members."  *Smith v. Univ. of Wash. Law Sch.,* 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) (citation omitted); *Kavu*, 246 F.R.D. at 648 (quoting *Smith*).  When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented, typicality is usually satisfied, regardless of varying fact patterns which may underlie individuals' claims.  *Ali v. Ashcroft,* 213 F.R.D. 390, 409 (W.D. Wash. 2003), *remanded on other grounds,* 421 F.3d 795 (9th Cir. 2005) (citation omitted).  Moreover, the proposed representative's claims need only be "reasonably coextensive with those of absent class members; they need not be substantially identical."  *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003).  *See also Hansen v. Ticket Track,* 213 F.R.D. 412, 415 (W.D. Wash. 2003) ("The test of typicality is whether (1) other members have the same or similar injury, (2) the action is based on conduct which is not unique to the named plaintiffs, and (3) other class members have been injured by the same course of conduct") (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)).  Put another way, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and legal

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 13

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

perspective, are such that in litigating his personal claims he can reasonably be expected to advance the interests of absent class members.  *See, e.g., General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 156-57 (1982).  The typicality requirement tends to merge into the commonality requirement.  *See Falcon*, 457 U.S. at 157 n. 13.

Where, as here, it is alleged that the Defendants engaged in a common scheme relative to all Class members, there is a strong presumption that Plaintiffs' claims are typical of the claims of absent Class members:

> We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.

*Armstrong v. Davis,* 275 F.3d 849, 869 (9th Cir. 2001).

While "truly unique defenses can defeat class certification, they must be a 'major focus of the litigation.'"  *Mortimore,* 197 F.R.D. at 437 (citation omitted).  Further, the fact that different class members may seek different amounts of damages does not defeat typicality: the Ninth Circuit notes that "[t]he amount of damages is invariably an individual question and does not defeat class action treatment."  *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975); *see also McCarthy v. Kleindienst,* 741 F.2d 1406, 1415 (D.C. Cir. 1984) ("the mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification"); *Mortimore,* 197 F.R.D. at 436 (citation omitted) ("[T]he 'overwhelming weight of authority' holds that the need for individual damages calculations does not diminish the appropriateness of class certification where common questions as to liability predominate").

Here, the class sought to be certified includes all persons who gave their credit card information on an Intelius website and were subsequently charged for subscription services offered through Intelius's in-cart or post-transaction marketing techniques and who did not use or activate their services.  Plaintiffs are members of the class they seek to represent.  Compl. ¶¶ 42-51.  The injuries suffered by Plaintiffs are the same type as those of the class, and each

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 14

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   Plaintiff seeks the same relief that members of the class would seek: compensation for the

2   damages sustained as a result of Defendant's conduct.  Plaintiffs' claims are typical because

3   Intelius enrolled Plaintiffs for subscription services in the same manner that it registered all other

4   class members.  Moreover, Intelius, with its partner Adaptive, charged Plaintiffs monthly fees in

5   the same manner that it charged all other class members who did not enable their member

6   benefits. Plaintiffs meet the typicality requirement.

7           **4.       Plaintiffs And Their Counsel Will Protect The Interests Of The Class.**

8           The final element of Fed. R. Civ. P. 23(a) requires that the proposed class representative

9   "will fairly and adequately protect the interests of the class."  In determining whether a named

10  representative will fairly and adequately protect the interests of the class, courts consider two

11  factors:  first, that the representative plaintiff's interests are not antagonistic to those of the class

12  they seek to represent and, second, that the class will be represented by qualified counsel capable

13  of vigorously prosecuting the action.  *Staton,* 327 F.3d at 957; *Smith,* 2 F. Supp. 2d at 1343.

14  Both prongs of the adequacy test are met here.

15          In a case such as the one at bar, in which class members have substantial common

16  interests, "courts have generally declined to consider conflicts, particularly as they regard

17  damages, sufficient to defeat class action status at the outset unless the conflict is apparent,

18  imminent, and on an issue at the very heart of the suit."  *Blackie,* 524 F.2d at 909 (rejecting

19  assertion of potential conflict as basis for denying certification, noting "the conflict, if any, is

20  peripheral, and substantially outweighed by the class members' common interests").  Class

21  certification is not defeated by "any divergence of interest among class members."  *Id.* at 910.

22          Plaintiffs' interests are the same as the interests of the other members of the proposed

23  Class.  All seek to put an end to Intelius's use of deceptive marketing tactics and to recover the

24  damages available under the CPA and common law.  Given the identity of claims between

25  Plaintiffs and the members of the Class, there are no conflicting interests in this case.  Nor is

26  there any antagonism between Plaintiffs' interests and those of the Class.

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON  98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

Further, Plaintiffs have been actively engaged in the litigation.  They have produced documents, answered interrogatories, and been deposed.  Their deposition testimony reflects a clear understanding of the Class's claims and their responsibilities as Class Representatives to prosecute this case on behalf of the entire Class.[3]  Indeed, Plaintiffs exceed the requirements for service in a representative capacity:  "The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim . . . and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case. . . . It is not necessary that a representative 'be intimately familiar with every factual and legal issue in the case;' rather, it is enough that the representative understand the gravamen of the claim."  *Moeller v. Taco Bell Corp.,* 220 F.R.D. 604, 611-12 (N.D. Cal. 2004); *see also In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.,* 78 F.R.D. 622, 627 (W.D. Wash. 1979) (citations omitted) ("It is not necessary that named class representatives be knowledgeable, intelligent, or that they have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action").

Fed. R. Civ. P. 23(g) requires the Court to separately appoint counsel who will fairly and adequately represent the interests of the class.  Plaintiffs' counsel has extensive experience certifying, litigating, trying, and settling class actions, including actions involving consumer class actions.[4]  Moreover, Plaintiffs' counsel have been aggressively and effectively pursuing the Class's claims; to date, Plaintiffs' counsel have successfully opposed Intelius's motion to stay and bifurcate discovery, opposed Intelius's motion to dismiss, reviewed over a hundred thousand pages of document discovery from Intelius, and successfully moved to compel discovery from third-party Adaptive.

---

[3] Swope Decl., Ex. 3 Keithly Dep. p. 15:6-17; 181:1-17, Ex. 4 at Lee Dep. pp. 33:1-13; 75:23-76:6.
[4] *See* Dkt. No. 39 (Declaration of Mark A Griffin in support of Plaintiffs' motion for appointment of Keller Rohrback as interim co-lead class counsel); Dkt. No. 40 (Declaration of Andrew N. Friedman in support of Plaintiffs' motion for appointment of Cohen Milstein Sellers &Toll as interim co-lead class counsel).  *See Kavu*, 246 F.R.D. at 649 (J. Lasnik)(finding Keller Rohrback L.L.P. to be "qualified counsel who have represented plaintiffs in numerous class actions.")

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 16

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON  98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1    Because Plaintiffs have no conflicts in representing their interests along with the interests

2    of the proposed Class, and because they and their counsel are qualified and prepared to

3    vigorously prosecute this case, the fourth element of Fed. R. Civ. P. 23(a) for class certification

4    is satisfied.

5    **E.     The Class Is Maintainable Under Rule 23(b).**

6         In addition to satisfying the criteria of Rule 23(a), Plaintiffs must demonstrate that the

7    proposed Class can be maintained under any one of three scenarios set forth in Rule 23(b).

