**EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

---

| | |
|---|---|
| BRUCE KEITHLY, DONOVAN LEE, ) EDITH ANNA CRAMER, and MATTHEW ) BEBBINGTON, individually and ) on behalf of all Other Similarly) Situated, ) ) Interim Lead Plaintiffs, ) ) vs. ) ) INTELIUS INC., a Delaware ) Corporation; and INTELIUS SALES,) LLC, a Nevada Limited Liability ) Company, ) ) Defendants and ) Third Party Plaintiffs, ) ) vs. ) ) ADAPTIVE MARKETING, LLC, a ) Delaware Limited Liability ) Company, ) ) Third-Party Defendant. ) | No. C09-1485-RSL |

---

Videotape Deposition Upon Oral Examination of

BRUCE ALLEN KEITHLY

---

Taken at 999 Third Avenue, Suite 4400

Seattle, Washington


CONTAINS CONFIDENTIAL PORTIONS




DATE:  Friday, January 14, 2011

Deposition of Bruce Keithly
January 14, 2011
Deposition Excerpts: 14:13 – 15:1 & 15:6 - 7

1      Q.   You're the plaintiff in this lawsuit; correct?

2      A.   I am.

3      Q.   Can you tell me what claims you are asserting

4  against Intelius?

5           MS. SWOPE:  Objection.

6  BY MR. FARMER:

7      Q.   Go ahead.

8      A.   The -- the claims that I'm inserting against

9  Intelius are all set forth in the Third Amended Complaint

10  which I have reviewed, and I think it states it more

11  clearly than I possibly could the claims that I'm inserting

12  against -- asserting against Intelius.

13      Q.   Can you tell me any of the claims that you're

14  asserting against Intelius?

15      A.   Sure.  It's my belief that when I attempted to

16  use the Intelius website in order to buy a background

17  check, I went in the front door of the Intelius store

18  looking for a background check and came out of the back

19  door of the Intelius store having purchased a product that

20  I didn't know that I'd purchased, that I didn't consent to

21  purchase, that I had no idea that I had purchased when I

22  was on that site.  And so I -- it's my belief that one of

23  the complaints I have against Intelius is that I was

24  deceived when I went to its website and ended up making a

25  purchase that I didn't intend to purchase and didn't know

1    that I'd purchased.

2        Q.   Are you asserting any claims against other

3    defendants in this lawsuit?

4        A.   I guess I don't know of any other defendants

5    except third-party defendants.

6        Q.   Are you asserting claims on behalf of anyone

7    else?

8        A.   I sure am.

9        Q.   Who's that, sir?

10       A.   I'm concerting -- asserting claims on behalf of

11   the thousands or hundreds of thousands of people who have

12   gone to Intelius websites and, as I did, come out the back

13   door with purchases that they didn't understand they'd

14   purchased, that they didn't authorize to purchase, that

15   they didn't know they'd purchased, and that were actively

16   deceived into purchasing.

17       Q.   Other than what you just testified about, do you

18   have an understanding as to the criteria for membership in

19   the class that you are asserting?

20       A.   I do not.

21       Q.   Sir, do you intend to assert claims on behalf of

22   customers who received full refunds from Intelius?

23       A.   I have no idea.

24       Q.   You do not know whether you intend to include

25   them in your class?

Deposition of Bruce Keithly
January 14, 2011
Deposition Excerpt: 36:12 – 38:13

1    think my intention was to take a picture of the pages in

2    the same order that anyone else would have seen them on the

3    website at that time.

4        Q.   And do you believe that you did that to the best

5    of your ability in May 2009?

6        A.   Well, I don't know about what the best of my

7    ability is.  The trouble with my ability, in a sense, is

8    that I don't have a color copier -- a color printer at the

9    office, so it turns out that these pages don't really show

10   what I saw when I printed the pages because the pages are

11   all full of bright lights and colors.

12       Q.   If you could look back at Exhibit 3, can you

13   point out anything on Exhibit 3 that you would describe as

14   bright lights and color?

15       A.   Exhibit 3.

16              MS. SWOPE:  Objection.

17              THE WITNESS:  No, I do not think that

18   Exhibit 3 reasonably duplicates what the Intelius web pages

19   looked like in bright lights and color.

20   BY MR. FARMER:

21       Q.   Can you tell me any different text on the

22   Intelius web pages with bright lights and color than would

23   be present on Exhibit 3?

