**EXHIBIT 14**

Westlaw.

395 Fed.Appx. 431, 2010 WL 3556196 (C.A.9 (Wash.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 395 Fed.Appx. 431, 2010 WL 3556196 (C.A.9 (Wash.)))**

H

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Ninth Circuit Rule 36-3. (Find CTA9 Rule 36-3)

United States Court of Appeals,
Ninth Circuit.
Dianne L. KELLEY; Kenneth Hansen; Jim Walters; Matt Morales; Russell Hall; Don Schroder, Plaintiffs-Appellants,
v.
MICROSOFT CORPORATION, a Washington Corporation, Defendant-Appellee.

No. 09-35699.
Argued and Submitted Aug. 3, 2010.
Filed Sept. 14, 2010.

**Background:** Consumers brought putative class action against software corporation, alleging misrepresentations and omissions in pre-release marketing of operating system. The United States District Court for the Western District of Washington, Marsha J. Pechman, J., 2009 WL 973368, denied consumers' motion for narrowed class certification. Consumers appealed.

**Holding:** The Court of Appeals held that district court failed properly to conduct predominance inquiry.
Affirmed in part, reversed in part, and remanded.

West Headnotes

**Federal Civil Procedure 170A ⟜182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases

District court abused its discretion in finding that putative class of consumers suing software corporation failed to meet certification requirements under federal rules by failing properly to conduct predominance inquiry; court erroneously relied upon its conclusion that claims involving deceptive practices brought under Washington Consumer Protection Act (CPA) required individualized proof of proximate causation. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.; West's RCWA 19.86.010 et seq.

**\*431** Ian S. Birk, William C. Smart, Keller Rohrback LLP, Jeffrey Morgan Thomas, I, Esquire, Jeffrey Iver Tilden, Esquire, Mark A. Wilner, Esquire, Gordon Tilden Thomas & Cordell LLP, Seattle, WA, for Plaintiffs-Appellants.

Charles B. Casper, Montgomery, McCracken, Walker & Rhoads, LLP, Philldelphia, PA, Cassandra Lynn Kinkead, Esquire, Stephen M. Rummage, Esquire, Charles S. Wright, Davis Wright Tremaine LLP, Seattle, WA, for Defendants-Appellees.

Appeal from the United States District Court for the Western District of Washington, Marsha J. Pechman, District Judge, Presiding. D.C. No. 2:07-cv-00475-MJP.

**\*432** Before: CANBY, THOMPSON and BERZON, Circuit Judges.

MEMORANDUM [FN*]

    [FN*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    **\*\*1** This action involves alleged misrepresentations and omissions in Microsoft Corporation's ("Microsoft") pre-release marketing of its Windows Vista operating system. Plaintiffs-Appellants Dianne Kelley, Kenneth Hansen, Jim Walters, Matt Morales, Russell Hall, and Don Schroder (collectively referred to as "Plaintiffs") appeal the denial of their motion for narrowed class certification of two classes proposed after the district court decertified their original

395 Fed.Appx. 431, 2010 WL 3556196 (C.A.9 (Wash.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 395 Fed.Appx. 431, 2010 WL 3556196 (C.A.9 (Wash.)))**

class. The district court held that the putative classes failed to meet the predominance requirement of Federal Rule of Civil Procedure 23(b)(3). We review the certification decision for abuse of discretion. *See Yokoyama v. Midland Nat'l Life Ins. Co.,* 594 F.3d 1087, 1090-91 (9th Cir.2010); *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953, 957 (9th Cir.2009). We affirm in part, reverse in part, and remand for further proceedings.

The district court failed properly to conduct the predominance inquiry under Rule 23(b)(3). To certify a class under Rule 23(b)(3), a district court must, *inter alia,* "determine whether common or individual issues predominate in a given case." *Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571, 593 (9th Cir.2010) (en banc) (internal quotation marks omitted). "[T]he main concern in the predominance inquiry ... [is] the balance between individual and common issues." *In re Wells Fargo,* 571 F.3d at 959. Here, the district court relied exclusively on its conclusion that claims involving deceptive practices brought under the Washington Consumer Protection Act ("CPA"), Wash. Rev.Code § 19.86.010 et seq., require individualized proof of proximate causation to find that "the predominant questions [in this putative class action] would relate to Plaintiffs' subjective understanding of the Express Upgrade program and their individual belief in Microsoft's Vista advertising campaign." The district court failed to consider, or to balance against the issues requiring individualized proof, any questions of law or fact common to the Express Upgrade class members, despite identifying several such questions in the Rule 23(a)(2) commonality analysis in its February 2008 certification order. [FN1] *See In re Wells Fargo,* 571 F.3d at 959 (holding that it is reversible error to "rely[ ] on [one factor] to the near exclusion of other factors relevant to the predominance inquiry").

