**EXHIBIT 16**

**STATE OF WASHINGTON**
**KING COUNTY SUPERIOR COURT**

| | |
|---|---|
| STATE OF WASHINGTON, | NO. |
| Plaintiff, | |
| v. | COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF UNDER THE CONSUMER PROTECTION ACT, RCW 19.86 |
| INTELIUS INC., a Delaware corporation, | |
| Defendant. | |

COMES NOW Plaintiff, State of Washington, by and through its attorneys Robert M. McKenna, Attorney General, and Shannon E. Smith, Assistant Attorney General, and brings this action against the Defendant named herein, alleging as follows on information and belief:

## I. JURISDICTION AND VENUE

1.1     This Complaint is filed and these proceedings are instituted under the provisions of Chapter 19.86 RCW, the Consumer Protection Act.  Plaintiff seeks a permanent injunction and other equitable relief, including restitution, civil penalties, and attorneys' costs and fees based on violations of the Consumer Protection Act.

1.2     The violations alleged in this Complaint have been and are being committed in whole or in part in King County, Washington, by the Defendant.  The Attorney General's authority to commence this action is set forth in RCW 19.86.080 and RCW 19.86.140.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 1

ORIGINAL

## II.   DEFENDANT

2.1     Defendant Intelius Inc., ("Intelius") is incorporated in the state of Delaware.  Its principal place of business is in Bellevue, Washington, and it transacts business in the state of Washington.  At all times relevant to this action, Intelius was engaged in the marketing and sale of membership programs to Washington consumers via Intelius-owned Web sites.

## III.   NATURE OF TRADE OR COMMERCE

3.1     Intelius operates several Web sites on which it sells various services, including background reports on individuals, identity protection services, and employee screening.  The main  Intelius  Web  sites  are  www.intelius.com,  www.peoplelookup.com,  and www.lookupanyone.com, although Intelius owns and operates a large number of other Web sites that are used primarily to drive traffic to its principal sites.

**Intelius' "Post-Transaction Marketing" of Adaptive Marketing, Inc., Programs**

3.2     Since July 2007, Intelius has marketed third-party subscription membership programs to its customers during the customer's primary transaction process with Intelius.

3.3     The third-party memberships have various names, including 24Protect Plus and Privacy Matters, and purport to offer various benefits such as free credit reports, free credit monitoring, and 24-hour roadside assistance.

3.4     The third-party membership programs are owned and serviced by Adaptive Marketing, Inc. ("Adaptive"), a subsidiary of Vertrue, Inc. ("Vertrue"), a Connecticut-based company.

3.5     The membership programs are billed by Adaptive on a recurring monthly or annual basis.

3.6     In July 2007, Intelius entered into an agreement with Adaptive ("the Agreement") to offer 7-day free trials of Adaptive's membership programs to Intelius customers via (1) an interstitial offer within the Intelius purchase path, (2) promotional ads places on the Intelius purchase confirmation page, and (3) email marketing.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 2

3.7    The Agreement provides that all of Intelius' marketing of Adaptive's membership programs is to be "card-on-file," which means that the consumer does not need to re-enter his or her billing information on the membership enrollment form after linking from an advertisement or marketing offer in order for Adaptive to charge the membership fee to the consumer's credit or debit card.

3.8    Intelius' marketing of Adaptive programs is a type of marketing known as "post-transaction marketing," where the offer for the program is made after the consumer enters his or her account information to make a purchase with Intelius but before Intelius shows the consumer his or her report.

3.9    Intelius obtains the consumer's billing information during the consumer's purchase of an Intelius service or product.

3.10    Intelius then transmits the consumer's billing information obtained during the consumer's Intelius purchase to Adaptive in order for Adaptive to charge the applicable recurring monthly membership fee to the consumer's credit or debit card.

3.11    The Agreement requires Intelius to obtain consent from the consumer for the transmission of his or her billing information to Adaptive.

3.12    Under the Agreement, Adaptive is responsible for billing and collecting the fees for its membership programs from consumers who are enrolled in its programs through Intelius.

3.13    Under the Agreement, Adaptive is responsible for servicing the membership programs that it offers.

3.14    Under the Agreement, Adaptive is responsible for handling customer service related to its membership programs that are marketed by Intelius.

3.15    Under the Agreement, Adaptive is responsible for responding to cancellation and refund requests from consumers who were enrolled in one of its membership programs through an Intelius transaction.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 3

1   3.16   Intelius has been selling consumers' credit and debit card information to
2   Adaptive in the form of receiving a "bounty" of between $40 and $59 per consumer who
3   enrolls in an Adaptive membership program based upon an offer featured on an Intelius Web
4   site.

5   3.17   Intelius initially approved the form of the offers that Adaptive had created and
6   presented to Intelius to be shown on Intelius' Web sites, and subsequently, Intelius requested
7   and Adaptive agreed to modify the offers "to improve the presentation to potential customers,"
8   according to Intelius.

9   3.18   Intelius uses and tests numerous versions of Adaptive's offers and keeps a
10  record of the number of consumers who view the offer, number of consumers who "accept" the
11  offer, and the conversion rates of offers.

12  3.19   The Adaptive offers that Intelius displays have high conversion rates,
13  sometimes over 80 percent.

14  3.20   The Adaptive offers on the Intelius Web site appear on the screen after the
15  consumer has paid for the Intelius product but before the consumer is shown the report of his
16  or her purchase.

17  3.21   Many of the Adaptive offers appearing on Intelius Web sites feature an offer to
18  customers of "$10 cash back."

19  3.22   The "cash back" offer, however, is first displayed on the screen on which the
20  consumer's search results appear, informing the consumer that if he or she proceeds with the
21  Intelius transaction, he or she will be offered $10 cash back. See Figure 1.

22  ///
23  ///
24  ///
25  ///
26  ///

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 4

1   Figure 1.



14      3.23    There are no terms or conditions disclosed on this initial offer of $10 cash back.

15      3.24    The "cash back" offer is displayed on one more screen and then finally

16   displayed prominently on the "Thank you" screen after the consumer clicks on the "Buy It"

17   button (see Figure 1) to complete his or her purchase of the Intelius report. See Figure 2.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 5

Figure 2.



3.25    Following a prominent display of "Thank You your order has been successfully completed," the Adaptive advertisement offers the Intelius customer $10 cash back" for taking a two-question survey.

