THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE KEITHLY and DONOVAN LEE, individually and on behalf of all other similarly situated,,<br><br>    Interim Lead Plaintiffs,<br><br>v.<br><br>INTELIUS INC.; and INTELIUS SALES LLC,<br><br>    Defendants and Third Party Plaintiffs<br><br>v.<br><br>ADAPTIVE MARKETING, LLC,<br><br>    Third Party Defendant. | No. C09-1485-RSL<br><br>DECLARATION OF SEAN RATTIGAN |

1.  I, Sean Rattigan, have been employed by Adaptive Marketing LLC ("Adaptive") I or its predecessor since 1998, where my most recent title (held since August 2007) was Director, Data Specialists, Core Systems. I now work for a related entity, Vertrue LLC. In my current position, I still have access to the business records of Adaptive. I have personal knowledge of the facts set forth below, and if called upon to do so, I would and could testify competently thereto.

2.  I reviewed certain information kept by Adaptive concerning all consumers enrolled in all Adaptive Programs including those consumers who were marketed by Intelius Sales LLC ("Intelius"), one of Adaptive's clients. I also reviewed the number of those members enrolled

through Intelius' marketing who cancelled their memberships prior to being charged a membership fee.

3. Based on my review of the information, I calculated that between July 1, 2007 and September 30, 2010, approximately 10.8% of consumers enrolled in an Adaptive Program marketed by Intelius contacted Adaptive to cancel their memberships during the trial period, and accordingly were not charged any membership fee. To my knowledge this calculation is not otherwise reflected in any document or file that is maintained by Adaptive in the ordinary course of its business

4. Adaptive considers this pre-bill cancellation rate as confidential because it is nonpublic, commercially sensitive, proprietary business information. Public disclosure of this information which will be available to Adaptive's competitors, could be detrimental to Adaptive's business. Adaptive restricts access to data to only certain employees who require the data for their work such as employees who need to take actions based on that data, or senior management within the company.

5. Public disclosure of this information would make it available to Adaptive's competitors, which would result in a competitive disadvantage to Adaptive because Adaptive does not have access to similar information for those competitors. If a competitor had access to this pre-bill cancel rate, they could use the information to increase their own revenues and market share by poaching Adaptive's clients, which could take business from Adaptive. Generally, for several reasons, Adaptive does not even share "back-end" data, such as pre-bill cancel rates with its clients, as such factors could affect negotiations with its clients.

6. Adaptive's membership programs are comprised of benefits, some of which are fulfilled by Adaptive and some of which programs members access from third parties who provide and fulfill such benefits directly to program members. Examples of such benefits are point of sale discounts provided by Hertz, 1-800-FLOWERS, and Overstock.com. The third party providers do not report usage of such benefits to Adaptive. Accordingly, Adaptive has no information or records regarding such usage.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 29, 2011 at Norwalk, CT.

By: _____  7/29/11
       Sean Rattigan