8         **1.     Intelius Has Acted and Refused to Act on Grounds Generally Applicable to
               the Class, Making Certification for Declaratory and Injunctive Relief
9               Appropriate under Rule 23(b)(2).**

10        An action may be maintained as a class action under Rule 23(b)(2) when "the party

11   opposing the class has acted or refused to act on grounds that apply generally to the class, so that

12   final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

13   whole." Fed. R. Civ. P. 23(b)(2).  Here, Intelius has pursued a uniform course of conduct vis-à-

14   vis its customers.  Intelius has communicated with its customers almost exclusively through its

15   webpages and advertisements based on standard templates.[5]  Intelius has responded to customer

16   inquires and handled complaints following guidelines set forth in the company's marketing

17   agreement with Adaptive (under which Intelius agrees to not speak to its customers about

18   Adaptive programs) and its internal customer service policies and manuals.  Intelius has also

19   used uniform, unilateral adhesion contracts – the Terms and Conditions and the Privacy Policy –

20   to set forth the duties and obligations of itself and its customers.[6]

21        Moreover, Plaintiffs seek declaratory and injunctive relief for the benefit of the Class as a

22   whole.  Plaintiffs have asked the Court to declare their rights and Intelius's obligations under the

23   Terms and Conditions and Privacy Policy.  Compl. at ¶¶ 24-25.  Plaintiffs also seek an injunction

24   ───────────────

25   [5] Swope Decl., Ex. 5 at INTELIUS-K 000928-1042 (collected pop-ups 2007-2010); Ex. 18, Thunen Decl., Exs. A, B
     and C (web pages showing marketing techniques)(for the convenience of the Court, Plaintiffs have attached the
     Thunen Decl., Dkt No. 72 as Ex. 18 to the Swope Decl.).

26

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 17

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

that would prevent Intelius from using the deceptive, misleading and unfair tactics described in the Complaint to market its and third-party services and products.  Compl. at 24.  The uniformity of Defendant's conduct makes the declaratory and injunctive relief sought by Plaintiffs appropriate.  *See, e.g., Hansen*, 213 F.R.D. at 416.  ("Because of the uniformity of [defendant's] actions in regard to all class members, . . . final injunctive relief or declaratory relief is appropriate for the class.  The class action is maintainable under Rule 23(b)(2)").

Classes certified under Fed. R. Civ. P. 23(b)(2) may seek damages in addition to injunctive or declaratory relief.  *Probe v. State Teachers' Ret. Sys.,* 780 F.2d 776, 780 (9th Cir. 1986).  A request for money damages alongside injunctive or declaratory relief does not preclude certification under Fed. R. Civ. P. 23(b)(2).  *See, e.g., Hansen,* 213 F.R.D. at 416.  The question of whether a case should be certified under Fed. R. Civ. P. 23(b)(2) or Fed. R. Civ. P. 23(b)(3) depends upon whether the predominant relief requested is declaratory and injunctive or financial.  *Kavu* , 246 F.R.D. at 649.  Predominance, here, is not a quantitative inquiry.  *Id.*  As stated by Judge Pechman in *Beck v. Boeing Co.,* 203 F.R.D. 459, 466 (W.D. Wash. 2001):

> Defendants do not cite to any precedent in support of the position that the predominance of one form of relief over the other is measured by the amount of monetary damages which could conceivably result from a judgment in favor of plaintiffs.  Nor is this an argument which appeals to logic.

*Beck,* 203 F.R.D. at 466, *vacated in part on other grounds,* 60 Fed. Appx. 38 (9th Cir. 2003).  Rather, the relevant question is whether the plaintiffs would have brought suit to obtain the injunctive relief which they seek even if they could not obtain a money recovery.  *Id.*  Thus, even where substantial money damages are sought, certification may be appropriate under Fed. R. Civ. P. 23(b)(2).  In *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash., 2007), the plaintiff (a retail business) sued under three consumer protection statutes (including the CPA) to enjoin unsolicited advertisements sent by facsimile and to collect the statutory penalty ($500) attached to each violation.  246 F.R.D. at 645.  The plaintiff itself received only one illegal

---

[6] Swope Decl., Ex. 6 at 1-2, Terms and Conditions printed June 28, 2010; *Id.*, Ex. 7 at 1, Terms and Conditions printed August 19, 2009; *Id.*, Ex. 8 at 1, Intelius Privacy Policy effective May 1, 2006; *Id.*, Ex. 9 at 1-3, Terms and

PLAINTIFF'S MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 18

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

solicitation, but sued on behalf of a class of similarly situated businesses. *Id.* This Court held

that certification under Fed. R. Civ. P. 23(b)(2) was appropriate because the statutory monetary

damages – which ranged from $500 or $1,500 -- were secondary to the injunctive relief – the

prospective cessation of the defendant's aggravating, and illegal, business practice -- sought. *Id.*

at 649. This Court found, further, that the small recovery available to any class member

individually supported an inference that the class representative would not have undertaken the

litigation for the monetary relief alone. *Id.*[7] *See also, Mortimore v. F.D.I.C.*, 197 F.R.D. 432,

438 (W.D. Wash. 2000) (certifying a 23(b)(2) class based on injunctive relief "even though

monetary damages are sought in addition to injunctive relief.")

Here, Plaintiffs and the Class are using a remedial consumer protection statute (as well as

common law) to prevent Intelius from continuing its deceptive practices. Plaintiffs have argued

that these practices, if unchecked, will negatively affect e-commerce – to the detriment of

consumers and honest businesses.[8] The requested money damages, even when trebled under the

CPA, are modest in size to each class member. Both federal and state courts in Washington have

recognized that certification of a 23(b)(2) class is appropriate in cases such as this where the

Class is seeking injunctive or declaratory relief and damages.[9]

---

Conditions (Privacy Policy) printed Jan. 31, 2011.

[7] The Court also noted that damages would be "based on objective standards rather than based on complex, individual determinations." *Kavu*, 246 F.R.D. at 649. Here, even though Plaintiffs' damages are not fixed by statute, the same is true. As discussed below at Section IV.E.2.a.(i)(b), Plaintiffs' damages are identical in nature (a monthly charge) and vary only in amount (the number of months charged).

[8] Dkt. No. 81, Pls' Opp. to Defs' Rule 12(c) Mot. for Judgment on the Pleadings at 24-25.

[9] *Rodriguez v. Hayes*, 591 F.3d 1105, 1125-26 (9th Cir. 2010) (reversing the district court's denial of class certification, holding that the class meets the requirements of Rule 23 as the "rule does not require us to examine the viability or bases of class members' claims for declaratory and injunctive relief, but to look at whether class members seek uniform relief from a practice applicable to all of them."); *see also, Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) (holding under FRCP 23(b)(2) that "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole."); *Nelson v. Appleway Chevrolet, Inc.,* 121 P.3d 95, 97 (Wash. Ct. App. 2005) (affirming certification of CR 23(b)(2) class seeking a substantial refund of allegedly improperly paid taxes, noting that the determination of the amount of each class member's claim would be a mechanical procedure based upon the defendant's records); Amended Order Granting Plaintiff's Motion for Class Certification Pursuant to CR 23(b)(2) in *Jerry Cooper, Inc v. Sunset Chevrolet, Inc.,* No. 04-2-12577-4 SEA (Wash. Super. Ct. King County Sept. 24 2004) (certifying CR 23(b)(2) class in TCPA action with fixed statutory damages); Findings of Fact and Conclusions of Law and Order Grating Plaintiff's Motion for Class Certification Pursuant to CR 23(b)(2) in *Baron v. Merch. Serv. of Seattle Inc.,* No. 05-2-04738-1SEA (Wash. Super. Ct. King

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 19

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

2.      **Plaintiffs' Claims for Money Damages Meet the Requirements of Rule 23(b)(3).**

An action may be maintained on a class basis under Rule 23(b)(3) when a Court finds first, that common questions predominate over individual questions presented, and second, that the class mechanism is superior to other methods for adjudicating the claims asserted.  Fed. R. Civ. P. 23(b)(3).  Both of these conditions are met here.  As noted above Intelius has already admitted as much when it argued before the Multi-District Litigation Panel that "common questions of complex facts *predominate* and justify transfer of these cases." (emphasis added).[10]

a.      **Common Questions of Fact and Law Predominate Over the Individual Questions Presented in This Action.**

In the Ninth Circuit, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 .  As stated in *Hanlon,* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Id.* (citation omitted).  Under Rule 23(b)(3), common issues need only predominate, as Fed. R. Civ. P. 23, does not require the total absence of any individual issues.  *In re Activision Sec. Litig.,* 621 F. Supp. 415, 429-30 (N.D. Cal. 1985).  Under the Rule 23(b) predominance inquiry, a court must balance against any issues requiring individualized proof any questions of law or fact common to class members.  *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953, 959 (9th Cir. 2009)( holding it is reversible error to "rely[] on [one factor] to the near exclusion of other factors relevant to the predominance inquiry.").