24              MS. SWOPE:  Objection.

25              THE WITNESS:  Yes, the -- when one really

1      goes online to the Intelius website and looks at a page

2      like Exhibit 3, the color presentation is just remarkably

3      different than your printer would pick up or I even tried

4      to see whether my printer would pick it up, but your

5      printer did about the same thing that my printer did, which

6      is that it just -- the printer has no way of showing, for

7      example, that -- that that bright "continue" line that you

8      see in Exhibit 3 is really bright and that the word

9      "continue" is really bright white.  It's not just white

10     like white; it's bright -- brightened up somehow.  So is

11     the "$10 off" white print.  It's just bright.  And the --

12     some of the other print that you see on that page is just

13     sort of a fadey gray color.

14         Q.   And your testimony is based on your personal

15     viewing of the Intelius website; is that correct?

16         A.   It is.

17         Q.   On what date?

18         A.   First on the 25th of May 2009 and more recently

19     when I was reviewing the pleadings and seeing the web page

20     printouts there, which -- which were in black and white,

21     and a copy of the pleadings that I had, I wanted to see

22     what those web pages looked like in color, printed color,

23     compared to the color on the screen.  So I went looking.

24         Q.   And about when was this?

25         A.   Oh, within the last 10 days.

1    Q.   And when you did this in the past 10 days, did

2  you use the computer in your office?

3    A.   I did.

4    Q.   Do you recall --

5    A.   Well, no, I used the home computer because I

6  wanted to print out a color page, colored page to see how

7  it looked side by side with the screen page.

8    Q.   And did you print out a colored page?

9    A.   I did.

10   Q.   And did you provide that to your counsel in

11  connection with your counsel's document request?

12   A.   I did that day or two before my deposition was

13  originally scheduled to be taken.

14   Q.   If you look at Exhibit 4, Page 4 --

15   A.   Is that the checkout page, create your account

16  page?

17   Q.   No, it's before that.  I apologize.  Exhibit 4,

18  Page 2, if you can have that out along with Exhibit 3.

19              MS. SWOPE:  What page?  I'm sorry.

20              MR. FARMER:  Exhibit 4, Page 2, and

21  Exhibit 3.

22   Q.   Do you see on the top of Exhibit 3 where it says

23  "Background report with identity protect trial"?

24   A.   I do.

25   Q.   Do you recall when you pulled up the Intelius

Deposition of Bruce Keithly
January 14, 2011
Deposition Excerpt: 112:9 – 113:15

1      pages you identified a zero, zero, zero charge on, isn't it

2      right that directly below the zero, zero, zero Identity

3      Protect trial charge, it says:  "After your seven-day free

4      trial, if you do not cancel your Identity Protect

5      membership, your credit card will be billed 19.95 and each

6      month thereafter that you continue your membership"?

7                   MS. SWOPE:  Objection, the document speaks

8      for itself, immediately after.

9                   THE WITNESS:  Counsel, it's real important

10      for the purpose of the truth coming out in this case that a

11      judge or a jury understand that I was never asked by

12      Intelius to look at printed pages in black and white.  I

13      didn't go shopping in a catalogue.  And so when you refer

14      me to 00052, we're looking at a page that doesn't look like

15      the page that I saw on your client's website.  It doesn't

16      even vaguely resemble that page, and it contains colors and

17      light light colored letters, little gray letters that make

18      it real easy on the real life lighted up page to miss the

19      little fine print in gray.

20                   And so whatever that says to you on the

21      black and white page has, in my world, pretty close to no

22      relevance to what the experience is on your client's web

23      pages.

24      BY MR. FARMER:

25           Q.   So it's a yes-or-no question, if you can answer

1    the original question.  If you'd like the court reporter to

2    read it back, she can.

3         A.   There isn't a yes-or-no answer to the idea that

4    that material is there.  It's self-evident that material is

5    there.  Whether it's there in a way that people like me are

6    going to see it when they try to order a product from

7    Intelius is the question of the day.

8         Q.   When you say people like you, what do you mean?

9              MS. SWOPE:  Objection.

10             THE WITNESS:  I mean me and the thousands of

11   people like me that go to the Intelius website to buy a

12   product and go out the back door with something we didn't

13   know we ordered, didn't authorize, didn't understand, and

14   were very disappointed that we ended up with somehow or

15   another.

16   BY MR. FARMER:

17        Q.   You printed up this page, 00052; correct?

18        A.   I did.

19        Q.   If you look at the order summary text, it notes

20   39.95 for the background report; correct?