FN1. Cases alleging consumer fraud and involving questions affecting individual class members are not categorically precluded from class treatment. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *cf. Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1173-74 (9th Cir.2010).

In addition, contrary to the district court's supposition, the Express Upgrade class members' under-

standing of the Express Upgrade program and knowledge of Microsoft's Vista advertising campaign *is* amenable to class-wide treatment in some respects. For instance, common questions exist regarding the extent of the consumer education efforts that Microsoft allegedly controlled through its Windows Vista Capable marketing program. Further, this case is unlike instances where the alleged misrepresentation goes to only one feature of the product and there are numerous reasons why a consumer might use the product other than the feature misrepresented. *See Poulos v. Caesars World, Inc.,* 379 F.3d 654, 665, 667 (9th Cir.2004). The allegedly fundamental aspects of the product sought through the Express Upgrade *433 program are largely encompassed within the alleged misrepresentation-namely, that a computer labeled "Vista Capable" and upgradeable to Windows Vista Home Basic could run "Vista." *Cf. id.* at 665 (noting the "unique nature of gambling transactions" and holding that "gambling is not a context in which [the court] can assume that potential class members are always similarly situated").

**2 Finally, the district court did not consider whether other elements of a CPA claim present questions of law or fact common or individual to the class members, and what effect those questions, if any, have on the Rule 23(b)(3) predominance inquiry. For instance, the district court did not determine whether the allegedly deceptive practice affects the public interest, which itself involves consideration of several factors. *See, e.g., Panag v. Farmers Ins. Co. of Wash.,* 166 Wash.2d 27, 204 P.3d 885, 889 (2009).

Accordingly, we reverse the district court's denial of class certification and remand to the district court for further certification proceedings consistent with this disposition. We stress that by doing so, we express no view concerning whether on a proper analysis, the denial of class certification would be within the district court's discretion.

The district court did not err in concluding that the claims asserted by the proposed Windows Driver Device Model ("WDDM") class are best characterized as primarily involving allegations of affirmative misrepresentations, and not material omissions. Plaintiffs argue that the WDDM class definition's explicit reference to persons who purchased a personal computer ("PC") certified by Microsoft as "Vista Capable" is to identify WDDM class members

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

395 Fed.Appx. 431, 2010 WL 3556196 (C.A.9 (Wash.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 395 Fed.Appx. 431, 2010 WL 3556196 (C.A.9 (Wash.)))**

only. Even so, the argument underlying the WDDM class' claims is that Microsoft affirmatively marketed certain PCs as Vista Capable even though they could not support WDDM, a display driver allegedly required to operate Vista. Additionally, regardless of whether Microsoft's alleged knowing failure to reveal that pre-launch Vista Capable PCs could not support WDDM is a deceptive act or practice under the CPA, the failure to disclose that information is relevant only insofar as Microsoft also represented that Vista Capable PCs were in fact capable of running a version of Vista. Plaintiffs' complaint is instructive on this issue, as it contains allegations based on both affirmative misrepresentations and omissions. The WDDM class' claims are therefore not "base[d] ... only on what [Microsoft allegedly] did not disclose," but rather "as much on what [was said] as what [wa]s purportedly [left out]." *Poulos,* 379 F.3d at 667. Accordingly, we affirm the district court's denial of certification of the WDDM class on the theory that the WDDM class is entitled to a presumption of reliance.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

C.A.9 (Wash.),2010.
Kelley v. Microsoft Corp.
395 Fed.Appx. 431, 2010 WL 3556196 (C.A.9 (Wash.))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                  AT SEATTLE

10   DIANNE L. KELLEY, et al.,              CASE NO. C07-475 MJP

11                    Plaintiffs,           ORDER DENYING CLASS
                                            CERTIFICATION
12        v.

13   MICROSOFT CORPORATION, a
     Washington corporation,
14
                      Defendant.
15

16
         This comes before the Court on the parties' cross-motions on class certification. (Dkt.
17
     No. 385 and 388.)  Having reviewed the motions, the responses (Dkt. No. 390 and 391), the
18
     parties' supplemental briefing on Schnall v. AT&T Wireless Services, Inc., 2011 WL 1434644
19
     (Wash.) (Dkt. No. 399, 400, and 403), all related filings, and the parties' oral arguments held on
20
     April 28, 2011 (Dkt. No. 404), the Court DENIES Plaintiffs' request for class certification.
21
     \\
22
     \\
23
     \\
24

ORDER DENYING CLASS CERTIFICATION- 1

**Background**

Plaintiffs are suing Microsoft, alleging Microsoft's marketing of its Windows Vista ("Vista") operating system violated Washington's Consumer Protection Act ("CPA") and resulted in unjust enrichment. (Dkt. No. 139, Third Amended Compl.)