3.26    The Adaptive offer looks in all respects as though it is being made by Intelius.

3.27    There is no indication in close proximity to the offer that there are terms and conditions attached to the $10 cash back.

3.28    The "Click here for details" hyperlink, rather than disclosing the terms and conditions, states that you will get an email telling you how to submit a claim for the $10.00.

3.29    On the same Web page as the $10 cash back offer for taking the survey, there is a field in which the customer is asked to type in his or her email address.

3.30    Directly below the instruction to type in the email address is a prominent red button that says "YES and show me my report." See Figure 3.

Figure 3.



3.31   Directly below the prominent red button is a tiny text hyperlink stating: "No, see my report."

3.32   In contrast to the dark print and prominent placement of the cash back offer and instructions to input an email address is the small light-gray print covering the Web page.

3.33   The small light-gray print includes the "terms and conditions" of the $10 cash back offer, which include (1) that the consumer must agree to a seven-day trial offer for a membership program, in this case, Privacy Matters Identity; (2) that the consumer is agreeing to be charged for the membership program at the end of the trial period on a recurring monthly basis for whatever the "then-monthly" fee is; (3) that the consumer agrees that Intelius may transmit the consumer's credit or debit card information to the name of the membership program (Adaptive is not identified); and (4) that the consumer, if he or she used a debit card

1   in his or her Intelius transaction, is agreeing to recurring monthly debits from his or her bank

2   account.

3       3.34   Nowhere on the offer page is it disclosed that it is Adaptive Marketing making

4   the offer, not Intelius.

5       3.35   Hundreds of Washington consumers have been enrolled in Adaptive

6   membership programs by Intelius without their knowledge or consent.

7       3.36   Hundreds of Washington consumers have been charged by Adaptive for

8   membership programs that they did not knowingly consent to be charged for.

9       3.37   Adaptive's membership programs are billed on consumers' credit and debit

10  cards using mysterious abbreviations, such as: "MC-PMIDENTITY," "AP9 VPRewardsUs,"

11  and "IK9 VP Rewards US."

12      3.38   Hundreds of consumers have complained to the Washington Attorney General

13  about unauthorized charges on their credit or debit cards placed by Adaptive.

14      3.39   Thousands of consumers have complained to the Better Business Bureau about

15  unauthorized charges on their credit or debit cards placed by Adaptive based upon an Intelius

16  transaction.

17      3.40   Hundreds of consumers have reported difficulty in discovering what company

18  was placing the charges, what the charges were for, and where the company obtained the

19  consumer's credit or debit card information.

20      3.41   Many Washington consumers complained to Intelius about unauthorized

21  charges for Adaptive programs when Adaptive informed them that Intelius had given them

22  their financial account information.

23      3.42   Intelius did not refund all consumers who complained about the unauthorized

24  charges by Adaptive..

25      3.43   When consumers have been able to identify the source of the charges, many

26  consumers have been unable to obtain full refunds for the membership fees from Adaptive,

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 8

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  even though Adaptive represents on its Web site that: "Adaptive Marketing LLC® will provide

2  a full and prompt credit or refund to any consumer who is charged a membership fee but

3  claims    that    he    or    she    did    not    authorize    that    charge."    See

4  http://www.adaptivemarketing.com/about_bp.asp <last visited on February 23, 2009>.

5          3.44    By January 2008, as an increasing number of Intelius customers were enrolled

6  in Adaptive membership programs during their Intelius transactions, Intelius began receiving

7  an increasing number of consumer complaints of unauthorized charges to their credit and debit

8  cards.

9          3.45    At a certain point, Intelius developed a "warm transfer" system with Adaptive

10  to transfer consumer calls directly to Adaptive.

11          3.46    Intelius was concerned about how their customers' experiences with Adaptive

12  were impacting their own customer relations.

13          3.47    In some cases, Intelius would email to Adaptive the names and account

14  numbers of consumers who called and requested a refund for an Adaptive program.

15          3.48    However, even as early as September 2007, only two months after Intelius

16  began featuring the Adaptive offers, Intelius was aware that consumers were complaining of

17  being enrolled and billed for Adaptive programs without their authorization.

18          3.49    As early as September 2007, Intelius was made aware that there was a

19  significant increase in complaints to the Better Business Bureau relating to unauthorized

20  charges made by Adaptive subsequent to the consumer's purchase of an Intelius report.

21          3.50    Intelius' executive management, including its Chief Executive Officer, Naveen

22  Jain, were kept apprised of the trends on consumer calls to customer service relating to

23  Adaptive programs by regular reports from John Arnold, an Intelius executive vice president.

24          3.51    From July 2007 to July 2008, approximately 19,000 Washington consumers

25  were enrolled in an Adaptive membership program during a transaction with Intelius.

26

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 9

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

3.52   In many months during 2007 and 2008, Intelius obtained near or over a 50 percent conversion rate, that is, nearly or more than 50 percent of those consumers viewing the Adaptive offer were enrolled in an Adaptive membership program.

3.53   In March 2008 alone, Intelius earned over $4 million in commissions from Adaptive for the consumers it enrolled in Adaptive programs.

3.54   In its first year of marketing Adaptive's programs, thousands of calls flooded weekly into Intelius's customer service department complaining about charges for Adaptive programs.

3.55   Of the nearly 19,000 Washington consumers who were enrolled in an Adaptive program during an Intelius transaction, almost 15 percent clicked on the button "YES and show me my report" in under thirty seconds after they clicked on the button to complete their purchase of the Intelius report.

3.56   Of the nearly 19,000 Washington consumers who were enrolled in an Adaptive program during an Intelius transaction, over 50 percent clicked on the button "YES and show me my report" between thirty and sixty seconds after they clicked on the button to complete their purchase of the Intelius report.

3.57   Of the nearly 19,000 Washington consumers who were enrolled in an Adaptive program during a transaction with Intelius, approximately 1,769 were enrolled in multiple Adaptive programs as a consequence of multiple purchases of Intelius products.

3.58   Of the thousands of Washington consumers who were enrolled in an Adaptive program during a transaction with Intelius, only a scant number claimed the $10 cash back from Adaptive.