(i)      **Claims Under the Consumer Protection Act Are Well-Suited for Class Treatment.**

---

Apr. 4, 2006) (same); Order Certifying Class Action Pursuant To CR 23(b)(2) in *Maguire v. GMAC Mortgage Corp.,* No. 03-2-32393-4 SEA (Wash. Super. Ct. King County Mar. 25, 2004) (certifying CR 23(b)(2) class in action where plaintiff claimed every class member had been charged the same, uniform, $20 illegal fee).  Copies of each of the unpublished orders are attached as *Swope Decl.* Exhibits 10, 11, and 12.
[10] *See* footnote 1, *supra.*

PLAINTIFF'S MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 20

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    Claims brought under the CPA are well-suited for class disposition, as many courts have

2    recognized by certifying consumer claims for class treatment under Rule 23 and Washington's

3    state court equivalent, CR 23. *Yokoyama*, 594 F.3d at 1093 (reversing district court's denial of

4    class certification for a Hawaii consumer protection act claim under Fed. R. Civ. P. 23); *Sitton v.*

5    *State Farm Mut. Auto Ins. Co.,* 116 Wn. App. 245, 63 P.3d 198 (2003)(affirming class

6    certification under CR 23 for a Washington Consumer Protection Act claim); *Smith v. Behr*

7    *Process Corp.*, 113 Wn. App. 306, 54 P.3d 665 (2002)(same).

8    To prevail under the CPA, a plaintiff must satisfy each of the five elements of a claim:

9    (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

10   impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman*

11   *Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 719 P.2d 531, 533

12   (1986). The facts and evidence that Plaintiffs will use to establish each of these elements will be

13   the same for the Plaintiffs and for the class members they seek to represent.[11]

14           **(a)    Intelius's Deceptive Practices Were Uniform To the**
                      **Class**
15

16   Plaintiffs have alleged a scheme premised on standard and uniform misleading

17   disclosures made to Intelius customers at various points during the process of buying an Intelius

18   product on an Intelius website. The first of these presentations occurs "in-cart" – that is, once a

19   customer has selected a product for purchase, he is given a choice between purchasing the

20   product at full-price or purchasing the product at a discounted price if he accepts a "free" product

21   included with the purchase. The "free" product is not, however, free; rather, it automatically

22   converts to a paid subscription after the expiration of a short trial period unless the customer

23   takes affirmative steps to cancel his enrollment. The second of these presentations occurs "post-

24   transaction" – meaning that at the conclusion of the customer's purchase, after the customer has

25
26   ───────────────
     [11] The evidence showing that Intelius's conduct occurred in trade or commerce and that the public interest has been
     or is affected will be, indisputably, the same for every member of the Class. Therefore, Plaintiffs will not address
     these elements here and will focus instead on the CPA elements that Plaintiffs anticipate Defendant will argue
     require individualized inquiries.

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 21

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

selected a product, entered his billing information and executed the order request, the customer is presented with a screen that looks like the confirmation step in the purchase process but is, in fact, an offer to buy a new and different product.  If the customer clicks on a button that is designed to look like the cue to download his just-purchased product, he downloads the product and enrolls himself in a separate third-party's subscription service, for which he will be billed on a monthly basis, at the same time.  In a standard transaction, a customer would be confronted with both in-cart and post-transaction marketing tactics.[12]

In deciding Intelius's motion for judgment on the pleadings, the Court looked at the representations made by Intelius to Plaintiffs Lee, Keithly and Bebbington at different times during the proposed Class period:  June 2008, April 2009 and November 2009.  The Court considered the context of the disputed sales and the appearance and content of the specific representations made by Intelius.  The Court concluded that a reasonable jury could conclude that the offers viewed by Mr. Lee (post-transaction) and Mr. Keithly (in-cart) were deceptive under the CPA.  Order at 13.

The backdrop of all of these sales – in-cart and post-transaction – is formed by the reasonable consumer's expectations and behavior in online commerce.  The Court recognized that consumers are accustomed to following a standard multi-step process in making purchases on the Internet, through which an agreement to buy only exists where the customer provides his billing card and shipping information, after reviewing and submitting an order summary that itemizes all of his purchases.  Order at 15-16.  The Court also noted that consumers do not read every word that appears on a webpage and that, as a result, the Federal Trade Commission has advised Internet merchants to "draw attention to important disclosures to ensure that they are seen."  Order at 15.  This backdrop is uniform to the CPA claims not only of Plaintiffs Lee and Keithly, but also to the CPA claims of each class member.

---

[12] *See, e.g.,* Swope Decl., Ex. 18, Dkt. No. 72,  Thunen Decl., Ex. B (showing in-cart offer at Step 3 and post-transaction offers at Step 8 where in-cart offer at Step 3 was accepted); Order at 6.

PLAINTIFFS' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 22

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON  98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

*The In-Cart Offers*

The in-cart offer for IDP viewed by Plaintiff Keithly was found deceptive by the Court because Intelius failed to adequately disclose the nature of the offer and its cost to the customer. The Court found that the following aspects of the transaction contributed to the deception:

1.  offering a price incentive that would place Identity Protect in the customer's cart before providing any information about the service or its price;

2.  presenting the offer details on only one screen in the middle of a multi-screen sequence and making the offer details, including pricing and billing information, the least conspicuous elements on the page;

3.  offering only one opportunity, in the middle of a multi-screen sequence, to remove Identity Protect from the order;

4.  repeatedly and consistently listing the price of Identity Protect as "$0.00" in every order summary.

Order at 13-15.[13]

Plaintiffs' expert, Dr. Michael Kamins, also identifies several features of the in-cart or "bundled" offer that are designed to take advantage of psychological biases that influence consumer behavior. The price incentive – a substantial discount on the price of the selected product – is attractive not because it makes the product affordable, but because consumers like to feel that they exercise their purchasing power to get better value for their money. Kamins Report, ¶¶ 16-17. The lower-priced option is always presented before the higher-priced option and thus in closer proximity to the selected product; this type of "serial positioning" disposes the consumer to select the lower-priced option. Kamins Report, ¶¶ 16-17. Finally, the button for selecting the lower-priced option is intensely colored (high chroma); the brilliance and intensity of the button draw the consumer's attention. Kamins Report, ¶¶ 16-17; Swope Decl., Ex. 3, Keithly Dep. 36:12-38:13, 112:9-113:15, 146:1-148:9, and 150:7-152:22.

---

[13] The Court found that Intelius's in-cart disclosures were adequate only where they: (1) advised the customer of the monthly cost of the subscription and the need to cancel the membership to avoid charges <u>and</u> (2) were presented in a conspicuous location on the order summary at the time the customer was asked to provide payment information. Order at 17 (discussing in-cart offer viewed by Plaintiff Bebbington in November 2009 (appended to Decl. as Exhibit D, Doc., 72, and attached to Swope Decl., Ex. 18 filed herewith).

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 23

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiffs have alleged in their Complaint that Plaintiff Keithly's experience with Intelius's in-cart marketing was not unique to him.  Compl., ¶ 42.  Evidence developed to date shows that all Intelius customers were exposed to the exact same marketing tactic and the exact same offers for a significant portion of the class period.  Between August 14, 2008 to August 12, 2009 Intelius customers saw an IDP in-cart offer materially identical to the one viewed by Mr. Keithly in April 2009.[14]  Thus, the relevant (and determinative) facts identified by the Court in evaluating Mr. Keithly's claim are common to each Class member's claim and the reasoning that led the Court to conclude that the offer viewed by Mr. Keithly was deceptive  is common to the claims of each Class member.  Similarly, the features indentified by Dr. Kamins are common to all Class members' experiences with in-cart marketing.