21        A.   It does.

22        Q.   Can you read the text underneath that?

23             MS. SWOPE:  Objection, asked and answered.

24   We've been through this.

25   BY MR. FARMER:

Deposition of Bruce Keithly
January 14, 2011
Deposition Excerpt: 117:14 - 16

1    going back on the record.  Proceed.

2    BY MR. FARMER:

3         Q.   Mr. Keithly, could you turn to Exhibit 8 again,

4    please.

5         A.   I'm there.

6         Q.   This is the April 7, 2009, e-mail from Intelius

7    to Brucek@estateplanlaw.biz.  You testified earlier that's

8    the e-mail address you use for your work; correct?

9         A.   That's true.

10        Q.   If you look at the bottom of this e-mail, it

11   says:  "Your trial period will last seven days.  Be sure to

12   visit your My Identity Protect page today to enable all

13   your benefits.  Here's to a secure identity."

14             My question is whether you ever visited your My

15   Identity Protect page.

16        A.   I did not.

17        Q.   Did you ever click on any of the links in this

18   e-mail as you look up?

19             MS. SWOPE:  Objection.

20             THE WITNESS:  Not that I recall.

21   BY MR. FARMER:

22        Q.   Did you ever attempt to contact Intelius in April

23   2009 and ask what Identity Protect was?

24             MS. SWOPE:  Objection.

25             THE WITNESS:  I did not.

Deposition of Bruce Keithly
January 14, 2011
Deposition Excerpt: 146:1 – 148:9

1        Q.   Can you look through the web pages in Step 1

2    through Step 7?

3        A.   I have.

4        Q.   And tell me whether there's any difference

5    between that web page flow and the screens you used in your

6    transaction in April 2009?

7             MS. SWOPE:  Objection, assumes facts not in

8    evidence.

9             THE WITNESS:  So by "web page flow," you're

10   just asking me if the thing called Step 1 is what followed

11   with Step 2 and Step 3 as opposed to anything else?

12   BY MR. FARMER:

13       Q.   Let's do it this way.  Can you look at Step 1?

14       A.   Uh-huh.

15       Q.   Can you tell me if there's anything on this page

16   that is different than the web page that you viewed on

17   April -- I'm sorry, on April 7, 2009, during your

18   transaction at Intelius.com?

19             MS. SWOPE:  Objection, misstates prior

20   testimony.  He didn't say he doesn't remember the website

21   in 2009.

22             THE WITNESS:  So I can assure you that I

23   don't recall the details of these web pages from April of

24   2009 or the order that they were in.

25   BY MR. FARMER:

1      Q.   Can you turn to Step 8A of the same exhibit.  Do

2   you recognize this web page?

3               MS. SWOPE:  Objection.

4               THE WITNESS:  I have absolutely no

5   recollection of that web page from that time frame.

6   BY MR. FARMER:

7      Q.   Do you have a recollection of this web page from

8   any other time frame?

9      A.   I really don't.

10     Q.   Do you have any reason to believe that the web

11  pages from Step 1 to Step 7 are inaccurate with respect to

12  the disclosures made by Intelius in them compared to the

13  transaction that you completed on April 7, 2009?

14              MS. SWOPE:  Objection, lacks foundation.

15              THE WITNESS:  Yes, I do.

16  BY MR. FARMER:

17     Q.   Is your -- can you explain that for me?

18     A.   Yes, I have tried to understand what the

19  differences are when one looks at a picture of one of your

20  client's pages and when one looks at your client's pages,

21  and it's my opinion that there is little similarity between

22  how the picture presents itself and how the web page

23  presents itself.  The -- one of the more -- one of the more

24  outstanding differences occurs at Step 4 where the color is

25  used to attract attention, and it has been my experience on

1    your client's website that the information that attempts to

2    inform one that one might be getting into a 19.95 per month

3    charge doesn't -- the information's there, but it doesn't

4    appear the way it looks on these printed pages.

5            You just have to -- the experience of doing a

6    purchase on your client's site is not the experience of

7    looking at these printed pages.  The experience is a

8    computer screen, and there's just -- there's just no

9    similarity with that.

10        Q.   Sir, is the computer screen in your office

11   smaller than 8-1/2 by 11?

12        A.   It is not.

13        Q.   Do you recall how large it is?

14        A.   It's something like 12 inches high and 16, 17

15   inches wide, something like that.

16        Q.   Is it a Hewlett-Packard?

17        A.   I don't know what kind of a screen it is.

18        Q.   Is it the screen that came with the computer when

19   you bought it in 2008?