In Spring 2006, Microsoft initiated the "Windows Vista Capable" ("WVC") program in anticipation of its Windows Vista operating system. The program allowed original equipment manufacturers ("OEMs") to indicate which PCs could run Windows Vista if a buyer decided to upgrade the PC's operating system to Windows Vista when it became available in January 2007. Since different editions of Windows Vista would be released, Microsoft authorized OEMs to also designate PCs as "Premium Ready" if they would be upgradable to premium editions of Windows Vista, which included the Aero user experience.

In October 2006, Microsoft announced the Express Upgrade program. Under the Express Upgrade program, consumers who bought WVC PCs could receive an upgrade to the edition of Windows Vista that corresponded to the Windows XP edition preinstalled in their new PC. (Dkt. No. 67 at 15.) For example, if a consumer bought a PC with a basic Windows XP edition, they could upgrade to Windows Vista Home Basic, while those who bought a PC with an advanced Windows XP edition could upgrade to a Windows Vista premium edition. (Id.)

In February 2008, the Court certified a class comprised of all persons and entities residing in the United States who: (a) purchased a computer certified by Microsoft as "Windows Vista Capable"; and (b) not also bearing the "Premium Ready" designation. Kelley v. Microsoft Corp., 251 F.R.D. 544, 560 (W.D.Wash. 2008). In order to meet the CPA requirement that defendant's misrepresentation proximately cause plaintiff's injury, the class proceeded under a "price inflation" theory of causation. Cf. Indoor Billboard/Wash., Inc. v. Integra Telecom of

1  Wash, Inc., 162 Wn.2d 59 (2007); see also Schnall v. AT&T Wireless Servs., Inc., No. 80572-5,

2  __ P.3d __, 2011 WL 1434644 (Wash. Apr. 14, 2011)(reaffirming the proximate cause

3  requirement in Indoor Billboard)(hereinafter referred to as "Schnall II").  Under the theory,

4  plaintiffs were required to demonstrate Microsoft artificially inflated demand for computers only

5  capable of running Vista Home Basic, causing Plaintiffs to pay more for those PCs than they

6  would have without the "Windows Vista Capable" campaign. Id. at 558.

7      After the parties concluded discovery and exchanged expert reports, Defendant moved

8  for de-certification, arguing Plaintiffs failed to develop their price inflation theory. (Dkt. No.

9  252 at 1.)  The Court agreed and de-certified the class, finding that without evidence of classwide

10 price inflation, Plaintiffs could not demonstrate that common questions predominated for the

11 purposes of their CPA claim.  (Dkt. No. 316 at 14.)

12     Plaintiffs then sought certification of two classes: (1) a class of individuals who

13 purchased a WVC computer and participated in the Express Upgrade Program but only received

14 a software upgrade to Windows Vista Home Basic and (2) a "WDDM" class of individuals who

15 purchased WVC computers lacking the capability to run the Windows Device Driver Model

16 ("WDDM") graphics driver.  (Dkt. No. 220.)

17     The Court declined to certify either class under Fed. R. Civ. P. 23(b)(3) because

18 individual inquiries predominated over common questions of law and fact.  (Dkt. No. 362 at 18.)

19 On appeal, the Ninth Circuit affirmed with respect to the WDDM class but reversed with respect

20 to the Express Upgrade program.  The Ninth Circuit found the Court's certification analysis

21 focused too much on individualized inquiries and "did not consider whether other elements of a

22 CPA claim present questions of law or fact common or individual to the class members."  (Dkt.

23

24

ORDER DENYING CLASS CERTIFICATION- 3

No. 360 at 5.)  On remand, the Court is to "balance against issues requiring individualized proof, any questions of law or fact common to the Express Upgrade class members."  (Dkt. No. 370.)

### Discussion

A class action may be maintained if the party seeking certification meets all four criteria in Rule 23(a) and at least one of the three categories of Rule 23(b).  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).

Plaintiffs request certification under Fed. R. Civ. P. 23(b)(3) of an Express Upgrade class, defined as:

All persons and entities residing in the United States who:

(a) purchased a personal computer certified by Microsoft as "Windows Vista Capable"

(b) participated in Microsoft's Express Upgrade program to Windows Vista; and

(c) received a software upgrade to Windows Vista Home Basic.