3.59   Despite proposing and making numerous changes to Adaptive's offer and continuously testing different versions of the offer in order to increase the conversion rate, Intelius proposed no changes to the offer to address the growing number of consumer

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 10

1    complaints of unauthorized charges until June 2008, when an article was published online

2    criticizing Intelius's marketing of Adaptive's programs.

3         3.60    However, the changes Intelius proposed in June 2008 were insufficient to cure

4    the problem, and Intelius continued to receive complaints from consumers who were being

5    billed for Adaptive's membership programs.

6         3.61    Eventually, Intelius began displaying Adaptive offers that did not contain the

7    "consumer survey."

8         3.62    The conversion rates for offers without the survey dropped significantly.

9                 **Intelius "Post-Transaction Marketing" of Identity Protect**

10        3.63    In April 2008, Intelius began offering its own membership program, Identity

11   Protect, to consumers during the consumers' purchase of an Intelius report.

12        3.64    Intelius sells Identity Protect by offering a free trial of the program, and if the

13   consumer does not cancel the program within the free trial period, Intelius automatically

14   charges the consumer a recurring monthly subscription fee of $19.95 to the credit or debit card

15   the consumer used to purchase the Intelius report.

16        3.65    Intelius modeled its marketing offer of Identity Protect on the Adaptive offers in

17   most respects.

18        3.66    Intelius used and tested numerous versions of Identity Protect offers and tracked

19   the number of consumers who viewed the advertisement, the number of consumers who

20   "accepted" the offer, and the conversion rates of offers.

21        3.67    In some versions of the offer, during the consumer's transaction process with

22   Intelius, an advertisement promising an offer for $10 cash back appeared on multiple screens.

23        3.68    The $10 cash back offer did not disclose that there were terms and conditions to

24   the offer.

25

26

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 11

3.69    The consumer filled in his or her credit or debit card information to complete his or her purchase of an Intelius report and then clicked on a button that stated: "Confirm the Purchase and Show My Report." See Figure 4.

Figure 4.



3.70    Following the consumer's submission of his or her credit or debit card information to Intelius on the Intelius Web site to purchase an Intelius report, Intelius displayed an offer for "$10.00 Off as a member of Identity Protect" rather than the consumer's report. See Figure 5.

///
///
///
///
///
///
///

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 12

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

Figure 5.



3.71    There was no other means by which a consumer could obtain his or her report than by taking an action on this offer Web page.

3.72    Featured prominently on the page was a large orange button stating "Yes and show me my report," along with a field in which to type in an email address.

3.73    In fact, if a consumer filled in his or her email address and clicked on "Yes and show me my report," he or she would be enrolled in Identity Protect and would be charged automatically the recurring monthly fee of $19.95 unless he or she cancelled within seven days.

3.74    The offer page for Identity Protect in some instances obscured the hyperlink for consumers to receive their report without being enrolled in the Identity Protect free trial membership. See Figure 5 above.

3.75    The hyperlink stated, "No thanks, show my report."

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 13

3.76    On a computer set to a typical screen resolution, the consumer would have to scroll down the screen to find the hyperlink. See Figure 5 above.

3.77    In contrast to the large orange button, the hyperlink was in small light-gray print. See Figure 6.

Figure 6.



3.78    In other versions of the Identity Protect offer, Intelius used a survey similar to the one used in Adaptive offers.

3.79    Intelius offered $10 cash back if the consumer filled out a "consumer credit survey," which contained only two questions.

3.80    Intelius admitted that the survey was bogus and the information from the survey responses was not used for any purpose other than to engage the consumer.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 14

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1     3.81   The Intelius offers using the survey had higher conversion rates than the offers
2  that did not use the survey.

3     3.82   Between April 2008 and January 1, 2009, approximately 378,667 consumers
4  nationwide were enrolled in Identity Protect during their purchase of an Intelius report.

5     3.83   Of the 378,667 consumers, 241,306 cancelled the service.

6     3.84   The conversion rate for consumers who were shown Identity Protect offers in
7  the middle of their transactions relating to an Intelius report ranged from 10.6 percent to 87
8  percent.

9     3.85   Between April 2008 and October 2008, 2,718 Washington consumers were
10  enrolled in Identity Protect during their purchase of an Intelius report.

11     3.86   Of the approximately 2,718 Washington consumers 23 percent of them clicked
12  on the "Accept" button to the Identity Protect offer in less than twenty seconds after clicking
13  on the button to complete their purchase of the Intelius report.

14     3.87   Of the approximately 2,718 Washington consumers who were enrolled in
15  Identity Protect during their purchase of an Intelius report, 53 percent of them clicked on the
16  "Accept" button to the Identity Protect offer in less than thirty seconds after clicking on the
17  button to complete their purchase of the Intelius report.

18     3.88   Of the approximately 2,718 Washington consumers who were enrolled in
19  Identity Protect during their purchase of an Intelius report, 75 percent of them clicked on the
20  "Accept" button to the Identity Protect offer in less than forty seconds after clicking on the
21  button to complete their purchase of the Intelius report.

22     3.89   Of the approximately 2,718 Washington consumers who were enrolled in
23  Identity Protect during their purchase of an Intelius report, 100 percent of them clicked on the
24  "Accept" button to the Identity Protect offer in less than sixty seconds after clicking on the
25  button to complete their purchase of the Intelius report.

26

1      3.90   Intelius suffered excessively high charge-back rates because of Identity Protect

2  charge-backs.

3      3.91   In a meeting on October 24, 2008, Intelius management specifically identified

4  charge-backs for Identity Protect as the culprit in raising Intelius' charge-back rate over the

5  limit imposed by Visa and Mastercard.

6      3.92   Charge-backs for Identity Protect almost always exceeded one percent of the

7  billings for the product.

8      3.93   Intelius's customer service department was receiving thousands of calls a week

9  from consumers complaining about charges for Identity Protect.

10      3.94   Intelius's customer service department was ill-equipped for months to handle

11  the volume of calls relating to Identity Protect charges.

12      3.95   Consumers experienced wait times of over 20 minutes to reach a customer

13  service representative.

14      3.96   Some weeks, Intelius had an abandoned call rate of over 50 percent.

15      3.97   Despite knowing that a large number of consumers who were calling customer

16  service were complaining about charges for Identity Protect, Intelius never set up its call-

17  tracking system to track complaints of unauthorized charges for Identity Protect.