### The Post-Transaction Offers

The post-transaction offer viewed by Mr. Lee was found to reasonably have the capacity to deceive by the Court because the ad appeared to be a step towards downloading the customer's desired product and failed to alert the customer "that he [was] in the midst of a purchase that require[d] his care and attention."  Order at 19.  The Court found that the following aspects of the transaction contributed to the deception:

1.  timing the presentation of the ad to create the impression that clicking through the "Yes" button is a step in obtaining the customer's selected Intelius product;

2.  using a "Yes" button, styled to look like the next step toward obtaining the customer's selected product, as a proxy for selecting a new product;

3.  using the entry of an email address as confirmation of billing and shipping information instead of the consumer's actual billing information;

4.  placing important disclosures in an inconspicuous spot presented in a low contrast color and small print;

---

[14] In its response to an interrogatory asking Intelius to identify all of the various in-cart offers presented to its customers during the Class period, Intelius referred Plaintiffs to the webpage flows attached as Exhibits B and D to the August 16, 2010 Declaration of Ronald V. Thunen III (Dkt No. 72), attached as Ex. 18 to Swope Decl.  The webpage flow shown under Ex. B to the Thunen Declaration is representative of the in-cart offers seen by Intelius customers between August 14, 2008 and August 12, 2009; the webpage flow show under Ex. D to the Thunen Declaration is representative of the in-cart offers seen by customers after August 12, 2009, when Intelius incorporated disclosures recommended by the Better Business Bureau into its presentations.

PLAINTIFFS' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 24

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1          5.        failing to properly disclose that the customer is dealing with a third party;

2          6.        failing to provide an order summary that includes the newly-selected product;

3          7.        failing to provide an order confirmation at the conclusion of the transaction.

4    Order at 17-19.[15]

5          Plaintiffs' expert also identifies a number of features in Intelius's ads that were designed

6    to lead customers to unwittingly make post-transaction purchases.  Dr. Kamins explains that the

7    multi-step process of ordering an Intelius report creates a "psychic tension" – the need to

8    complete the transaction – that motivates the consumer to push forward.  Swope Decl., Ex. 1,

9    Kamins Report, ¶ 19.  The repetition of clicking through an extended series of screens in placing

10   that order engenders a reliance on intuitive and/or automatic processing rather than reasoned

11   processing while navigating the screens. Swope Decl., Ex. 1, Kamins Report, ¶¶ 10-11, 13, 21.

12   The color of the most prominent feature of the ad, the "Yes" button, is the brightest feature of the

13   ads, designed to attract the customer's notice and trigger another automated, rather than

14   reasoned, response. Swope Decl., Ex. 1, Kamins Report, ¶¶ 18, 20; Swope Decl., Ex. 4, Lee Dep.

15   24:5-15.  The wording on the "Yes" button (generally, "Yes and show my report") is likely to be

16   misread by the consumer as "Yes show my report" because he has been steered into a state of

17   automatic cognitive processing. Swope Decl., Ex. 1, Kamins Report, ¶ 21.  Finally, the use of the

18   _____

19   [15] The Court also found Intelius's use of a survey and cash-back incentive to be deceptive and confusing, but held
     that a customer who quickly moved past the survey would nevertheless be deceived by the overall impression
20   created by the other dominant design elements and text on the page.  Order at 17-18.  Because the survey was
     neither an essential, nor even influential, piece of the Court's analysis, the fact that Intelius appears to have
21   dropped the survey after 2008 (*compare* INTELIUS-K 000971 and INTELIUS-K 000972 (Offer Codes 49 and
     50), attached as Ex. 5 to the Swope Declaration filed herewith) will have no bearing on Intelius's liability over the
22   course of the Class period.  Intelius did continue to use financial incentives throughout the Class period.  These
     incentives, presented in the banner at the top of the pop-ups, vary but not in meaningful ways; the common feature
23   in all of them is an incentive designed to create the impression of a benefit conferred on the customer rather than a
     promise to pay by the customer.  Most of the offers provide for $10 "cash back" (on what purchase, it is never
24   readily clear), but there are a few that provided a 10% discount off the customer's next purchase or a free credit
     report.  *See, e.g.,* Swope Decl., Ex. 5 at INTELIUS-K 000973, 000974 (Offer Code 51 and Offer Code 52 (same
25   ad, promising $10 discount and free report incentives)); INTELIUS-K 000984, 000985 (Offer Code 62 and Offer
     Code 64 (same ad, promising free report and 10% discount)).  At some point during 2008, the offers began telling
26   customers that they will "get" a reward (*i.e.,* $10 cash back) instead of telling customers to "claim" their reward.
     *See, e.g.,* Swope Decl., Ex. 5 at INTELIUS-K 000961, 00963 (Offer Code 37 and Offer Code 39).  Even though

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON  98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1    "Yes" button as a proxy for the entry of billing and payment information runs counter to ordinary

2    consumer expectations.  *Id.* ¶¶ 22, 27-28.

3          In discovery, Intelius has produced copies of all the post-transaction offers that its

4    customers would have seen during the Class period.  Between 2007 and 2010, approximately 120

5    post-transaction pop-up ads appeared on Intelius's website.  According to the Washington AG

6    Complaint, ¶¶3.18, 3.59, Intelius collected data on the conversion rates of the offers, and how

7    long they ran, and tested different versions of the offers to increase the conversion rates.  Swope

8    Decl., Ex. 17 (Wa. AG Compl.).  Regardless, the number of ads presents no obstacle to class

9    certification because the ads did not materially differ and all of them share the features that the

10   Court identified as relevant, and ultimately determinative, in finding the Lee transaction

11   deceptive.

12         The number of unique ads shrinks considerably when superficial differences between the

13   ads are considered.  For example, Intelius displayed many of these ads on three websites that are

14   part of its own network: intelius.com, peoplelookup.com and lookupanyone.com.  As a result,

15   there may be as many as three versions of each ad that differ only in the name of the host-site.[16]

16   Six different products were offered through these pop-up ads: Privacy Matter Identity; 24 Protect

17   Plus; ValueMax; Privacy Matters 1-2-3; Identity Protect, and; Savings Ace.  All of the products

18   are subscription programs based upon the same enrollment method (negative-option enrollment

19   following a free-to-pay conversion) and pricing structure (a monthly fee charged until the

20   subscriber cancels the subscription).[17]  Finally some of the differences between ads could be

21   characterized as purely clerical.  At some point in the class period, the price for these

22

23   the incentive is not necessary to find deception here, Plaintiffs submit that incentives were a constant feature of the
     ads and varied immaterially over time.

24   [16] *See, e.g.,* Swope Decl., Ex. 5 at INTELIUS-K 00953-000955 (Offer Codes 29, 30 and 31, offering ValueMax on
     all three sites);  *Id.* at INTELIUS-K 000928-000929 (Offer Codes 3 and 4, offering 24 Protect Plus on Intelius and
     People Lookup).

25   [17] Three of the products relate to identity theft (and are virtually indistinguishable) and two of relate to shopping
     discounts (also not distinguishable from one another).  *See, e.g.,* Swope Decl., Ex. 5 at INTELIUS-K 000951-
26   000952 (Offer Codes 27 and 28, offering identity protection and discount purchasing products using same format).

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON  98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1    subscriptions rose from $19.95/month to 24.95/month.[18]   The toll-free number provided for

2    inquiries/cancellation requests also changed at some point.[19]

3          But Plaintiffs need not show that every class member saw the same ad.  Plaintiffs need to

4    show that the ads Intelius showed to all class members were marked by common, material

5    features that could lead to a finding that the ads were deceptive in the very same way.  Plaintiffs

6    can do this.  Six of the seven deceptive elements identified in the Court's Order are common to

7    all of these ads:

8          First, all of the ads are presented to the customer at the conclusion of the customer's

9    volitional purchase, while the customer is waiting for his desired product to appear.

10         Second, a prominent "Yes" button, which promises to lead to the desired report, is

11   featured in every pop-up.  It is the brightest visual element on the page, appearing in an intense

12   red or orange color.  In all but a handful of ads, the same text appears on the button: "Yes and

13   Show My Report."  There are only a few variations regarding the placement of the "Yes" button

14   throughout the entire series of pop-ups.  In two offers, the "Yes" button appeared on the right

15   side of the pop-up.[20]  Thereafter, the Yes button always appears on the left side of the ad.  In one

16   ad, the "Yes" and "No" buttons appear side-by-side rather than vertically stacked.[21]  In the

17   earliest ads (shown to customers in 2007 and 2008), the customer's choices were either a red

18   button reading "YES and show my report" and a link reading "No Thanks, Continue" or "No, see

19   my report."[22]  At some point in 2008, the "No" link was changed to a light colored "No"

20

21

22

---

23         One membership program (24 Protect Plus) seems to be a hybrid offering both protection from identity theft and
       discount purchasing power.