20        A.   I don't believe so.

21        Q.   So you may have purchased a new monitor since

22   then?

23        A.   I think so.

24        Q.   Do you know whether you have the same monitor

25   that you used when you looked at the Intelius website in

Deposition of Bruce Keithly
January 14, 2011
Deposition Excerpt: 150:7 – 152:22

1        understand why I had ended up with a product I didn't know

2        about in late May, and I have -- within the last two weeks

3        visited to try to understand the -- the differences between

4        what it looks like -- what a web page looks like on your

5        website and what it looks like printed out such as this

6        exhibit that I'm holding.

7            Q.    So your testimony with respect to the differences

8        between how the website appears on your computer screen and

9        how it appears on printed paper is based on your review of

10       the website in the last month?

11           A.    Yes.

12           Q.    And did you do printups of the website in the

13       last month?

14           A.    I did not.

15           Q.    You testified earlier that you had taken some

16       color printups of the website on your home printer; is that

17       correct?

18           A.    Just recently I did that.

19           Q.    So in 2011 how many times have you visited the

20       Intelius website?

21           A.    Again, I couldn't be sure, but the main thing was

22       that I went back to try understand -- when I got the copies

23       of the pleadings, I saw that you were asking Judge Lasnik

24       to take judicial notice of what these pages looked like,

25       and so I wanted to go see whether the -- the pages that

1    you'd printed out for the judge looked like they would on

2    the website.

3         Q.   Do you have an understanding as to how the pieces

4    of paper that are identified in this exhibit labeled Step 1

5    through Step 7 were generated?

6                    MS. SWOPE:  Objection.

7    BY MR. FARMER:

8         Q.   I'll ask a different question.  Do you think that

9    the web pages from Step 1 to Step 7 were something that was

10   printed up on a printer while looking at the Intelius

11   website?

12                   MS. SWOPE:  Objection.

13                   THE WITNESS:  I don't know.  It's whatever

14   your -- your technical guy here says he did.  I don't know

15   what he says he did.  So your witness said:  "Exhibits B

16   and C are true and correct copies of the web pages that

17   resulted from running plaintiff Keithly's background search

18   request on the regenerated archived code from April 7,

19   2009."  So that's all I can tell you about how you came up

20   with those.

21   BY MR. FARMER:

22        Q.   You have no reason to dispute the web pages that

23   Mr. Thunen authenticated, do you?

24                   MS. SWOPE:  Objection, calls for legal

25   conclusion, "authenticated."

```
 1                    THE WITNESS:  Dispute them in what sense,

 2      counsel?

 3      BY MR. FARMER:

 4          Q.   Do you have any reason to believe that those are

 5      not authentic screen shots of the web page as it existed on

 6      April 7, 2009?

 7          A.   I have no idea.

 8          Q.   You testified earlier that you printed color

 9      screen shots of the website as you viewed it recently;

10      correct?

11          A.   Yes.

12          Q.   And did those reflect what you viewed on the

13      screen when you printed them?

14          A.   No.

15          Q.   What was the difference?

16          A.   The difference is that you just can't -- at least

17      my printer and it looks like your printer -- can't

18      reproduce the glowing colors or the dimmed out fine print

19      that occurs when you're on the real thing.

20          Q.   Is it your testimony that the glowing colors are

21      present on the current Intelius website?

22          A.   Yes.

23                    MS. SWOPE:  Objection, asked and answered.

24      We've gone down this line of questioning twice before

25      today.
```

Deposition of Bruce Keithly
January 14, 2011
Deposition Excerpt: 181:1 - 17

```
 1                    E X A M I N A T I O N
 2    BY MS. SWOPE:
 3         Q.   Mr. Keithly, do you understand your duties as a
 4    class representative?
 5         A.   I do.
 6         Q.   What are they?
 7         A.   My -- my job is to represent people who have had
 8    similar events giving rise to a cause of action, and I
 9    understand that I am to be -- to keep myself informed of
10    the proceedings and to participate in things like today's
11    deposition.
12                    MS. SWOPE:  No further questions.
13                    THE WITNESS:  And I was informed of that
14    from day one and just gave an answer that I was too tired
15    not to give a little while back.
16                    MR. FARMER:  I have a few follow-up
17    questions.
18
19                    E X A M I N A T I O N   (C O N T.)
20    BY MR. FARMER:
21         Q.   Sir, you just testified that you intend to
22    represent people who have had similar events; is that
23    correct?
24         A.   Similar -- yeah, similar -- similar responses as
25    a human being to the presentations being made on the
```