1.   Rule 23(a) Requirements

Plaintiffs satisfy Rule 23(a) requirements.  Rule 23(a) requires the Court to find that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

First, Plaintiffs satisfy the numerosity requirement given that approximately 81,100 consumers participated in the Express Upgrade program and received an upgrade only to Home Basic.  See Fed. R. Civ. P. 23(a)(1). Joinder is impracticable.

Second, the claims of the Express Upgrade class present common questions of law and fact.  See Fed. R. Civ. P. 23(a)(2).  As the Court previously held, whether Vista Home Basic is

1     the real Vista, whether Microsoft's conduct was unfair or deceptive, whether Microsoft was

2     responsible for the WVC certifications, and the extent to which Microsoft was unjustly enriched,

3     are all issues common to the class.  (See Dkt. No. 128 at 13-14.)

4         Third, Plaintiffs claims are typical of the proposed class. Fed. R. Civ. P. 23(a)(3).  A

5     plaintiff's claims are typical if they arise from the same event or practice or course of conduct

6     that gives rise to the claims of other class members and are based on the same legal or remedial

7     theory.  1 Alba Conte & Herbert Newberg, Newberg on Class Actions § 3:19, at 401 (4th ed.

8     2002).  Each of the four proposed named Plaintiffs bought Vista-capable PCs, participated in the

9     Express Upgrade program, requested an upgrade, but received only an upgrade to Vista Home

10     Basic.  (See Pltf's Br., Dkt. No. 385 at 7 n.4.)

11         Fourth, the proposed Plaintiffs fairly and adequately represent the interests of the class.

12     Fed. R. Civ. P. 23(a)(4).  The main inquiry here is whether the proposed plaintiffs and counsel

13     have conflicts of interest with other class members, and whether the proposed plaintiffs will

14     prosecute the action vigorously on behalf of the class. Hanlon v. Chrysler Corp., 150 F.3d 1011,

15     1020 (9th Cir. 1998).  Since the four proposed Plaintiffs do not have conflicts of interest with the

16     class and are represented by qualified and competent counsel, the Court finds proposed Plaintiffs

17     satisfy the adequacy requirement.

18         2.   Rule 23(b) Requirement

19         Plaintiffs seek to certify the class under Rule 23(b)(3).  To do so, Plaintiffs must show (1)

20     questions of law or fact common to the class members predominate over any questions affecting

21     only individual members and (2) a class action is superior to other available methods for fairly

22     and efficiently adjudicating the controversy.  While Plaintiffs satisfy the superiority requirement

23

24

1    given that the proposed class includes more than 80,000 consumers with little individual stake in

2    the litigation, the parties' core dispute relates to Rule 23(b)(3)'s predominance requirement.

3           As articulated by the Ninth Circuit in In re Wells Fargo Hom Mortg. Overtime Pay Lit.,

4    the predominance inquiry asks, "whether proposed classes are sufficiently cohesive to warrant

5    adjudication by representation." 571 F.3d 953, 957 (9th Cir. 2009).  Since a principal purpose

6    behind Rule 23 class actions is to promote "efficiency and economy of litigation," the "'notion

7    that the adjudication of common issues will help achieve judicial economy' is an integral part of

8    the predominance test."  Id. at 958.  From this perspective, plaintiffs satisfy the predominance

9    inquiry when issues subject to common proof "ameliorate the need to hold several hundred mini-

10   trials with respect to [individual questions]."  See Vinole v. Countrywide Home Loans, Inc., 571

11   F.3d 935, 947 (9th Cir. 2009); see, e.g., In re Wells Fargo Home Mortg. Overtime Pay Lit., 268

12   F.R.D. 604 (N.D.Cal. 2010)(denying certification on remand because plaintiffs failed to present

13   "some form of common proof that would absolve [the] court from inquiring into how each

14   [individual employee] spent their working day.")

15          A.  Predominance Requirement

16          The Court finds the need for mini-trials with respect to the CPA's proximate causation

17   requirement is not ameliorated by common questions of law or fact.

18                  i.      Individualized Inquiry

19          Both Plaintiffs' CPA and unjust enrichment claims require a showing that a plaintiff's

20   injury was proximately caused by defendant's misrepresentation.  Specifically, to prevail on a

21   CPA claim, the plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in

22   trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property,

23   and (5) causation.  Panag v. Farmers Ins. Co. of Washington, 204 F.3d 885, 889 (Wash.