18      3.98   In fact, Intelius had to set up a special customer service line to respond to the

19  volume of calls from consumers requesting refunds for Identity Protect charges.

20      3.99   Intelius's call-tracking system listed 16 different reasons for a customer's

21  request for a refund, none of which would describe the consumer who alleged that the charges

22  were unauthorized.

23      3.100  Initially, Intelius permitted customer service representatives to give consumers

24  refunds for two months of charges for Identity Protect.

25

26

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

3.101   In September 2008, Intelius changed its policy and refused to refund more than one month's charge for Identity Protect when consumers called to complain about the charges unless the call was escalated.

3.102   In a memo to customer service on September 10, 2008, Intelius cited as its reasons for changing the policy addressing the way Identity Protect was being offered with a focus on decreasing the number of consumers who "inadvertently enrolled" in Identity Protect and increased email communications to consumers about their purchase of the product.

3.103   In June 2008, Intelius hired an independent marketing consultant to review Intelius's Identity Protect offers for areas of potential consumer confusion.

3.104   In her report, the independent consultant, Shelli Strand, highlighted the "call-to-action" button as a source of consumer confusion.

3.105   Intelius implemented some changes based on Strand's report.

3.106   Intelius did not change the "call-to-action" button.

3.107   An Intelius officer suggested that Intelius make the "no thanks" hyperlink into a button similar to the "yes" button, but CEO Jain rejected the suggestion.

3.108   Intelius briefly tested a version of its Identity Protect offer that moved the "No thanks" hyperlink and the "Yes" button up to the top of the offer and had them side by side of equal size.

3.109   That offer converted at a very low rate compared to the offers that kept the "No thanks" in a hyperlink below the "Yes" button.

3.110   Intelius ran an Identity Protect offer that used buttons for both the "Yes" and "No thanks" options but Intelius stopped using it because Intelius claimed it confused consumers.

3.111   After two days of running this offer, Intelius pulled it and replaced it with offers that had the large "Yes" button featured prominently again and the small hyperlink "No thanks" beneath the button.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 17

1      3.112   The conversion rate returned to its normal range.

2      3.113   In October 2008, Intelius discontinued marketing Identity Protect via post-

3  transaction offers.

**Intelius' "Bundled" Marketing of Identity Protect**

5      3.114   In October 2008, Intelius began using a new method of marketing its trial offers

6  of Identity Protect.

7      3.115   Intelius called this new form of marketing "bundled" marketing because the

8  trial of the Identity Protect service was bundled with a discounted price on the product the

9  consumer wanted to purchase.

10      3.116   On the Intelius Web site www.intelius.com, when a consumer does a search for

11  a background report, whether on a person or a telephone number, Intelius offers the report at its

12  regular price or a discounted price with Identity Protect.

13      3.117   However, Intelius does not disclose the material terms of the discounted offer at

14  the point that the consumer has the choice of choosing the discounted price.

15      3.118   The screen on which the consumer must choose between the discounted price

16  and the regular price does not describe what Identity Protect is nor does it indicate that there

17  are any terms or conditions to the discounted price. See Figure 7.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 18

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

Figure 7.



3.119  It is only <u>after</u> the consumer chooses the discounted price of the report that the consumer is shown a description of the report the consumer is purchasing and a description of the "benefits" of Identity Protect; however, the prominent red button saying "Continue" encourages the consumer to simply click through to complete his or her transaction before ever scrolling down to read the "offer details." See Figure 8.

///

///

///

///

///

Figure 8.



3.120  In addition, in the "Order Summary" area there is "$0.00" listed next to "Identity Protect Trial."

3.121  Furthermore, in the "Order Summary" on the payment-submission page, the "savings" on the report is shown as attributable to being a "Club Savings," a term not previously used. See Figure 9.

///
///
///
///
///

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 20

1    Figure 9.



17        3.122   After filling in his or her credit or debit card information, the consumer clicks

18   on the button that says: "Confirm the Purchase and Show My Report." See Figure 10.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

1   Figure 10.



17   3.123   However, the next screen to appear is not the consumer's report but rather is an

18   Adaptive offer for "$10 cash back as a Member of 24ProtectPlus." See Figure 11.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 22

Figure 11.



3.124   If the consumer who is still simply trying to get to his or her report fills in his or her email address and clicks on the "Yes" button, he or she will be enrolled in an Adaptive program, along with the Identity Protect program.

3.125   Numerous Washington consumers have complained to the Attorney General's Office of unauthorized charges for both Identity Protect and an Adaptive program.

3.126   Furthermore, if the consumer clicks on "No," the next screen is a confusing screen that features the Identity Protect service rather than showing the consumer's report. See Figure 12.

///

///

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 23

1   Figure 12.



3.127  In some instances, the report is not even available, but nevertheless, the screen does not disclose that fact unless the consumer clicks further on the report hyperlink at the very bottom of the page.

3.128  No where on this screen or anywhere within the Identity Protect Web site does Intelius disclose that the consumer must cancel the service within seven days or else he or she will be charged a recurring monthly fee of $19.95.

3.129  In fact, nowhere on the Identity Protect Web site is there a clear and conspicuous mechanism by which the consumer may cancel the service.

1    3.130   Only after a very concerted search might the consumer arrive at a place where

2    he or she can "suspend" his or her service.

3    3.131   Furthermore, the "welcome" email that Intelius sends the consumer who has

4    been enrolled in Identity Protect does not disclose any of the material terms to the trial offer.

5    See Figure 13.

6    Figure 13.



From: Intelius <DoNotReply@intelius.com>
To: ▓▓▓▓▓▓▓▓▓▓▓▓▓
Sent: Tuesday, July 7, 2009 ▓▓▓▓▓▓
Subject: Intelius Identity Protect

Dear ▓▓▓▓▓▓▓▓

Thank you for joining Identity Protect, the most comprehensive, proactive identity monitoring service available. Identity Protect comes complete with an up-to-date identity report, identity theft insurance and much more, monitoring your identity 24/7 and alerting you to changes!

What Identity Protect is doing for you right now:

- Monitoring your public records information, such as your address and phone number.
- Monitoring your credit card/debit card number, watching to see if it matches those that have been illegally bought or sold over the Internet.
- Protecting you with up to $25,000 in identity theft recovery insurance.
- Displaying your alerts, protection status, and more on your personalized My Identity Protect page.