24   [18] *See, e.g.,* Swope Decl., Ex. 5 at INTELIUS-K 001017-001018 (Offer Codes 107 and 108, indistinguishable
       except for change in subscription price); *Id.* at INTELIUS-K 001019, 001024 (Offer Codes 109 and 122, same).

25   [19] *See, e.g.,* Swope Decl., Ex. 5 at INTELIUS-K 001007, 001031 (Offer Codes 91 and 130, indistinguishable except
       for change in toll-free number).

26   [20] *See* Swope Decl., Ex. 5 at INTELIUS-K at 000928-929 (Offer Codes 3 and 4).
     [21] *See* Swope Decl., Ex. 5 at INTELIUS-K 000966 (Offer Code 44).
     [22] *See, e.g.,* Swope Decl., Ex. 5 at INTELIUS-K 000946, 000949 (Offer Codes 22 and 25).

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 27

LAW OFFICES OF

KELLER ROHRBACK L.L.P.

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1   button.[23]  The "No" button, while arguably more noticeable that the "No" link, does not contrast

2   well with the background and is not as noticeable as the red "Yes" button.[24]

3           Third, the "Yes" button always serves a dual purpose:  it is an authorization for the

4   customer's enrollment in a membership program, as well as a step toward obtaining the

5   customer's desired purchase.

6           Fourth, the entry of the customer's email address is used as a proxy for entering his

7   billing and shipping information in every offer except Offer 44.  In Offer 44, simply clicking the

8   "Yes" button constitutes both enrollment in the membership program and authorization to use

9   the customer's billing information.[25]

10          Fifth, the majority of ads involve products supplied by Adaptive, but neither the

11  involvement nor the identity of the third party is clear from the information presented to the

12  customer.  In 2007 and 2008, the ads seen by Intelius customers were styled to look like Intelius

13  webpages and bore the Intelius logo in the upper right corner.[26]  The fine print disclosures stated

14  that the customer was authorizing the transfer of his billing information not to Adaptive, but to

15  an entity – *e.g.,* Family Safety Report -- that was identified only as "a service provider of

16  Intelius" without further elaboration, even though Family Safety Report is presented as a

17  product, and not a company, in the banner at the top of the pop-up.[27]  At some point in 2008,

18  Intelius appears to have modified the Adaptive Marketing post-transaction webpage.  The

19  webpage was still styled to look like Intelius's webpages (using the same fonts and colors), but

20  no longer showed Intelius's logo in the upper right corner.[28]  The Intelius logo was not replaced,

21  however, with the logo of another company or product.  The new ads did not identify Adaptive

22

23  [23] *See, e.g.,* Swope Decl., Ex. 5 at INTELIUS-K 000949, 000969 (Offer Codes 25 and 47 showing "no, see my
    report" replaced with "no, show my report" button).

24  [24] The ad viewed by Plaintiff Lee, and found deceptive by the Court, featured a "No" button.  Dkt. No. 72, Thunen
    Decl., Ex. A, (attached as Ex. 18 to Swope Decl.)

25  [25] *See* Swope Decl., Ex. 5 at INTELIUS-K 000966 (Offer Code 44).
    [26] Swope Decl., Ex. 5 at INTELIUS-K 000930 (Offer Code 5), 000941 (Offer Code 17), 000945 (Offer Code 21).

26  [27] *See, e.g.,* Swope Decl., Ex. 5 at INTELIUS-K 000970 (Offer Code 48); *see also* Order at 10.
    [28] Swope Decl., Ex. 5 at INTELIUS-K 000953, 000983 (Offer Code 29 and Offer Code 61, offering ValueMax with
    and without the Intelius logo in the upper right hand corner).

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 28

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Marketing as the seller of the new product and continued to state that billing information would be transferred to the product/service that was offered, rather than clearly stating that billing information would be transferred to a company distinct from Intelius. *Id.* Indeed, Adaptive actively told Intelius to not put its name anywhere on the post-transaction page. Swope Decl, Ex. 13, Intelius_K_E023712-13 (Adaptive marked up webpage removing Adaptive's name). The ads no longer identified that entity as a "service provider of Intelius," but no other information regarding the third party offering the new product/ service was provided.[29] These changes appear to have become standard in 2009.[30] None of the changes was sufficient to clearly and conspicuously convey the presence and identity of a distinct third-party.

Discovery has revealed that in addition to its in-cart marketing activities and the post-transaction scheme with Adaptive, Intelius embarked on its own post-transaction offers at some point during the class period.[31] Intelius used post-transaction webpages to market "Identity Protect" – the product that it also bundled in-cart with people searches and background reports.[32] Where Intelius was selling its own products through post-transaction webpages, there would be no third-party to disclose because no third-party was involved. Nevertheless, Intelius's IDP post-transaction ads are deceptive because they are the same as the Adaptive post-transaction ads: the overall impression created by them is that by clicking through the customer is moving one step closer to his desired report – and not that clicking through will bind the customer to an open-ended paid subscription for another product.[33]

Finally, all of the ads were part of a transaction that deviates from the "normal cues related to a consumer transaction" Order at 19. Intelius never presented customers with an order summary reflecting enrollment in the subscription program, no product was purposely selected

---

[29] Swope Decl., Ex. 5 at INTELIUS-K 000983 (Offer Code 61).
[30] *See generally* Ex. 5 INTELIUS-K 000982 (Offer Code 60) - INTELIUS-K 000983 (Offer Code 61).
[31] *See, e.g.,* Ex. 5, INTELIUS-K 000973 (Offer Code 51).
[32] *See* Swope Decl., Ex. 18, Dkt. 72  Decl., Ex. B at Step 3 (Keithly purchase of background report bundled with Identity Protect in-cart).
[33] To accept the Identity Protect offer, the customer only had to type his address once (not twice as required in all the Adaptive offers).

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

by the customer, no order confirmation was provided showing that two, rather than one, purchases had in fact been made, no payment information was exchanged, and no confirmation of the transaction was generated.  *Id.*

**(b)     Plaintiffs' Injuries Are Identical in Nature and Will Be Objectively Determined.**

The form of Plaintiffs' and the Class's damages in this case are not merely similar, they are identical – all were caused by a uniform course of conduct and all can be calculated by the simple addition of charges paid for the add-on products that were marketed in-cart and post-transaction.  None of the class members enabled or used the benefits, and none received refunds. The only variation in individual claims will relate to the quantum of damages, and it is well established that such variations do not preclude class certification.  *Blackie,* 524 F.2d at 905; *see also Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992).

**(c)     Causation Can Be Established with Objective and Unambiguous Data.**

The proof of causation required to prevail under the CPA depends upon the context of a plaintiff's claims.  *See, e.g., Panag v. Farmers Ins. Co. of Wash.,* 166 Wn.2d 27, 39 n.15, 204 P.3d 885, 900 n.15 (2009); *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash. Inc.,* 162 Wn.2d 59, 78-84, 170 P.3d 10, 19-23 (2007).  The Washington Supreme Court has repeatedly affirmed that reliance is not an element of a Washington CPA claim, but rather is one type of proof that could be used to establish causation.  *Indoor Billboard,* 162 Wn.2d at 83.  Plaintiffs can establish the causal link between Intelius's actions and their injuries using payment records, statistical evidence drawn from data showing how customers navigated the Intelius site (collected by Intelius), and Intelius's and Adaptive's sales, fulfillment, and customer service records.  Individual evidence (*i.e.,* testimony) of reliance will not be offered as proof.