24

ORDER DENYING CLASS CERTIFICATION- 6

2009)(emphasis added); see also WPI 310.01. To prevail on an unjust enrichment claim, Plaintiffs must show (a) a benefit conferred on Microsoft, (b) appreciation or knowledge of the benefit, and (c) retention of the benefit would be unjust under the circumstances. Bailie Comm. Ltd. V. Trend Bus. Sys, inc., 61 Wn.App. 151, 160 (1991). Determining if the benefit conferred was unjust requires knowing whether Microsoft "actually deceived" consumers.

The Court reaffirms its previous determination that causation requires a fact-intensive, individual inquiry into the motivations of each consumer. Specifically, the Court finds no reason to depart from its observation that, "Plaintiffs who participated in the Express Upgrade Program knowing they would only upgrade to Vista Home Basic may not have suffered any injury at all." (Dkt. No. 362 at 10.)

Neither Schnall II nor the Ninth Circuit's remand order disturbs the finding that uninjured Plaintiffs would not have a CPA claim nor a claim for unjust enrichment. While Plaintiff argues Schnall II effectively adopts an "injury-based" view of causation as opposed to "transactional-based" view, neither phrase is used, let alone discussed, anywhere in the Washington Supreme Court opinion. In Schnall II, the Washington Supreme Court vacated its prior opinion and reiterated the causation analysis set forth in Indoor Billboard. 2011 WL 1434644 *7 (Wash. Apr. 14, 2011). However, the Court's order de-certifying the class relied on Indoor Billboard's articulation of causation--not Schnall I's. Therefore, the Court's analysis regarding causation remains applicable after Schnall II.

With respect to the remand order, the Ninth Circuit reversed for a proper balancing analysis but did not question the Court's discussion of causation under the CPA. Specifically, the Ninth Circuit faulted the Court for "rel[ying] exclusively on its conclusion that [CPA claims] . . . require individualized proof of proximate causation," yet, acknowledged causation is an

1    individual inquiry when it remanded to "balance against the issues requiring individualized

2    proof, any questions of law and fact common to the Express Upgrade class members." (Dkt. No.

3    360 at 5.)  Although the Ninth Circuit referred to Wolin v. Jaguar Land Rover North America,

4    LLC as an example of a consumer fraud suit amenable to classwide treatment, the Court finds

5    the case distinguishable.  617 F.3d 1168, 1173 (9th Cir. 2010).  In Wolin, the Ninth Circuit held

6    certification appropriate where plaintiffs claimed an alignment defect that no consumer would

7    knowingly choose.  Id.  This case, however, is different because some class members may have

8    understandably participated in the Express Upgrade program knowing they could only upgrade

9    to Vista Home Basic.

10          To the extent Plaintiffs rely on Panag v. Farmers, Plaintiffs' argument is unavailing.  In

11    Panag, the defendant relied on Indoor Billboard's discussion of causation to argue the plaintiff's

12    failure to actually remit payment barred her claim for unlawful subrogation practices.  204 P.3d

13    885, 900 (Wash. 2009).  The Washington Supreme Court rejected defendant's argument and

14    held, "[t]o establish injury and causation in a CPA claim, it is not necessary to prove one was

15    actually deceived. . . . If the deceptive act actually induces a person to remand payment that is

16    not owed, that will, of course, constitute injury.  But the recipient of a deceptive demand

17    payment may be injured in other ways."  Id. at 902-03.  Therefore, the focus of Panag was

18    whether the plaintiff alleged an injury—and the Washington Supreme Court only indirectly

19    considered causation.  The Panag court certified the class because plaintiffs identified an injury

20    proximately caused by Defendant's deceptive practice—i.e., plaintiffs incurred expenses when

21    investigating the legality of defendant's collection practice.  Id.  Here, Plaintiffs have not

22    identified the injury to those Express Upgrade Program consumers who sought an upgrade to

23

24

ORDER DENYING CLASS CERTIFICATION- 8

1    Vista Home Basic and got an upgrade to Vista Home Basic.  Unlike in <u>Panag</u>, there are Express

2    Upgrade Program consumers who cannot show injury—and therefore, cannot show causation.

3        In sum, <u>Indoor Billboard</u> remains good law and proximate causation still requires

4    individual inquiry into the motivations of Express Upgrade Program consumers.

5            ii.    <u>Common Issues</u>

6        Based on the Ninth Circuit remand order, the Court's analysis does not stop at the

7    individual inquiry.  The Ninth Circuit requires the Court to consider whether common means of

8    proof would ameliorate the need for an individual inquiry into causation.  Plaintiff identifies

9    several common questions of law and fact, including: (1) whether Vista Home Basic is "the real

10   Vista," (2) whether Microsoft's "education efforts" had the capacity to deceive the public, (3)

11   whether Microsoft's conduct occurred in "trade or commerce," (4) whether the public interest is

12   impacted, (5) the amount of damages, and (6) whether Washington law applies.  While Plaintiff

13   also argues causation is a common question, as discussed above, the Court disagrees.  Applying

14   the framework from <u>Wells Fargo</u>, the Court finds the common issues Plaintiff identifies fail to

15   eliminate the need for mini-trials regarding causation.