Other features you can enable, free:

- Credit monitoring - you can enable monitoring of your SSN, bank account number, other credit/debit cards, and more!
- Junk Mail OptOut - you can stop telemarketing calls, junk mail, and credit card offers. Just enable this service and we will do all the work for you!

Email Alerts and updates:

- Alerts to any suspicious changes to your identity-related information will be emailed to you immediately. More detail on your alerts will be available on your My Identity Protect page.
- Go to your My Identity Protect page, verify your information and receive your identity report. Review it carefully.
- Regularly visit your page to view alert details and enable more cool features.

Your trial period will last 7 days - be sure to visit your My Identity Protect page today to enable all your benefits. Here's to a secure identity!

- Your Identity Protect Team

19    3.132   Even after discontinuing the "post-transaction marketing" of Identity Protect,

20   Intelius continued to experience excessive chargeback rates due to Identity Protect charge-

21   backs.

22    3.133   In fact, between October 2008 and December 2008, the charge-backs increased

23   from under 100 charge-backs in a one-week period to over 300 charge-backs in a one-week

24   period, exceeding over 1 percent of Identity Protect billings.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

3.134  Numerous consumers have complained to the Attorney General's office and to the Better Business Bureau about unauthorized charges for the Identity Protect service on their credit and debit cards since Intelius' change to the "bundled" marketing method.

3.135  Most consumers who complained also reported being unable to cancel the product due to excessive on-hold times, sometimes over an hour, when calling customer service and the inability to locate the cancellation mechanism on the Intelius Web site.

3.136  Between October 2008 and October 2009, over 800,000 consumers were enrolled in Identity Protect.

3.137  Intelius is able to track the use of Identity Protect benefits by Identity Protect members.

3.138  Several of the Identity Protect benefits are automatically "enabled" by virtue of the consumer being enrolled in the service.

3.139  Other benefits are what Intelius calls "member-enabled," which means that Intelius will have a record only if the member specifically requested such a benefit.

3.140  The benefits that are "member-enabled" are Experian Credit Monitoring, Tribureau Credit Monitoring, Experian Credit Report, Single Bureau Credit Report plus Score, Triple Bureau Credit Report plus Score, Neighborhood Watch Report, and Junk Mail Reduction.

3.141  Of the over 800,000 consumers who were enrolled in Identity Protect between October 2008 and October 2009, only approximately 54,181 consumers used a member-enabled benefit.

3.142  Between October 2008 and October 2009, Defendant grossed approximately $61,318,476.00 from Identity Protect billings.

///

///

///

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

### Knowledge of Consumer Complaints

3.143  Intelius has received thousands of complaints from consumers regarding unauthorized enrollment in and charges for both the Adaptive membership programs and its own Identity Protect program.

3.144  Intelius's executive management, including CEO Jain and John Arnold, an executive vice president, were made personally aware of the consumer complaints.

3.145  According to Jain, "Every customer complaint went to at least John Arnold to make sure that I was informed about what he was going to do."

3.146  Intelius' customer service department reported thousands of calls from consumers complaining about Identity Protect each week.

3.147  Detailed reports from customer service were sent to Intelius management on a weekly basis.

3.148  These reports included statistics on the number of incoming calls on the Identity Protect line, the abandoned call rate, and the wait times.

3.149  In one email to Intelius management, Susan Koelher, the Chief Marketing Officer of Intelius, commended customer service for getting the hold times down but commented that now Intelius needed "to concentrate the IDP team on driving more clarity in their offer."

3.150  Consumers initiated charge-backs of charges for Identity Protect at excessive rates.

3.151  Intelius discussed the high rate of charge-backs for Identity Protect at numerous weekly meetings and acknowledged this as a significant problem.

3.152  Intelius's executive management claimed that the advertisements were clear; however, in an email to bankers involved in Intelius's IPO, CEO Jain noted that there were consumers who were enrolling inadvertently and that consumers were confused.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

3.153  Despite knowing that both the Adaptive offers and its own offers were and are leading to consumers' unauthorized enrollment in and unauthorized charges for both the Adaptive membership programs and its own Identity Protect program, Defendant continued to make both offers during the consumer's transaction process.

3.154  The total revenue earned by Intelius in 2007 from its enrollment of consumers in Adaptive membership programs was $12.9 million.

3.155  The total revenue earned by Intelius in 2008, calculated as of June 20, 2008, from its enrollment of consumers in Adaptive membership programs was $22.5 million.

3.156  Between October 2008 and October 2009, Intelius enrolled approximately 648,860 consumers in one of Adaptive's membership programs.

**Difficulty in Canceling Identity Protect and Obtaining Refunds**

3.157  The terms of the Identity Protect "free trial" offer – which is the only way the service is offered – require the consumer to contact Intelius to cancel the service during the seven-day trial period in order to avoid being automatically charged a recurring monthly fee of $19.95.

3.158  Numerous consumers have complained that they have been unable to contact Intelius to cancel the service and/or obtain refunds for charges that have been imposed for the service.

3.159  During the time period relevant to this Complaint, Intelius did not include a clear and conspicuous cancellation method on its primary Web site, Intelius.com.

3.160  In order to cancel the service online, a consumer must figure out how to reach the Web page that contains a method for "suspending" the service.

3.161  Moreover, when consumers call Intelius to cancel the service, they experience excessively long hold times, sometimes well over 20 minutes.

3.162  Intelius has been aware of consumers' difficulty in contacting Intelius and inability to easily find an online method of cancellation.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1    3.163  Intelius customer service representatives who field thousands of calls from

2    consumers specifically asked management to offer a clear and obvious online method for

3    cancellation.

4    3.164  Intelius is aware that its customers experience excessively long hold times when

5    calling customer service.

6    3.165  Despite hiring additional customer service representatives, Intelius experienced

7    long hold times.

8    3.166  Intelius had failed to issue refunds for more than one month's charges (or two

9    month's charges if the call was escalated).

10    3.167  Intelius refunded those consumers who complained to the Attorney General's

11    Office or the Better Business Bureau.

12    **Violations of Intelius' Privacy Policy**

13    3.168  The Intelius Privacy Policy provides:  "The information you provide to Intelius

14    on certain Intelius Web sites may also be used with your permission by Intelius and selected

15    third parties for marketing purposes.  Before we use it, we will offer you the opportunity to

16    choose whether or not to have your information used for this purpose."