In *Indoor Billboard*, the plaintiff sought compensation under the Washington CPA for payments remitted to its telecom service provider; plaintiff asserted that the service provider's bills included surcharges that the company could not, by federal law, collect.  In *Indoor*

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1    *Billboard*, the plaintiff's general counsel had conducted his own investigation of the surcharges,

2    concluded that they were impermissible and nevertheless authorized payment of the invoice; on

3    those facts, the court concluded that the question of whether the defendant's deceptive

4    representations caused the plaintiff's injury was not clear because plaintiff had conducted its own

5    independent inquiry into the surcharges appearing on its bill.  *Id.* at 66-68, 84-85. Thus, the

6    Washington Supreme Court concluded that payment of the invoice – without more – was

7    insufficient to establish the causal link between the defendant's misrepresentation and the

8    plaintiff's injury.  *Id.* at 83. The court was, equally clear, however, in holding that payment of the

9    invoice, combined with other relevant evidence, could establish causation.  *Id.*  Ultimately, a

10   plaintiff needs to show that the link between defendant's conduct and plaintiff's injury is

11   unbroken by any other intervening, independent cause.  *Id.*

12          Under the causation analysis of a CPA claim, courts have adopted the proximate cause

13   standard.  *Id.* at 81.  A practice is unfair or deceptive if it has the *capacity* to deceive a substantial

14   portion of the public.  Order at 12.  The CPA does not require actual deception.  "*Neither intent*

15   *to deceive nor actual deception is required.*" *Dwyer v. J.I. Kislak Mortgage Corp.*, 103 Wn. App.

16   542, 547, 13 P.3d 240, 243 (2000)(emphasis added; footnote omitted).  Moreover, "causation [is]

17   established if the plaintiff loses money because of the unlawful conduct." *Edmonds v. John L.*

18   *Scott Real Estate, Inc.,* 87 Wn. App. 834, 847, 942 P.2d 1072, 1079 (1997); *cf. Salois v. Mutual*

19   *of Omaha Ins. Co.,* 90 Wn.2d 355, 359, 581 P.2d 1349, 1351 (1978) (refuting assertion that CPA

20   "is applicable only to acts or practices which are designed to induce a potential buyer to purchase

21   goods or services.").  Thus, where a defendant has "acted unfairly" for purposes of the CPA, and

22   that unfair action caused damage to the plaintiffs, the causation requirement is established.

23          This case is distinguishable from *Kelley v. Microsoft,* No. 07-475, (W.D. Wash., filed

24   Mar. 29, 2007) on both its facts and the law.  In *Kelley,* the plaintiffs argued a price inflation

25   theory of causation, namely that the price of the product was artificially inflated to include

26   certain software upgrade capabilities that were advertised, but did not exist, and this advertising

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 31

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1  in turn inflated the market demand for the product. *Kelley v. Microsoft,* 251 F.R.D. 544, 558

2  (W.D. Wash. 2008) ("*Kelley I*"). The Court initially certified the class, stating "the Court will

3  allow Plaintiffs' to further develop their 'price inflation' theory.' …" *Id.* at 559.  Judge Pechman

4  then decertified the class upon finding that Plaintiffs failed to provide evidence to support their

5  theory of class-wide price inflation, and that individuating circumstances on causation, namely

6  why plaintiffs purchased the product (some of whom wanted the product), predominated over

7  common issues.  *Kelley v. Microsoft*, No. 07-475, 2009 WL 413509 (W.D. Wash. Feb. 18,

8  2008)("*Kelley II*"), *rev'd* 395 Fed. Appx. 431 (9th Cir. 2010).  The Ninth Circuit reversed and

9  remanded the district court's decertification order, finding that

> [T]he district court did not consider whether other elements of CPA claim present
> questions of law or fact common or individual to the class members, and what
> effect those questions, if any, have on the Rule 23(b)(3) predominance inquiry.
> For instance, the district court did not determine whether the allegedly deceptive
> practice affects the public interest, which itself involves consideration of several
> factors.

*Kelley v. Microsoft,* No. 09-35699, 2010 WL 355196 (9th Cir. Sept. 14, 2010)(attached as Ex. 14

to Swope Decl.).  Following the Ninth Circuit's reversal, the court decertified the class again,

finding that (1) causation was still the predominating individuating circumstance because some

consumers chose to buy the Microsoft product, and accordingly had no injury, and, in a

perfunctory analysis, that (2) other common questions of law or fact did not ameliorate the need

for an individual inquiry into causation.  *See* Order Denying Class Certification*, Kelley v.

Microsoft,* No. 07-475, (W.D. Wash. May 24, 2011) (attached as Ex. 14 to Swope

Declaration)("*Kelley III*").

        Plaintiffs respectfully submit that this case is distinguishable on the law and the facts.

Plaintiffs allege Intelius's deceptive acts and omissions proximately caused Plaintiffs' and class

members' injuries.  Proximate cause is established because Intelius's deceptive marketing

practices, without any intervening independent event, caused plaintiffs to purchase subscriptions

that they did not use.  Hundreds of thousands of consumers were charged for services that they

did not use, and Plaintiffs' class is necessarily *defined by those consumers who did not use or*

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1    *enable member-enabled benefits or service*.  Moreover, Intelius's own data shows that customers

2    moved from screen to screen quickly and did not spend enough time on the pages where the ads

3    appeared to read the fine print disclosures, let alone reflect upon them, seek guidance or consult

4    independent authority.[34]  As such there is no basis for imagining that Class members read,

5    considered and ultimately understood the fine print details of Intelius's offers.  Unlike *Kelley*,

6    Plaintiffs' theory of the case is not that products like IDP and Family Safety Report failed to

7    deliver the services promised or were overpriced, in which case individualized inquiries into the

8    motivations and satisfaction levels of each class member might be warranted because each one

9    could have purchased for many different reasons.  Here, it is simply unreasonable to consider

10   that Plaintiffs or class members would intentionally buy *these* products that they never activated

11   or used.  Plaintiffs' contention is that they and similarly situated individuals were tricked into

12   paying for something that they did not want or use.

13        This case is more similar to  *Wolin v. Jaguar Land Rover North America, LLC,* 617 F.3d

14   1168, 1173 (9th Cir. 2010), where the Ninth Circuit held that class certification was appropriate

15   because plaintiffs claimed a tire alignment defect that no consumer would knowingly choose,

16   and Land Rover failed to reveal material facts in violation of consumer protect laws. Plaintiffs

17   allege that Intelius failed to reveal material facts in violation of consumer protection laws, and

18   because the class is defined by those consumers who did not use or activate the service.  Thus,

19   there is no individuating or other cause for buying the service other than being misled; it is not

20   reasonable, for example, for a consumer to buy an identity theft monitoring service and then fail

21   to provide the personal data needed for meaningful credit monitoring.  Class membership is

22   based on an objective criteria such that an individual inquiry into Plaintiffs' reason for buying

23   the product is not required.   Intelius recognizes as much since it agreed to this objective criteria

24   in its settlement with the Washington AG's office.  *See* Swope Decl., Ex. 2, Wash. AG Consent

25   Decree at p. 9. (using objective criteria to determine reimbursement).  In any event, Defendant

26

---

[34] Swope Decl, Ex. 15, WA. AG Naveen Jain dep. at 74:9-77:18; Ex. 16, Wash. AG Compl. at 9: 3.55 and 3.56.

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 33

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    may not oppose this class certification motion on the basis that the evidence will show that the

2    purchase of the services was due to individual factors.  *Wolin,* 617 F.3d at 1173.  Whether

3    Plaintiffs can in fact prove the merits of their theory "does not overlap with the predominance

4    test." *Id.*

5         Finally, even if causation did involve individuating circumstances, which it does not,

6    other common questions of law or fact predominate.  The common questions of law and/or fact,

7    include, but are not limited to, (1) whether Intelius's deceptive practices are uniform to the class;

8    (2) whether the class members were injured in the same way; (3) whether Intelius's conduct

9    occurred in the same "trade or commerce"; and (4) whether Intelius's deceptive practices

10   uniformly affect the public interest.  *Panag* 166 Wn.2d at 37 (listing five elements of a CPA

11   claim); *Kelley,* 2010 WL 355196 at * 2 (9th Cir. Sept. 14, 2010) (court must consider whether

12   other elements of a CPA claim present questions of law or fact common to the class in

13   predominance inquiry under Rule 23(b)(3)).