16           a.    <u>Whether Vista Home Basic is "the real Vista"</u>

17       Plaintiffs argue a factual question common to the class is whether or not Vista Home

18   Basic is the "real Vista" when it lacks the distinctive Aero graphic user-interface.  The Court

19   agrees in part.  To answer it, the parties must present evidence regarding the program itself,

20   expert opinions, the assessment of industry insiders, and the opinions of Microsoft's own

21   executives and product development teams.  However, the question of whether Vista Home

22   Basic is the "real Vista"—even if subject to common proof--does not ameliorate the need to

23   inquire into individual consumer motivations.

24

1    Framing the question as whether Vista Home Basic is "the real Vista" misses the point.

2    Even if Microsoft executives did not themselves consider Vista Home Basic to be "the real

3    Vista," some consumers may not have wanted "the real Vista" at all--some consumers may have

4    still wanted Vista Home Basic.  While Plaintiffs argue the only reason a consumer participates in

5    the Express Upgrade Program is to get "the real Vista," the Express Upgrade Program ran from

6    October 26, 2006 until March 15, 2007 yet Microsoft released Vista in January 2007.  (Dkt. No.

7    67 at 7, 17.)  Although Plaintiffs argue the proposed class purchased their PCs prior to Vista's

8    launch, it appears the Express Upgrade Program extended two months beyond Vista's launch.

9    It's quite possible that some consumers were able to test drive Vista Home Basic, knew it did not

10   include the Aero graphic user-interface yet still participated in the program.  Determining

11   whether Vista Home Basic is "the real Vista" will not eliminate the need to identify which

12   consumers were satisfied with Vista Home Basic and which consumers wanted "the real Vista."

13   The Court finds this inquiry does not render the proximate causation analysis as one

14   subject to common proof.

15        b.  Microsoft's marketing efforts

16   With respect to Microsoft's "education efforts," the Court finds this factor is not only a

17   factual question common to the class but also lessens the need to inquire about individual

18   consumer motives—at least, in part.  As the Ninth Circuit stated, "common questions exist

19   regarding the extent of the consumer education efforts that Microsoft allegedly controlled

20   through its [WVC] marketing program."  (Dkt. No. 360 at 5.)

21   The Court finds Plaintiffs' reliance on Garner v. Healey and Indoor Billboard to be a

22   useful starting point.  In Garner v. Healey, the plaintiffs sued defendants for representing its

23   product as car wax when, in fact, the product contained no wax.  184 F.R.D. 598, 605 (N.D.Ill.

24

1   1999).  The Northern District of Illinois certified the class because "the fraud was perpetrated in

2   a uniform manner against every member of the class, such [that] all plaintiffs received virtually

3   identical written materials from the defendants."  Id. at 602.  Similarly, on remand, the King

4   County Superior Court in Indoor Billboard certified the class relying on the seemingly uniform

5   fraud perpetuated by defendants.  The state trial court observed there was "proof of the

6   [defendant's] widespread, standardized, written representation[s]" and "[defendant] offered no

7   evidence that its sales representatives ever disclosed the true nature of its [charges] to any

8   putative class member." (See Dkt. No. 386, Ex. C at 5.)  Both cases suggest a uniform practice of

9   fraud on behalf of the Defendant may eliminate the need for inquiries into individual consumer

10  motivations.

11          Here, Microsoft's education efforts may ameliorate the need for individual inquiries, but

12  Plaintiffs have not shown the alleged fraud perpetrated by Defendant was carried out in the same

13  uniform manner as in Garner and Billboard.  See, e.g., Poulos v. Caesars World, 379 F.3d 654,

14  668 (9th Cir. 2004)(distinguishing Garner and denying certification to plaintiffs allegedly duped

15  by video poker machines).  While some consumers may not have understood the limitations of

16  the Express Upgrade Program, Vista launched in January 2007.  As discussed, the post-January

17  2007 consumers had the opportunity to test drive the different Vista versions and understand the

18  features of Vista Home Basic.  Since Plaintiffs' proposed class includes consumers who

19  participated in the Express Upgrade Program both before and after Vista's launch in January

20  2007, the consumers did not receive "virtually identical" marketing materials from Microsoft as

21  in Garner.  The situation is more akin to Poulos v. Caesars World, where the Ninth Circuit

22  declined to certify because "there was no single, logical explanation for gambling."  379 F.3d at

23  668.  Similar to gambling, there are a variety of reasons for consumers to purchase a computer;

24

1   there is no single, logical explanation for why consumers purchased the Express Upgrade

2   Program. Id. The timing of Vista's launch suggests some of the Express Upgrade consumers

3   could have known that Vista Home Basic would not include the Aero interface and was not "the

4   real Vista," as Plaintiffs define it.