17    3.169  Intelius, unbeknownst to many consumers, transmits consumers' personally

18    identifiable information, including but not limited to email addresses and credit or debit card

19    numbers to Adaptive without obtaining the knowing, meaningful consent of consumers.

20    3.170  Adaptive shares consumers' personal information with marketing partners for

21    the purpose of marketing Adaptive programs and third parties' goods or services unless the

22    consumer opts out of this sharing.

23    3.171  Many consumers who are not aware of having been enrolled in an Adaptive

24    program are also not aware of the Adaptive opt-out procedures.

25    ///

26    ///

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 29

## IV. FIRST CAUSE OF ACTION – UNFAIR AND DECEPTIVE "POST-TRANSACTION" MARKETING OF ADAPTIVE'S MEMBERSHIP PROGRAMS

4.1    Plaintiff realleges paragraphs 1.1 through 3.171 above and incorporates them as though fully set forth herein.

4.2    Defendant's placement of Adaptive's offer for a free trial of its membership programs in the middle of the consumer's transaction with Intelius confuses, misleads, and deceives consumers, who, with the intention of clicking on a button ("Yes and show me my report") to complete their purchase of an Intelius report, inadvertently agree to Adaptive's free trial offer.

4.3    Defendant uses or used numerous unfair, misleading, and deceptive mechanisms to cause consumers to be enrolled in an Adaptive membership program without their knowledge or knowing authorization.

4.4    First, after the consumer has chosen the Intelius report that they wish to purchase and has transmitted their credit or debit card information to Intelius through the Intelius Web site, the consumer clicks on a button that will ostensibly complete the transaction and display the report that he or she has just purchased.

4.5    However, rather than displaying the report that the consumer has just purchased, Defendant interrupted the consumer's transaction by displaying a page that states "Thank You your order has been successfully completed" and offers the consumer $10 cash back if he or she takes a two-question survey.

4.6    The survey, however, is not real but is simply a ruse to get consumers to fill in their email address below the survey.

4.7    By filling in his or her email address below the survey, the consumer is allegedly agreeing to the Adaptive offer and allegedly agreeing to permit Intelius to transmit his or her credit or debit card information to Adaptive.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 30

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1     4.8    The lack of a logical or intuitive relationship between taking the survey and

2    entering his or her email address and giving permission to be enrolled in a completely

3    unrelated "membership program" is inherently deceptive.

4     4.9    Second, Defendant's use of a prominent orange button stating "Yes and show

5    me my report" deceptively induces consumers to click on that button in order to receive the

6    report that they have just purchased.

7     4.10   Clicking on the prominent orange button, however, results in the consumer

8    being enrolled in an Adaptive free trial offer, which, unless cancelled within seven days, is

9    automatically charged to the credit or debit card the consumer used to purchase the Intelius

10    report and is thereafter charged automatically on a recurring monthly or annual basis.

11     4.11   By contrast, in order to receive their report *without* being enrolled in an

12    Adaptive membership program, consumers must find the tiny hyperlinked grey-colored line

13    stating "No, see my report" beneath the prominent orange button.

14     4.12   Defendant obscured the hyperlinked line while directing the consumer's eye to

15    the large orange button.

16     4.13   Although the page displaying the Adaptive offer contains disclosures relating to

17    the fact that the consumer is signing up for a free trial of a membership program and that

18    Intelius will transmit the consumer's credit or debit card information to the membership

19    program (Adaptive is never mentioned), the placement of the offer in the middle of the

20    consumer's attempt to receive the Intelius report that he or she has just purchased and the

21    mechanisms designed to lead the consumer to believe that he or she is simply filling out a

22    survey to get $10 cash back and then clicking on a button to "Show Me My Report" render the

23    fine-print disclosures irrelevant to the consumer and not likely to be read.

24     4.14   Numerous consumers have complained that they were enrolled in a membership

25    program without their knowledge or authorization following a transaction with Intelius.

26

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

4.15    Defendant's placement of the Adaptive offer in the middle of the consumer's transaction to purchase and view an Intelius report as described above has the capacity to deceive a substantial number of persons and constitutes an unfair and deceptive act or practice in trade or commerce in violation of the Consumer Protection Act, RCW 19.86.020.

## V.    SECOND CAUSE OF ACTION – UNFAIR, DECEPTIVE, AND UNAUTHORIZED SALE AND TRANSMISSION OF CONSUMERS' FINANCIAL INFORMATION TO A THIRD PARTY

5.1    Plaintiff realleges paragraphs 1.1 through 4.15 above and incorporates them as though fully set forth herein.

5.2    Defendant failed to obtain knowing authorization from consumers to sell and transmit their credit or debit card information to Adaptive.

5.3    Defendant's deceptive inducement of consumers to enter their email addresses and click on a button, which then enrolls them in a membership program, as described above, renders any alleged "authorization" provided by the consumer meaningless and void.

5.4    Defendant's sold and transmitted thousands and thousands of Washington consumers' credit and debit card information to Adaptive, which then charged all of these consumers for membership programs.

5.5    Defendant lacked knowing authorization from many of these consumers to sell and transmit their credit or debit card information to Adaptive.

5.6    Numerous consumers have complained of unauthorized charges on the credit or debit cards that they gave to Intelius for their Intelius purchase as a result of Defendant's transmission of their card numbers to Adaptive.

5.7    The unauthorized sale and transmission of consumers' credit and debit card information to a third party constitutes unfair and deceptive acts or practices in trade or commerce and unfair methods of competition in violation of RCW 19.86.020 of the Consumer Protection Act.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

## VI.    THIRD CAUSE OF ACTION – UNFAIR AND DECEPTIVE "POST-TRANSACTION MARKETING" OF IDENTITY PROTECT

6.1    Plaintiff realleges paragraphs 1.1 through 5.7 above and incorporates them as though fully set forth herein.

6.2    Defendant used numerous unfair and deceptive mechanisms to cause consumers to be enrolled in its Identity Protect membership program without consumers' knowledge or knowing authorization.