14        **(ii)    Unjust Enrichment Can Be Shown with Objective and
                    Unambiguous Data.**

15        Under Washington law, a valid claim for unjust enrichment exists where: "(1) the

16   defendant receives a benefit; (2) the received benefit is at the plaintiff's expense, and; (3) the

17   circumstances make it unjust for the defendant to retain the benefit" without providing payment

18   or something of value to the plaintiff.  *Young v. Young,* 164 Wn.2d 477, 484, 191 P.3d 1258,

19   1262 (2008).  Courts routinely certify unjust enrichment claims for class treatment.  *See, e.g.,*

20   *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173 (2007); *Sitton v. State Farm Mut. Auto. Ins.*

21   *Co.,* 116 Wn. App. 245, 63 P.3d 198 (2003) (affirming class certification of claims).

22        Here, Intelius has been using Plaintiffs' credit and debit card account numbers and other

23   billing information to bill Plaintiffs on a monthly basis; Plaintiffs have received nothing in

24   exchange for these charges.  Defendant may argue that Plaintiffs have indeed received value for

25   their money: that Plaintiffs have been enrolled in subscription programs.  But this argument is

26   inconsistent with the allegations of the Complaint and the evidence that has developed, to date,

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 34

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   in the case.  Plaintiffs allege that they were unaware that they had been enrolled in these

2   subscription programs, did not use the member-enabled benefits for the service, and thus have

3   not been receiving any benefit from them.  Compl. ¶¶ 60-65; Swope Decl., Ex. 3, Keithly Dep.

4   14:13-15:1, 117:14-16; Ex. 4, Lee Tr. at 29:2-17, 32:19-23.  Moreover, the usage rates for these

5   subscription programs is abysmally low – seven percent according to discovery produced by

6   Intelius, and the data reviewed by the Washington Attorney General in the course of his

7   investigation of Intelius. Swope Declaration, ¶ 20; Wash. AG Compl., at ¶ 3.141.  Since this

8   Class only covers those customers who did not enable or use the services, this claim can be

9   adjudicated on a class-wide basis because all class members were charged for a service they did

10  not use, and Defendant received a benefit at the class members' expense.

11          The class in this case is defined by those customers who did not enable the benefits of the

12  product they purchased, while Intelius was charging them on monthly basis.  This can be

13  objectively determined from Intelius's and Adaptive's member-enabled benefits, its sales,

14  fulfillment, redemption, and usage records.

15                      **(iii)     Breach of contract**

16          A claim for breach of contract under Washington law has three elements:  the existence

17  of a contract, a material breach of the contract's terms, and damages suffered as a result of the

18  breach.  *Myers v. Dep't of Social & Health Servs.,* 152 Wn. App. 823, 827-28, 218 P.3d 241,

19  243, (Wash. 2009).  A contract is construed in keeping with the parties' intent which is derived

20  from the "objective manifestations of the agreement" – *i.e.,* the express language of the contract

21  and not the "unexpressed subjective intent of the parties." *Hearst Commc'ns v. Seattle Times*

22  *Co.,* 154 Wn.2d 493, 503, 115 P.3d 262, 267 (2005).  As such, contract claims are routinely

23  certified for class treatment and even described as the ideal for class certification.  *See, e.g.,*

24  *Mortimore,* 197 F.R.D. at 438; *Vathana v. Everbank,* No. 09-02338, 2010 WL 934219 (N.D. Cal.

25  Mar. 15, 2010); *Menagerie Prods. v. Citysearch,* No. 08-4263, 2009 WL 3770668, at *10 (C.D.

26  Cal. Nov. 9, 2009).

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

Here, Plaintiffs assert that Intelius has violated the terms of its own Terms and Conditions and Privacy Policy.  Compl., ¶¶ 66-82.  While discovery is not complete, Plaintiffs believe that only a few versions of these contracts exist and that they did not change, in relevant part, over the class period.  The privacy policies in effect in May 2006 and December 2009 both include sections called "Fulfilling Your Transaction Request."  In this section, Intelius promises "If you request something from an Intelius Web site, for example, a product or service, a callback, or specific marketing materials, we will use the information you provide to fulfill your request.  To help us do this, we may share information with others, for instance, our affiliates, Intelius Business Partners, financial institutions, or post or government authorities may participate in fulfilling your request."[35]  The Privacy Policy also includes a section called "Marketing Use" in which Intelius promises:

> "The information you provide to Intelius on certain Intelius web sites may also be used, with your permission, by Intelius and selected third parties for marketing purposes.  Before we use it, we will offer you the opportunity to choose whether or not to have your information used for this purpose."[36]

Similarly, the Terms and Conditions include a section called "Fees and Refund Policy," which states the following mutual obligations:  "You agree to pay the fees associated with your use of the Intelius databases by providing us with a valid credit card."[37]  From these contracts, Plaintiffs assert Intelius undertook several obligations:  to use its customers' payment information exclusively for customers' use of Intelius databases; to securely maintain customers' payment information; to pass such information to third parties only when customers ask Intelius to do so, and; to give customers an opportunity to opt-out of third party marketing.

---

[35] *See* Swope Decl., Ex. 8, Intelius Privacy Policy Effective May 1, 2006.  The Privacy Policy effective December 2009 makes the same statement (with a few non-material changes) and also promises, "These third parties are prohibited from using your personally identifiable information for any other purpose.  We also require these third parties to maintain your personal information in the strictest confidence.  In addition, we will give the information you provide to our advertisers from whom you have indicated you want to purchase a product or service." *Id.* at 1.

[36] *See* Swope Decl., Ex. 8, Intelius Privacy Policy Effective May 1, 2006.  The Privacy Policy effective December 2009 makes an almost identical promise.  *Id.* at 2.

[37] *See* Swope Decl., Exhibits 6-7, Intelius Consumer Site Terms and Conditions, versions printed June 28, 2010 and August 19, 2009.

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   The question of whether Intelius breached its contractual obligations can be resolved with

2   common evidence:  the contracts and documents and testimony illuminating Intelius's marketing,

3   billing and data-passing practices.  Even if the terms of these agreements were ambiguous and

4   required the consideration of extrinsic evidence, that extrinsic evidence would be the same for all

5   class members: representations on Intelius's website and commonly understood e-commerce

6   norms.  *See, e.g., Menagerie Prods.,* 2009 WL 3770668, at *10.  Thus, common issues will

7   predominate over individual issues related to the breach of contract claims.  Plaintiffs' CPA

8   claim is also included in its breach of contract claim since Intelius agreed to be governed by

9   Washington law.  Swope Decl., Ex. 6.

**b.      Class Treatment Is Superior to Other Methods of Adjudicating This Controversy.**

10  The essence of superiority is whether class treatment best advances the interests of the

11  Class members and the judicial system.[38]  These interests are evaluated in light of the following

12  factors:

13
14          (1) the class members' interest in individually controlling the prosecution or
            defense of separate actions; (2) the extent and nature of any litigation concerning
15          the controversy already begun by or against class members; (3) the desirability or
            undesirability of concentrating the litigation of the claims in the particular forum;
16          and, (4) the likely difficulties to be in the managing a class action.

17  Fed. R. Civ. P. 23(b)(3)(B); *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190-92 (9th

18  Cir. 2001).  In view of all these factors, class treatment is superior to the other methods of

19  adjudicating this controversy.

**(i)      Members Of The Proposed Class Would Have No Interest In Individually Controlling The Prosecution Of Separate Actions.**

22  The first factor is the interest of each member in "individually controlling the prosecution

23  or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor is most relevant where

24  each class member has suffered sizeable damages or has an emotional stake in the litigation."

---

[38] "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1023

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 37

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON 98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1   *Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 652 (C.D. Cal. 1996).  However, "[w]here damages

2   suffered by each putative class member are not large, this factor weighs in favor of certifying a

3   class action."  Fed. R. Civ. P. 23(b)(3); *Zinser,* 253 F.3d at 1190.  Here, the individual Class

4   members' damages are modest – based upon monthly charges of $19.95 accumulating over a

5   period of, at most, a few years – even when trebled under the CPA.  Litigation costs would dwarf

6   the potential recovery of any individual class member.  The size and nature of the proposed Class

7   members' statutory damages weigh heavily in favor of certification here.  *Hanlon,* 150 F.3d at

8   1023 (fact that cost of litigation is larger than potential recover supported request for class

9   certification).