5         Plaintiffs' argument that there was no "consumer education effort" with respect to Vista

6   is also unavailing. Microsoft submits marketing materials that explain the different editions of

7   Windows Vista, including two press releases. Regardless of whether Microsoft advised OEMs

8   and retailers that it was "not changing [its] strategy of doing very little to drive demand and

9   awareness for Windows Vista until [the January Consumer Electronics Show]," there was

10   information available to consumers that referred to the different Vista editions. (Dkt. No. 131 at

11   122.) Specifically, a January 18, 2007 Wall Street Journal article stated:

12       "Vista comes in six versions, two of which are primarily aimed at consumers.
       One called Home Premium, is the one most consumers will want. . . . The
13      other main consumer edition of Vista is the stripped-down version, called
       Home Basic. It includes the improved security and search but leaves out the
14      new Aero interface."

15   (Rummage Decl., Dkt. No. 99-5 at 18.) Likewise, an April 20, 2006 article in the New York

16   Times, stated "the new operating system will be available in several versions for business and

17   home users, and each version may have slightly different requirements." (Rummage Decl., Dkt.

18   No. 99-5 at 23.) In addition to reaching out to news agencies, Microsoft required OEMs to

19   include on product packaging that "[s]ome features available in premium editions of Windows

20   Vista—like the new Windows Aero user interface—require advanced or additional hardware."

21   (Mullaney Sundlie Decl., Dkt. No. 88 at 4.)

22         To the extent Plaintiffs alternatively argue any Microsoft consumer education effort that

23   existed was ineffective, the argument has more merit. It is questionable how useful Microsoft's

24

1    marketing efforts could really be before Vista's release when consumers do not understand the

2    meaning of an Aero interface.  (See Dkt. No. 131 at 153 (emails between Microsoft employees

3    observing there was no "context" for Vista feature descriptions before Vista launch and no

4    "benefit" of providing features list to consumers)).  In addition, Microsoft's marketing efforts

5    surrounding Vista was unclear.  The May 18, 2006 press release, for example, encouraged

6    consumers to purchase Premium Ready PCs because it "will deliver even better Windows Vista

7    experiences." (See Burk Decl., Dkt. No. 91 at 10.)  But it also states, "[a]ll editions of Windows

8    Vista will deliver innovations in core operating system experiences" and "[t]he Windows Vista

9    Capable logo is designed to assure customers that the PCs they buy today will . . . run the core

10   experiences of Windows Vista."  (Burk Decl., Dkt. No. 91 at 9.)(emphasis added).  Telling

11   consumers that "premium" versions of a product are "even better" than others versions fails to

12   explain the difference in interfaces--especially when simultaneously promising all versions will

13   provide a "core experience."

14        Likewise, the websites Defendant relies on as evidence of their consumer education

15   efforts likewise reflect the tension in Microsoft's press release.  The Staples website, for

16   example, listed Aero Interface as the first feature "that Windows Vistas has to offer," but, under

17   the "Vista Capable" subheading, it states "some features in premium editions of Windows Vista

18   require advanced or additional hardware." (Rummage Decl., Dkt. No. 99-7 at 82.)  The website

19   nowhere explains that it is the core Aero interface that would be lacking.  (Id.)  Similarly, in the

20   November 2006 Consumer Report, a section discussing Vista upgrades at one point states

21   "[s]ystems called Windows Vista Premium Ready are able to run Vista's Aero interface," but

22   also suggests generally "Microsoft Windows Vista . . . will have a new interface" (Rummage

23   Decl., Dkt. No. 99-2 at 4-5.)  At the very least, the total mix of consumer information suggests

24

1   some Express Upgrade consumers likely—and understandingly--believed they would be

2   upgrading to a new interface, i.e., "the real Vista," yet received only Vista Home Basic.