6.3    First, Defendant's placement of an offer for a free trial of its Identity Protect membership program in the middle of the consumer's primary transaction with Intelius for an Intelius report confuses and deceives consumers, who, with the intention of clicking on a button ("Yes and Show Me My Report") to complete their purchase of an Intelius report, inadvertently agree to Intelius' free trial offer of Identity Protect.

6.4    Second, after the consumer has chosen the Intelius report that they wish to purchase and has transmitted their credit or debit card information to Intelius through the Intelius Web site, the consumer clicks on a button that will ostensibly complete their transaction and display the report that he or she has just purchased.

6.5    However, rather than displaying the report that the consumer has just purchased, Defendant interrupted the consumer's transaction by displaying a page that states "Thank You your order has been successfully completed" and offers the consumer $10 cash back if he or she takes a two-question survey.

6.6    The survey, however, is not real but is simply a ruse to get consumers to fill in their email address below the survey.

6.7    By filling in his or her email address below the survey, the consumer is allegedly agreeing to the Intelius Identity Protect offer and allegedly agreeing to permit Intelius to use his or her credit or debit card information supplied for the purchase of the Intelius report

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1   to automatically charge the consumer the recurring monthly fees for the membership program

2   if the consumer does not cancel the program prior to the end of the free period.

3       6.8     The lack of a logical or intuitive relationship between taking the survey and

4   entering his or her email address and giving permission to be enrolled in a completely

5   unrelated "membership program" is inherently deceptive.

6       6.9     Third, the use of a prominent $10 cash back" or "$10 off" the next purchase

7   premium misleads consumers into believing that they are filling in their email addresses in

8   order to claim the premium.

9       6.10     Fourth, Defendant's use of a prominent orange button stating "Yes and Show

10  Me My Report" deceptively induces consumers to click on that button in order to receive the

11  report that they have just purchased.

12      6.11     Clicking on the prominent orange button, however, results in the consumer

13  being enrolled in the Intelius Identity Protect free trial offer, which, unless cancelled within

14  seven days, is automatically charged to the credit or debit card the consumer used to purchase

15  the Intelius report.

16      6.12     By contrast, in order to receive their report *without* being enrolled in Intelius

17  Identity Protect membership program, consumers must find the tiny hyperlinked grey-colored

18  line stating "No thanks show me my report" beneath the prominent orange button.

19      6.13     Defendant obscured the hyperlinked line while directing the consumer's eye to

20  the large red button.

21      6.14     Although the page displaying the Intelius Identity Protect offer contains

22  disclosures relating to the fact that the consumer is signing up for a free trial of a membership

23  program and that Intelius will use the consumer's credit or debit card information to bill for the

24  membership program, the placement of the offer in the middle of the consumer's attempt to

25  receive the Intelius report that he or she has just purchased and the mechanisms designed to

26  lead the consumer to believe that he or she is simply filling out a survey to get $10 cash back

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1    and then clicking on a button to "Show Me My Report" render the fine-print disclosures

2    irrelevant to the consumer and not likely to be read.

3        6.15    Numerous consumers have complained that they were enrolled in an Intelius

4    Identity Protect membership program without their knowledge or authorization following a

5    transaction with Intelius.

6        6.16    Defendant's placement of the Intelius Identity Protect offer in the middle of the

7    consumer's transaction to purchase and view an Intelius report as described above has the

8    capacity to deceive a substantial number of persons and constitutes an unfair and deceptive act

9    or practice in trade or commerce in violation of the Consumer Protection Act, RCW 19.86.020.

10   **VII.    FOURTH CAUSE OF ACTION – UNFAIR AND DECEPTIVE "BUNDLED"
         MARKETING OF IDENTITY PROTECT**

11
12       7.1    Plaintiff realleges paragraphs 1.1 through 6.15 above and incorporates them as
     though fully set forth herein.

13
14       7.2    In its "bundled" marketing of Identity Protect, Defendant failed to disclose

15   clearly, conspicuously, and at the relevant times and places the material terms to the free trial

16   offer of Identity Protect.

17       7.3    On its Web site www.intelius.com, Defendant has advertisements for the

     Identity Protect service, wherein some disclosures are made relating to the free trial.

18
19       7.4    However, Defendant failed to make those same disclosures at the time of

20   making the actual offer to consumers during consumers' transaction with Intelius for a

     background report.

21       7.5    Essentially, Defendant leaves it to consumers to "connect the dots."

22
23       7.6    As a result, numerous consumers have been enrolled in Identity Protect without

     knowing they were enrolled and without knowing that they must cancel the service within

24   seven days to avoid having their credit or debit cards charged a recurring monthly fee.

25

26

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 35

7.7     Defendant's marketing design deliberately separates the description of the Identity Protect service and the material terms of the free trial offer from the actual offer of the Identity Protect "trial" during the consumers' transaction.

7.8     Defendant's failure to clearly, conspicuously, and at a relevant place and time disclose the material terms of the Identity Protect free trial offer has the capacity to deceive a substantial number of persons and constitutes an unfair and deceptive act or practice in trade or commerce in violation of the Consumer Protection Act, RCW 19.86.020.

## VIII.   FIFTH CAUSE OF ACTION – UNFAIR, DECEPTIVE, AND UNAUTHORIZED USE OF CONSUMERS' CREDIT OR DEBIT CARDS

8.1     Plaintiff realleges paragraphs 1.1 through 7.8 above and incorporates them as though fully set forth herein.

8.2     Defendant failed to obtain knowing authorization from consumers to charge their credit or debit cards for the Identity Protect membership program.

8.3     Defendant's deceptive inducement of consumers to enter their email addresses and click on a button, which then enrolls them in a free trial of the Identity Protect membership program, as described above, renders any alleged "authorization" provided by the consumer meaningless and void.

8.4     Defendant charged thousands and thousands of Washington consumers' credit and debit cards for the Identity Protect membership program when the consumers did not cancel the program prior to the end of the free trial period.

8.5     Defendant lacked knowing authorization from many of these consumers to charge their credit or debit cards for the Identity Protect membership program.