10          Furthermore, because the claims of all of the potential Class members will fall within a

11   limited range, "no one member of the [c]lass has an interest in controlling the prosecution of the

12   action."  *See Westways World Travel, Inc. v. AMR Corp.,* 218 F.R.D. 223, 240 (C.D. Cal. 2003).

13   In this case, as was the case in *Hanlon*, "[f]rom either a judicial or litigant viewpoint, there is no

14   advantage in individual members controlling the prosecution of separate actions.  There would

15   be less litigation or settlement leverage, significantly reduced resources and no greater prospect

16   for recovery."  *Hanlon,* 150 F.3d at 1023.  Accordingly, the first factor of Fed. R. Civ. P.

17   23(b)(3) weighs in favor of certification of this case as a class action.

          **(ii)      No Individual Cases Concerning the Controversy Presented
                 Here are Underway.**

18

19

20          Counsel for Plaintiffs are aware of two pending cases against Intelius, both of which were

21   filed as putative state class actions well *after* this case was filed, and are nowhere near

22   approaching class certification.[39]  The plaintiff in *Hook v. Intelius,* C.A. No. 5:10-cv-239 (N.D.

23   Ga. filed June 16, 2010) *appeal docketed*, No. 11-1876 (11th Cir. Apr. 27, 2011), asserted claims

24   on behalf of a national class under the Electronic Funds Transfer Act, 15 U.S.C. § 1693, the

25   (9th Cir. 1998).  Superiority is demonstrated where "class-wide litigation of common issues will reduce litigation
costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996).

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   Electronic Communications Privacy Act, 18 U.S.C. § 2510, and the doctrine of unjust

2   enrichment; the *Hook* plaintiff also asserted a claim on behalf of Georgia consumers under the

3   Georgia's Uniform deceptive Trade Practices Act, Ga. Code § 10-370.  The *Hook* complaint was

4   dismissed on a motion to dismiss in March 2011.  *Hook v. Intelius*, No. 10-239, 2011 WL

5   119305 (N.D. Ga. Mar. 28, 2011). That case is currently on appeal.  *Id.*  On April 15, 2011, the

6   same lawyers who filed the dismissed *Baxter* case[40] filed the apparently identical case to *Baxter*

7   in *Kurtz v. Intelius, Inc. et al.*, No. 11-1009, (E.D. Cal., filed Apr. 15, 2011).  That case is in its

8   preliminary stages, and in any event, seeks a California class, and does not seek a national class.

9        The absence of individual cases against Intelius underscores Plaintiffs' contention that

10   the claims presented here will only be litigated if they are litigated on a class basis.  Moreover,

11   the absence of a certified class in the other pending cases (and, indeed, their procedural posture)

12   in favor of certification of the proposed class here.

### (iii)     Concentrating The Claims In This Forum is Desirable.

14        A class action in this forum, where adequate plaintiffs and experienced and able legal

15   counsel are pursuing the claims, is the superior means of resolving this dispute.  The proposed

16   Class numbers in the hundreds of thousands and encompasses the *Hook* and *Kurtz* Plaintiffs.

17   Maintaining this case as a class action in this forum will guard against inconsistent results.

18   Moreover, Intelius is headquartered in this district, and the majority of witnesses are located in

19   this district.

### (iv)     Unusual Difficulties Encountered In The Management Of The Case Are Not Foreseeable.

21        There should be no unusual difficulties encountered in the management of the case.

22   Plaintiffs' counsel are experienced class action attorneys and have the financial capabilities to

23   manage this case on behalf of a national class.  Moreover, "dismissals [of class actions] for

---

[39] There was an additional case, *Baxter v. Intelius,* No. 09-1031 (C.D. Cal. filed Aug. 26, 2009).  However, the *Baxter* case was dismissed and the parties settled costs and agreed not to appeal.  *Baxter*, No. 09-1031, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010).
[40] *See* footnote 1 and 40 , *supra*.

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 39

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   management reasons, in view of the public interest involved in class actions, should be the

2   exception rather than the rule." *In re Bristol Bay,* 78 F.R.D. at 628 (citation omitted).  As Judge

3   Posner noted in a Seventh Circuit decision,

4       The *realistic* alternative to a class action is not 17 million individual suits, but
        zero individual suits, as only a lunatic or a fanatic sues for $30.  But a class action
5       has to be unwieldy indeed before it can be pronounced an inferior alternative – no
        matter how massive the fraud or other wrongdoing that will go unpunished if
6       class treatment is denied – to no litigation at all.

7   *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004).

8       Therefore, considering all the relevant factors, it is clear that certification of the proposed

9   Class pursuant to Fed. R. Civ. P. 23(b)(3) is proper and warranted.

10                          **V.   CONCLUSION**

11      Based on the foregoing, Plaintiffs respectfully request the Court certify a class under Fed.

12  R. Civ. P. 23(b)(2) and/or 23(b)(3) for Plaintiffs' First, Second, Third, Fourth, Fifth and Sixth

13  Causes of Action plead in the Second Amended Consolidated Complaint filed in this action.

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 40

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

DATED this 2nd day of June, 2011.

2

By /s/Karin B. Swope

3        Mark A. Griffin, WSBA #16296
         Karin B. Swope, WSBA #24015

4        David J. Ko, WSBA #38299
         1201 Third Avenue, Suite 3200

5        KELLER ROHRBACK L.L.P.
         Seattle, WA  98101

6        Telephone:  (206) 623-1900
         Facsimile:  (206) 623-3384

7

8        *Interim Co-Lead Counsel for Interim Lead Plaintiffs*

9        Andrew N. Friedman
         Victoria S. Nugent

10       Whitney R. Case
         COHEN MILSTEIN SELLERS & TOLL

11       P.L.L.C.
         1100 New York Avenue, N.W., Suite 500 West

12       Washington, DC  20005-3964
         Telephone:  (202) 408-4600

13       Facsimile:  (202) 408-4699

14       *Interim Co-Lead Counsel for Interim Lead Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S' MOTION AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION
(No. 09-cv-1485 RSL) Page - 41

LAW OFFICES OF

**KELLER ROHRBACK L.L.P.**

1201 THIRD AVENUE, SUITE 3200

SEATTLE, WASHINGTON  98101-3052

TELEPHONE: (206) 623-1900

FACSIMILE: (206) 623-3384

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on June 2, 2011, I caused to be served a true and correct copy of

3

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION on the following recipients via the

4

method indicated:

5

Arthur W. Harrigan, Jr., WSBA #1751
Tyler Farmer, WSBA #39912

6

DANIELSON HARRIGAN LEYH &
TOLLEFSON, LLP

7

999 Third Avenue, Suite 4400
Seattle, Washington 98104

8

Telephone:  (206) 623-1700

☒ Via ECF
☐ Via Hand Delivery
☐ Via U.S. First Class Mail
☐ Via facsimile to (206) 623-8717
☐ Via email to:

arthurw@dhlt.com; and
tylerf@dhlt.com

9

*Attorneys for Intelius, Inc and
    Intelius Sales, LLC*

10

11

Cori Gordon Moore, WSBA #28649
Thomas L. Boeder, WSBA #408

12

PERKINS COIE LLP
1201 Third Avenue, 40th Floor
Seattle, Washington  98101

13

☒ Via ECF
☐ Via Hand Delivery
☐ Via U.S. First Class Mail
☐ Via facsimile to (206) 359-3849
☐ Via email to:

cgmoore@perkinscoie.com
tboeder@perkinscoie.com

14

*Attorneys for Adaptive Marketing LLC*

15

16

DATED this 2nd day of June, 2011.

17

18

19

s/Karin B. Swope

20

Karin B. Swope

21

22

23

24

25

26

PLAINTIFF'S' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION
(No. 09-cv-1485 RSL)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384