3           However, at the end of the day, Plaintiffs' proposed class is not limited to those who

4   participated in the Express Upgrade Program before Vista's launch.  At least a few consumers

5   purchased Express Upgrade Program after Vista's launch and likely knew the differences

6   between Vista versions.  The Court finds Microsoft's alleged misrepresentation was not so

7   uniform or standardized so as to eliminate the need for mini-trials on the issue of causation as

8   was the case in Garner and Indoor Billboard.  Microsoft's marketing effort was not an "extensive

9   outreach campaign," as Microsoft claims, nor was it particularly effective, but evidence of some

10  Microsoft marketing material explaining the different versions of Vista is enough to show

11  consumers differed in their motivations for participating in the Express Upgrade Program.  (See

12  Def's Br., Dkt. No. 388 at 8.)

13          Since Microsoft's consumer education efforts was not so uniform to suggest all Plaintiffs

14  were deceived with virtually identical materials, the Court finds this factor only partially

15  ameliorates the need for mini-trials.

16              c.   Trade, Commerce, and Public Interest Impact

17          The third and fourth factors are questions common to the class.  While Defendant argues

18  the factors are not "questions" at all because they are undisputed, a district court may not exclude

19  conceded issues in determining whether common issues predominate.  See  In re Nassau County

20  Strip Search Cases, 461 F.3d 219, 227-29 (2d Cir. 2006).  While the significance of the conceded

21  issue is important for purposes of predominance, the mere fact that the issue is conceded does

22  not take it outside the court's purview.  Myers v. Hertz Corp., 624 F.3d 537, 550 (2d Cir.

23

24

1 | 2010)(finding the district court's failure to consider uncontested questions was not error because

2 | the uncontested questions was clearly less substantial in the overall mix of issues).

3 |    With this in mind, however, the Court finds the third and fourth factors are not enough to

4 | show common issues predominate.  Specifically, under the <u>Wells Fargo</u> framework, neither

5 | factor eliminates the need for individualized inquiry into each consumer's motivations.  Whether

6 | Microsoft's conduct occurred in "trade or commerce" and/or whether there was an impact on the

7 | public interest are two elements of a CPA claim, but they do not shed any light on individual

8 | consumers' motivations for participating in the Express Upgrade Program.  Specifically, the

9 | public interest inquiry focuses on whether Microsoft's actions were part of a pattern or general

10 | conduct of business, whether there is a real potential for repetition, and whether many customers

11 | were affected.  <u>See</u> WPI 310.04.  Likewise, with respect to trade or commerce, "the important

12 | point for present purposes is only that the element is susceptible to classwide proof."  (Pltf's Br.,

13 | Dkt. No. 385 at 13.)  Since neither factor help in determining if proposed class members were

14 | actually injured by Microsoft's representation, they do not alleviate the need for mini-trials on

15 | the causation question.

16 |     d.  <u>Damages</u>

17 |    The amount of damages is a factual question common to all class members.  Specifically,

18 | actual damages may be calculated by multiplying the number of Home Basic licenses sold

19 | pursuant to the Express Upgrade promotion by Microsoft's price of an upgrade to the premium

20 | Vista product fairly deemed "the real Vista."  In addition, treble damages under the CPA will

21 | depend on a common inquiry—i.e., whether Microsoft acted intentionally, knowingly, or

22 | recklessly.  RCW 19.86.090.  With respect to damages for unjust enrichment, the calculation is

23 | based on the "gain" to Microsoft.  <u>Va. Mason Med. Ctr. v. Exec. Risk Indem. Inc.</u>, 2007 WL

24 |

ORDER DENYING CLASS CERTIFICATION- 15

3473683 at *3.  However, again, even though calculation of damages does not require individual inquiry, it does not eradicate the need to establish proximate causation.  Even considering damages, the common issues do not predominate over the individual inquiries.

        e.    Choice of law

        While it is no longer contested, the Court agrees with Plaintiffs that the choice of law issue remains a part of the analysis.  See In re Nassau County Strip Search Cases, 461 F.3d at 227-29.  Since the Court previously ruled Washington law applies, this is a question common to the class.  (See Dkt. No. 128 at 4-11.)  Application of a single state law unifies the consumer claims of the proposed class whether or not class members are Washington or non-Washington residents.  However, the application of Washington law does not help in identifying which proposed class members were actually injured by participation in Microsoft's Express Upgrade program.  Therefore, it is not enough to suggest common issues predominate.

**Conclusion**

        The Court DENIES Plaintiffs' request for class certification.  The proximate causation requirement of the CPA remains an individual inquiry and none of the common issues Plaintiffs identify alleviate the need to determine each consumer's motivations for participating in the Express Upgrade Program.  The clerk is ordered to provide copies of this order to all counsel.

        Dated this 24th day of May, 2011.


Marsha J. Pechman
United States District Judge