8.6     Numerous consumers have complained of unauthorized charges on the credit or debit cards that they gave to Intelius for their Intelius purchase as a result of Defendant's use of their card numbers to bill for the Identity Protect membership program.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 36

1    8.7    The unauthorized use of consumers' credit and debit cards to bill for the

2    Identity Protect membership program constitutes unfair and deceptive acts or practices in trade

3    or commerce and unfair methods of competition in violation of RCW 19.86.020 of the

4    Consumer Protection Act.

5    **IX.    SIXTH CAUSE OF ACTION: FAILURE TO PROVIDE ADEQUATE**

6    **CANCELLATION MECHANISM/OBSTRUCTING CANCELLATION**

7    9.1    Plaintiff realleges paragraphs 1.1 through 8.7 above and incorporates them as

8    though fully set forth herein.

9    9.2    Defendant offers a "free trial" of Identity Protect – which is the only way

10   Defendant sells the product – that requires consumers to cancel the service within the free trial

11   period, which is seven days, to avoid being automatically charged recurring monthly fees for

12   the service.

13   9.3    Defendant, however, obstructs or has obstructed consumers' ability to cancel

14   the service by failing to provide an easily identifiable online method for canceling Identity

15   Protect and by failing to provide easily accessible customer service by telephone.

16   9.4    Defendant fails or has failed to provide a conspicuous link on its Web sites for

17   consumers to use to cancel the service despite being told by customer service that they could

18   reduce the number of calls if they provided an easily identifiable cancellation mechanism

19   online.

20   9.5    Defendant fails or has failed to adequately address its customer service

21   deficiencies despite knowing of the excessive hold times and high rate of abandoned calls.

22   9.6    Defendant fails or has failed to provide consumers with an easily identifiable

23   and accessible method for canceling the Identity Protect service, thereby causing consumers to

24   incur charges for a service the consumer does not want.

25   9.7    The failure to provide consumers with an adequate means of canceling the

26   Identity Protect service constitutes unfair and deceptive acts or practices in trade or commerce

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1    and unfair methods of competition in violation of RCW 19.86.020 of the Consumer Protection

2    Act.

3    **X.    SEVENTH CAUSE OF ACTION: FAILURE TO HONOR PRIVACY POLICY**

4           10.1    Plaintiff realleges paragraphs 1.1 through 9.7 above and incorporates them as

5    though fully set forth herein.

6           10.2    Intelius represents in its Privacy Policy that it will provide notice to consumers

7    and will give the consumer the opportunity to consent before sharing their information with

8    marketing partners.

9           10.3    In fact, Intelius transmits consumers' personal information, including financial

10   account numbers, to Adaptive and to other third parties without giving adequate notice or

11   obtaining knowing, meaningful affirmative consent.

12          10.4    Adaptive, in turn, shares consumers' personally identifiable information with

13   third parties unless the consumer opts out of the sharing.

14          10.5    Consumers who are not aware that they are enrolled in an Adaptive program do

15   not know that they need to opt out of Adaptive's sharing of their information.

16          10.6    Intelius' violation of its own Privacy Policy constitutes unfair and deceptive

17   acts or practices in trade or commerce and unfair methods of competition in violation of RCW

18   19.86.020 of the Consumer Protection Act.

19   **XI.    EIGHTH CAUSE OF ACTION: FAILURE TO REFUND**

20          11.1    Plaintiff realleges paragraphs 1.1 through 10.6 above and incorporates them as

21   though fully set forth herein.

22          11.2    Hundreds of consumers have complained to the Attorney General's Office and

23   to the Better Business Bureau that they have been unable to obtain full refunds from Intelius

24   for unauthorized charges for Identity Protect.

25          11.3    Only when the consumer complains to the Attorney General's Office or to the

26   Better Business Bureau does Intelius agree to refund the consumer in full.

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 38

1    11.4   Intelius receives thousands of calls every week from consumers requesting

2  cancelation of Identity Protect and refunds for unauthorized charges.

3    11.5   Intelius is aware of the high volume of complaints that consumers are being

4  enrolled in and charged for Identity Protect without their knowledge or authorization.

5    11.6   Intelius' internal policy regarding refunds has never provided for full refunds to

6  consumers who allege that the charges were unauthorized.

7    11.7   For a period of time, Intelius authorized customer service representatives to

8  refund up to two months of charges if the consumer asked for a refund.

9    11.8   Later, Intelius changed its policy to authorize customer service representatives

10  to refund only one month's charge if the consumer asked for a refund and if the customer

11  demanded more, the representative was to escalate the complaint.

12    11.9   The failure of Intelius to refund in full unauthorized charges constitutes unfair

13  and deceptive acts or practices in trade or commerce and unfair methods of competition in

14  violation of RCW 19.86.020 of the Consumer Protection Act.

15              **XII.   PRAYER FOR RELIEF**

16      WHEREFORE, Plaintiff, State of Washington, prays for relief as follows:

17    12.1   That the Court adjudge and decree that Intelius has engaged in the conduct

18  complained of herein.

19    12.2   That the Court adjudge and decree that the conduct complained of in paragraphs

20  3.2 through 11.8 constitutes violations of the Consumer Protection Act, Chapter 19.86 RCW.

21    12.3   That the Court issue a permanent injunction enjoining and restraining Intelius

22  and its representatives, successors and assigns, officers, agents, servants, employees and all

23  other persons acting or claiming to act for or on behalf of or in active concert or participation

24  with Intelius from continuing or engaging in unlawful conduct complained of herein.

25

26

COMPLAINT FOR INJUNCTIVE AND
OTHER RELIEF - 39

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1    12.4   That the Court assess a civil penalty, pursuant to RCW 19.86.140, of up to

2    $2,000 per violation against Intelius for each violation of RCW 19.86.020 caused by the

3    conduct complained of herein.

4    12.5   That the Court make such orders pursuant to RCW 19.86.020 as it deems

5    appropriate to provide for restitution to consumers for money or property acquired by Intelius

6    as a result of the conduct complained of herein.

7    12.6   That the Court make such orders pursuant to RCW 19.86.020 to provide that

8    Plaintiff, State of Washington, have and recover from Intelius the costs of this action, including

9    reasonable attorneys' fees.

10    12.7   That the Court order such other relief as it may deem just and proper to fully

11    and effectively dissipate the effects of the conduct complained of herein or that may otherwise

12    seem proper to the Court.

13    DATED this 23 day of July, 2010.

14               ROBERT M. MCKENNA

15               Attorney General

16

17               SHANNON SMITH, WSBA #19077

                 Assistant Attorney General

18               Attorneys for Plaintiff

                 State of Washington

19

20

21

22

23

24

25

26

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745